## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PES HOLDINGS, LLC, *et al.*,[1] | ) Case No. 19-11626 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' MOTION FOR ENTRY OF AN
### ORDER (I) APPROVING THE DEBTORS' EXTRACTION NON-INSIDER KEY
### EMPLOYEE RETENTION PROGRAM AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion (this "Motion").

### Preliminary Statement[3]

1.      As the Court is aware, on November 13, 2019, the Debtors and ICBC Standard Bank Plc ("ICBCS") agreed to work in good faith to extract ICBCS owned Hydrocarbons on the Debtors' premises, subject to the terms set forth in the Global Term Sheet and the HEEP Term Sheet, that were attached as Exhibit C to the Final DIP Order.  Pursuant to the extraction contemplated by the Term Sheets, key non-insider employees retained by the Debtors shall be responsible for the extraction of the ICBCS-owned Hydrocarbons, with an estimated completion

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).  The Debtors' service address is:  1735 Market Street, Philadelphia, Pennsylvania 19103.

[2]    A detailed description of the Debtors and their business and the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 32] (the "First Day Declaration"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on July 21, 2019 (the "Petition Date").

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in this Motion or the Term Sheets, as applicable.

date of April 2020. As detailed in the HEEP Extraction Budget and pursuant to the terms of the Term Sheets, ICBCS has agreed to reimburse the Debtors for certain costs associated with the extraction of its Hydrocarbons. These costs include certain retention payments to key non-insider employees of the Debtors who in the Debtors' view must be retained due to their unique skillset, that is essential in order to extract successfully and efficiently the Hydrocarbons (the "Extraction Non-Insider KERP Participants").[4]

2.      The Extraction Non-Insider KERP is necessary for the Debtors to retain these key non-insider employees at this critical juncture. The Extraction Non-Insider KERP Participants are familiar with the PESRM Infrastructure, and developed valuable institutional and technical knowledge regarding the Hydrocarbons extraction that would be difficult and expensive to replace on an expedited basis. Preserving this institutional and technical knowledge—at a maximum cost of no more than $435,000—is crucial to the extraction of the Hydrocarbons in accordance with the applicable safety standards and regulatory obligations.

3.      The Debtors believe that the Extraction Non-Insider KERP will accelerate the process of extracting the Hydrocarbons and the subsequent sale of the Initial Inventory, thereby allowing the Debtors to earn an incentive fee from ICBCS for barrels extracted and sold within 125 days and preserving value for the Debtors, their estates, their stakeholders, and other parties in interest. There is no question that the Extraction Non-Insider KERP is reasonable and appropriate and in the best interests of the Debtors' estates.

---

[4]    The redacted version of the proposed Extraction Non-Insider KERP Participants and their proposed award opportunities are identified by job title on a schedule attached hereto as **Exhibit C**. The Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Redact and File Under Seal Certain Portions of an Exhibit to the Debtors' Motion for Entry of an Order (I) Approving the Debtors' Extraction Non-Insider Key Employee Retention Program and (II) Granting Related Relief*, contemporaneously herewith

2

## Relief Requested

4.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):   (a) approving the extraction non-insider key employee retention program (the "Extraction Non-Insider KERP") for certain non-insider key employees; and (b) granting related relief.

5.     In support of this Motion, the Debtors submit the Declaration of Jeffrey S. Stein, the Debtors' Chief Restructuring Officer, which is attached hereto as **Exhibit B** (the "Stein Declaration").

## Jurisdiction and Venue

6.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The bases for the relief requested herein are sections 105(a), 363(c), and 503(c) of the Bankruptcy Code and Bankruptcy Rule 6004.

3

KE 65305544

## The Extraction Non-Insider KERP

**I.    The Extraction Non-Insider KERP Participants.**

9.    On November 14, 2019, the *Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral Pursuant to 11. U.S.C. §§ 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to U.S.C. §§ 361, 362, 363, 364 and 507(b)* was entered [Docket No. 580] (the "Final DIP Order").  Attached to the Final DIP Order as Exhibit C is the global resolution (the "Global Term Sheet") between the Debtors and ICBCS, to which the hydrocarbon extraction and evacuation plan term sheet was attached as Exhibit A (the "HEEP Term Sheet" and together with the Global Term Sheet, the "Term Sheets").  The Extraction Non-Insider KERP Participants shall be responsible for the extraction of the ICBCS-owned Hydrocarbons on the Debtors' premises, with an estimated completion date of April 2020.  The Hydrocarbons are comprised of the Initial Inventory and Subsequent Inventory, as set forth in the Term Sheets.  In conjunction with the Hydrocarbons extraction, the Debtors and ICBCS agreed to use best efforts to enter into a sale transaction of all Initial Inventory within 125 days of the Effective Date.  The Subsequent Inventory was sold to the Debtors on the Effective Date in exchange for the Remaining Volume Claims, as detailed in the Term Sheets.

10.    The Extraction Non-Insider KERP Participants represent approximately 12 percent of the Debtors' current total workforce and are vital to a successful and efficient Hydrocarbons extraction process, which requires a specific skillset and technical knowledge.  The Extraction Non-Insider KERP Participants possess an intimate understanding of the Debtors' business operations and key contacts in the industry that are crucial for the subsequent sale of the Initial

Inventory. At this juncture, it would be difficult, if not impossible, to replace the Extraction Non-Insider KERP Participants without requiring the Debtors to incur substantial costs.

## II.    The Need for the Extraction Non-Insider KERP.

11.    The unique job of extracting the Hydrocarbons, and within the 125-day deadline (as set forth in the Term Sheets), requires highly-skilled key non-insider employees that are familiar with the applicable facilities and have the required technical knowledge. As the Court is already aware, the Debtors have suffered meaningful employee attrition since the Petition Date, as employees are understandably concerned about the future and certainty of their employment while the Debtors continue to advance the marketing and sale process for the Debtors' refining facilities. In light of the risk of further employee loss, the Debtors have determined that the Extraction Non-Insider KERP is necessary not only to ensure the success of the extraction process, but the loss of Extraction Non-Insider KERP Participants, and their key institutional knowledge, could also potentially disrupt the sale process. If the Debtors lose such employees, the Debtors would be required to spend both time and resources locating, recruiting, hiring, and training new employees, costs that would likely far exceed the cost of the Extraction Non-Insider KERP. The Debtors also likely would incur increased compensation costs for newly hired individuals given the uncertainty such employees may expect in joining a company operating under chapter 11 protection, and such increased compensation costs were not contemplated in the HEEP Extraction Budget.

12.    Therefore, the Debtors believe that it is appropriate and in their best interests to pay a retention award to the Extraction Non-Insider KERP Participants pursuant to the Extraction Non-Insider KERP. The Debtors respectfully submit that the Extraction Non-Insider KERP will increase the likelihood that these key non-insider employees are retained by the Debtors during the Hydrocarbons extraction process and sale of the Initial Inventory, thereby allowing the Debtors

KE 65305544

to earn an incentive fee from ICBCS for barrels extracted and sold within 125 days and preserving value for the Debtors, their estates, their stakeholders, and other parties in interest.

**III.    The Terms of the Extraction Non-Insider KERP.**

13.    The Debtors, with the assistance of their advisors, have developed an appropriately-tailored retention program for key non-insider employees.  The Debtors believe their proposed Extraction Non-Insider KERP fairly addresses their need to maintain these key non-insider employees with a reasonable, retention-based program for key non-insiders that, at most, will cost approximately $435,000.[5]

14.    The Debtors' proposed awards for each currently-identified Extraction Non-Insider KERP Participant are identified on **Exhibit C** attached hereto.  These awards (if earned) would be paid in one lump sum within five (5) business days after May 15, 2020 (the "Payment Date"), and such payment will only be paid to an Extraction Non-Insider KERP Participant if such employee is employed by the Debtors on the Payment Date.  In the event the Debtors terminate the employment of the Extraction Non-Insider KERP Participant without cause prior to the Payment Date, the Extraction Non-Insider KERP Participant will be paid the full amount of the award within ten (10) days of the effective date of such termination of employment.

15.    To be clear, no "insider" (as that term is defined by section 101(31) of the Bankruptcy Code) is an Extraction Non-Insider KERP Participant. The Extraction Non-Insider KERP Participants do not include any employee that:  (a) reports directly to the Debtors' boards of directors or managers; (b) is appointed directly by any of the Debtors' boards of directors or managers; (c) exercises managerial control over the Debtors' operations as a whole; (d) controls

---

[5]    Currently, there are approximately 22 proposed Extraction Non-Insider KERP Participants.  The Debtors may, in their discretion, increase the number of Extraction Non-Insider KERP Participants, but, for the avoidance of doubt, the total aggregate cost of the Extraction Non-Insider KERP will not exceed $435,000.

KE 65305544

company policy of the Debtors; or (e) directs the Debtors' overall corporate governance. As set forth more fully in the Stein Declaration, the Debtors and their advisors believe the award opportunities provided under the Extraction Non-Insider KERP are consistent with market practice for similarly situated employers and are, both individually and in the aggregate, reasonable under the circumstances of these chapter 11 cases.

16.    The Debtors and their advisors further believe the Extraction Non-Insider KERP is consistent with programs implemented by similarly-situated chapter 11 debtors and will provide stability to the Debtors' operations and drive value for the benefit of all economic stakeholders.

**Basis for Relief**

17.    The Extraction Non-Insider KERP reflects a sound exercise of the Debtors' business judgment and should be approved pursuant to sections 363(c) and 503(c)(3) of the Bankruptcy Code.    Further, the Debtors respectfully submit that the provisions otherwise applicable to retention programs pursuant to section 503(c)(1) of the Bankruptcy Code are inapplicable here because no "insiders" (as that term is defined by section 101(31) of the Bankruptcy Code) will participate in the proposed Extraction Non-Insider KERP.

**I.    Implementing the Extraction Non-Insider KERP is a Valid Exercise of the Debtors' Sound Business Judgment.**

18.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).    Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Elpida Memory, Inc.*, No. 12–10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the

7

sound exercise of business judgment"); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

19.    Here, the business justification supporting the Extraction Non-Insider KERP is clear. The Debtors require the key non-insider employees' specific knowledge and skill sets to preserve and maximize stakeholder value. The Extraction Non-Insider KERP Participants are intimately familiar with the Debtors' operations and many have skills that are unique and difficult to replace. The Debtors believe that the cost of the Extraction Non-Insider KERP is less than the cost of recruiting and training replacement employees to oversee the Debtors' business and facilities (and related safety and regulatory compliance requirements). Retaining the Extraction Non-Insider KERP Participants will maintain stability and allow the Debtors to focus their efforts on reorganizing as efficiently as possible, for the benefit of all stakeholders. The Debtors further believe the Extraction Non-Insider KERP will incentivize employees to remain with the Debtors. In sum, the Debtors believe that the Extraction Non-Insider KERP is vital to retaining the Extraction Non-Insider KERP Participants and protecting enterprise value, ensuring adherence to safety standards, and ensuring compliance with applicable regulations. Accordingly,

8

the Debtors respectfully submit that the Court should authorize the Debtors to implement the Extraction Non-Insider KERP as a sound exercise of their business judgment.[6]

## II.    The Extraction Non-Insider KERP Is Justified By the Facts and Circumstances of These Chapter 11 Cases.

20.    Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case. *See* 11 U.S.C. § 503(c)(3). Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different that the business judgment standard under section 363(b) of the Bankruptcy Code." *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011); *see In re Nobex Corp.*, No. 05-20050 (MFW), 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (concluding that the standard under section 503(c)(3) reiterates the business judgment standard).

21.    For the reasons discussed above, attrition of the Extraction Non-Insider KERP Participants is a real risk, and a loss of the Extraction Non-Insider KERP Participants would disrupt the Debtors' ability to extract the Hydrocarbons, and conduct the subsequent sale of the Initial Inventory, thus would disrupt the Debtors' ability to preserve and maximize value for the benefit of stakeholders. Because implementation of the Extraction Non-Insider KERP would likely mitigate flight risk of the Extraction Non-Insider KERP Participants, the Extraction Non-Insider KERP is justified by the facts and circumstances of these chapter 11 cases and is a sound exercise of the Debtors' business judgment. *See, e.g., In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

KE 65305544

by the facts and circumstances of the case' under section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors" (citation omitted)).

### III.    The Extraction Non-Insider KERP Applies Only to Non-Insiders and Is Not Prohibited By Section 503(c)(1) or (2).

22.    The Extraction Non-Insider KERP provides retention payments to non-insider employees and is therefore not subject to the requirements of section 503(c)(1) or (2) of the Bankruptcy Code, which apply only to insiders. Section 101(31)(B) of the Bankruptcy Code defines an insider as any director, officer, person in control of the debtor, partnership where the debtor is a general partner, general partner of the debtor, or relative of a general partner, director, officer, or person in control of the debtor. *See* 11 U.S.C. § 101(31)(B). None of the Extraction Non-Insider KERP Participants meet this definition.

23.    The Court previously held that any person holding an officer's title is presumptively an officer and thus an insider. *In re Foothills Texas, Inc.*, 408 B.R. 573, 575 (Bankr. D. Del. 2009). In *In re Foothills Texas* the Court held that "[a] party seeking to rebut that presumption must present evidence sufficient to establish that the person holds the title of an officer in name only and, in fact, does not meet the substantive definition of the same, *i.e.*, he or she is not taking part in the management of the debtor." *Id.* at 574–75.

24.    As demonstrated above and as further set forth in the Stein Declaration, the Extraction Non-Insider KERP Participants do not report to PES Energy, Inc.'s board of directors. Stein Decl. ¶ 31. In each case, many of the Extraction Non-Insider KERP Participants report to intermediate managers and the scope of their authority is relatively limited. Stein Decl. ¶ 29. *See In re Global Aviation Holdings Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) (finding that director-level employees were not "officers" because none of them were members of board, participated in corporate governance, attended board meetings or reported to board). Many of

10

the Extraction Non-Insider KERP Participants' duties are limited to an individual division. Stein Decl. ¶ 29. Courts have declined to find insider status where the scope of authority is quite limited. *See In re Borders Grp., Inc.*, 453 B.R. at 469–70 (employees in KERP plan were not insiders because none of them had authority to implement company policy, did not report to board of directors and were subordinate to actual officers). The titles these Extraction Non-Insider KERP Participants have been given reflect the employees' individual functions and roles, but do not reflect an officer's status. *See In re NMI Sys., Inc.*, 179 B.R. 357, 370 (Bankr. D.D.C. 1995) (finding that vice president was not insider because he was conferred title "for purposes of marketing and as the boss of the unit he managed" only and was not "in the inner circle making the company's critical financial decisions.").

25.    To the extent any of the Extraction Non-Insider KERP Participants have titles reflecting that they may act as officers, such Extraction Non-Insider KERP Participants are officers in name only. They do not "take part in the management of the Debtors," *In re Foothills Texas*, 408 B.R. at 574–75, do not direct or implement company policy other than such policies that they are asked to implement by their supervisors, and do not report to the Debtors' board of directors. Stein Decl. ¶ 30–31. Therefore, they are not "insiders." The prohibitions and restrictions in section 503(c)(1) and (2) do not apply here, as those provisions restrict the ability of "insiders" to receive payments as part of retention or severance plans.

26.    Recently, courts have approved similar incentive plans that contemplate retention payments to non-insiders. *See, e.g.*, *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. June 14, 2019) (approving a retention plan for non-insider employees); *In re CR Holding Liquidating, Inc. (f/k/a Charlotte Russe Holding, Inc.)*, Case No. 19-10210 (LSS) (Bankr. D. Del. Mar. 6, 2019) (same); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. June 4,

11

2018) (same); *In re The Walking Co. Holdings, Inc.*, No. 18-10474 (LSS) (Bankr. D. Del. Apr. 3, 2018) (same); *In re APP Winddown, LLC (f/k/a American Apparel, LLC)*, No. 16-12551 (BLS) (Bankr. D. Del. Jan. 4, 2017) (same).[7]

27.    Accordingly, the Debtors submit that the Extraction Non-Insider KERP should be approved.

### Waiver of Bankruptcy Rule 6004(h)

28.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

29.    The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the Committee; (c) holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the administrative agent under the Debtors' prepetition first lien term loan facility and counsel thereto; (e) the lenders under the Debtors' prepetition first lien term loan facility and counsel thereto; (f) Merrill Lynch Commodities, Inc. and counsel thereto; (g) NGL Energy Partners LP and counsel thereto; (h) the lenders under the Debtors' prepetition promissory note and counsel thereto; (i) counsel to ICBC Standard Bank Plc; (j) the lenders under the Debtors' debtor-in-possession financing facility and counsel thereto; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) the state attorneys general for all states in which the Debtors conduct business; and (n) any party that has requested notice

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon requires to the Debtors' counsel.

pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

30.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

KE 65305544

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: January 15, 2020
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:      (302) 652-4400
Email:          ljones@pszjlaw.com
                pkeane@pszjlaw.com
                joneill@pszjlaw.com

- and -

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted *pro hac vice*)
Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                steven.serajeddini@kirkland.com
                matthew.fagen@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*