## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PES HOLDINGS, LLC, *et al.*,[1] | ) Case No. 19-11626  (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER CONFIRMING THE FOURTH AMENDED JOINT
## CHAPTER 11 PLAN OF PES HOLDINGS, LLC AND ITS DEBTOR AFFILIATES

PES Holdings, LLC and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "Debtors")[2] having:

a.   commenced, on July 21, 2019 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.   continued to operate their business and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed,[3] on October 10, 2019, the *Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 462], the *Corrected Disclosure Statement for the Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 465], and the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of Information in the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices In Connection Therewith, (IV) Scheduling Certain Dates with Respect*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate Holdings, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).  The Debtors' service address is:  1735 Market Street, Philadelphia, Pennsylvania 19103.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

[3]   Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*Thereto, and (V) Granting Related Relief* [Docket No. 464] (the "Disclosure Statement Motion");

d.    obtained, on November 14, 2019, the entry of the *Order (A) Establishing Bidding Procedures, (B) Approving Bid Protections, and (C) Granting Related Relief* [Docket No. 583] (the "Bidding Procedures Order"), approving the *Amended Bidding Procedures for the Submission, Receipt, and Analysis of Bids in Connection with the Sale of Substantially All of the Assets of the Debtors* [Docket No. 583-1] (the "Bidding Procedures");

e.    filed, on December 11, 2019, the *First Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 661] (as filed, the "Solicitation Plan," and, together with further modifications, amendments, or supplements from time to time, the "Plan");

f.    filed, on December 11, 2019, the *Disclosure Statement for the First Amended Joint Plan of Reorganization of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 662] (the "Disclosure Statement");

g.    obtained, on December 11, 2019, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 671] (the "Disclosure Statement Order") approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

h.    caused the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan ("Confirmation") to be distributed on or about December 16, 2019 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 713] (the "Affidavit of Solicitation");[4]

i.    caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published, on December 16, 2019, in *The New York Times* (national edition) and *USA Today* (national edition), as evidenced by the *Affidavits of Publication* [Docket

---

[4]    Due to a clerical error, the letter from the Creditors' Committee recommending that Holders wait to receive the Plan Supplement to vote was inadvertently excluded from the Solicitation Packages sent to Holders entitled to Vote on the Plan.  On January 27, 2020, the Debtors served a letter to all Holders that had voted prior to the filing of such Plan Supplement asking that such Holders submit a new vote either in favor or against the Debtors' Plan (the "Supplemental Solicitation Letter"), as evidenced by the related affidavit of service [Docket No. 910].

No. 704] (the "<u>Publication Affidavit</u>" and, together with the Affidavit of Solicitation, the "<u>Affidavits</u>");

j.  conducted, on January 17, 2020, an auction among those parties that submitted Qualified Bids, as defined in the Bidding Procedures, and determined that HRP Philadelphia Holdings, LLC (the "<u>Plan Sponsor</u>") submitted the highest or otherwise best bid;

k.  filed, on January 22, 2020, the *Plan Supplement for the First Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 780] (as modified, amended, or supplemented from time to time, the "<u>Plan Supplement</u>"), caused notice of the filing of the Plan Supplement to be distributed, and delivered certain solicitation and Plan Supplement documents via overnight mail in accordance with paragraph 16 of the Disclosure Statement Order, as evidenced by, among other things, the related affidavits of service [Docket Nos. 845, 875];

l.  filed, on January 28, 2020, the *First Amended Plan Supplement for the First Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 819] (the "<u>First Amended Plan Supplement</u>"), and caused the notice of filing of the First Amended Plan Supplement to be served by overnight mail, as evidence by the related affidavit of service [Docket No. 901];

m.  filed, on January 29, 2020, the *Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 827];

n.  filed, on February 6, 2020, the *Second Amended Plan Supplement for the Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 926] (the "<u>Second Amended Plan Supplement</u>") and caused the notice of filing of the Second Amended Plan Supplement to be served by overnight mail, as evidence by the related affidavit of service [Docket No. 944];

o.  filed, on February 10, 2020, the *Third Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 959];

p.  filed, on February 10, 2020, the *Debtors' Response to Objection of Official Committee of Unsecured Creditors, in Further Support of an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 949] and the *Debtors' Memorandum of Law of in Support Confirmation of the Third Amended Joint Chapter 11 Plan of PES Holdings, LLC and Its Debtor Affiliates* [Docket No. 950] (collectively, the "<u>Confirmation Brief</u>");

q.  filed, on February 10, 2020, the *Declaration of Paul H. Deutch on Behalf of Omni Management Group, Inc. Regarding Service of Solicitation Packages and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 950-2] (the "<u>Voting Report</u>");

r.      filed, on February 10, 2020, the *Declaration of Jeffrey S. Stein in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 950-3] (the "Stein Declaration");

s.      filed, on February 10, 2020, the *Declaration of John Singh in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 950-4] (the "Singh Declaration");

t.      filed, on February 10, 2020, the *Declaration of Josephine Gartrell in Support of the Debtors' Motion Seeking Entry of an Order (I) Approving the Debtors' KEIP and (II) Granting Related Relief* [Docket No. 950-5] (the "Gartrell Declaration");

u.      filed, on February 10, 2020, the *Declaration of Joseph K. Sciametta in Support of Confirmation of the Joint Chapter 11 Plan of PES Holdings, LLC and Its Debtor Affiliates* [Docket No. 950-6] (the "Sciametta Declaration" and, together with the Voting Report, the Stein Declaration, the Singh Declaration, and the Gartrell Declaration, the "Declarations");

v.      filed the *Fourth Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* contemporaneously herewith (the "Fourth Amended Plan Supplement");

w.      filed the *Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* contemporaneously herewith, a copy of which is attached hereto as **Exhibit A**.

The Court having:

x.      entered the Bidding Procedures Order on November 14, 2019 [Docket No. 583];

y.      entered the Disclosure Statement Order on December 11, 2019 [Docket No. 671];

z.      set February 3, 2020 at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement);

aa.     set February 3, 2020 at 5:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan;

bb.     set February 12, 2020 at 9:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

cc.     reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

dd.      held the Confirmation Hearing;

ee.      heard the statements and arguments made by counsel with respect to Confirmation;

ff.      considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

gg.      entered rulings on the record at the Confirmation Hearing held on February 12, 2020 (the "Confirmation Ruling");

hh.      overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

ii.      taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing and the record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the

extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.    The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**C.    Eligibility for Relief.**

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.    Commencement and Joint Administration of the Chapter 11 Cases.**

4.    On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 72], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

**E.      Appointment of the Creditors' Committee.**

5.      On August 5, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee") [Docket No. 152].

**F.      Judicial Notice, Objections Overruled.**

6.      The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.  All objections, statements, informal objections, and reservations of rights not consensually resolved, agreed to, or withdrawn, if any, related to the Plan or Confirmation are overruled on the merits unless otherwise indicated in this Confirmation Order.

**G.      Disclosure Statement Order.**

7.      On December 11, 2019, the Court entered the Disclosure Statement Order [Docket No. 671], which, among other things, fixed February 3, 2020, at 4:00 p.m. prevailing Eastern Time as the deadline for objecting to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) (the "Plan Objection Deadline"), February 3, 2020 as the deadline for voting to accept or reject the Plan (the "Voting Deadline"), and February 6, 2020, at 9:00 a.m. prevailing Eastern Time as the date and time for the commencement of the Confirmation Hearing.

**H.      Burden of Proof—Confirmation of the Plan.**

8.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**I.      Notice.**

9.      The Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Disclosure Statement Order, the Plan, the Plan Supplement, the Solicitation Packages, the Confirmation Hearing Notice, the proposed assumption and rejection of Executory Contracts and Unexpired Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan, together with the Plan Objection Deadline, the Voting Deadline, and the Confirmation Hearing, and any applicable bar dates and hearings described in the Disclosure Statement Order, in compliance with the Bankruptcy Rules, Local Rules, and the procedures set forth in the Disclosure Statement Order. No other or further notice is or shall be required.

**J.      Solicitation.**

10.      Before the Confirmation Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Confirmation Hearing.  As described in the Voting Report, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Disclosure Statement Motion and approved in the Disclosure Statement Order (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.

11.      As described in the Solicitation Affidavit, the Voting Report, and the Declarations, as applicable, following the Petition Date, the Solicitation Packages, the Supplemental Solicitation

Letter, the Plan Supplement, and the Confirmation Hearing Notice were transmitted and served, including to all Holders of Claims in Class 3, Class 4, Class 5, and Class 6 (collectively, the "Voting Classes"), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient. No further notice is required.

12. As set forth in the Voting Report, the Solicitation Packages, the Supplemental Solicitation Letter, and the Plan Supplement were distributed to Holders in the Voting Classes that held a Claim as of December 6, 2019 (the date specified in such documents for the purpose of solicitation). The establishment and notice of the Voting Record Date were reasonable and sufficient.

13. The period during which Holders in the Voting Classes had to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

14. As set forth in the Plan, Holders of Claims in the Voting Classes were eligible to vote on the Plan in accordance with the Solicitation Procedures. Holders of Claims in Class 1 and Class 2 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Intercompany Interests in Class 8 either are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and conclusively presumed to have rejected the Plan, and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Interests in Class 9 and Claims in Class 7 and Class 10 (collectively, the "Deemed Rejecting Classes") are

Impaired under the Plan, are entitled to no recovery thereunder, and are therefore deemed to have rejected the Plan. Nevertheless, the Debtors served Holders in such Deemed Rejecting Classes with the Plan, the Disclosure Statement, and the Confirmation Hearing Notice.

### K.  Voting.

15.    As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.

16.    As evidenced by the Voting Report, Class 3, Class 4, and Class 6 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

17.    Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

### L.  Plan Supplement.

18.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included in the Plan Supplement are adequate and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, compliance with the Bankruptcy Code and the Bankruptcy Rules, and, solely with respect to matters that have a material effect on the Interests or on the assets, liabilities, Executory Contracts, or Unexpired Leases of the Acquired Reorganized Debtors (as defined

below), the consent of the Plan Sponsor, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.

### M.    Modifications to the Plan.

19.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Solicitation Plan included in the *Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* and the *Third Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates*, and the *Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* filed on January 29, 2020, February 10, 2020, and February 12, respectively, and any additional modifications described or set forth in this order (the "Confirmation Order") (collectively, the "Plan Modifications") constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest; *provided* that, as to the United States of America, its agencies, departments, or agents (collectively, the "United States") and the Commonwealth of Pennsylvania, Department of Environmental Protection ("DEP"), nothing herein shall alter or change the requirements of section 1127 of the Bankruptcy Code with respect to Plan Modifications by the Debtors and the Liquidating Trust. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

20.    In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Solicitation Plan prior to such modification shall be binding and shall apply with respect to the Plan.

### N.    Bankruptcy Rule 3016

21.    The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

### O.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).

22.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

### (i)    Proper Classification—Sections 1122 and 1123.

23.    The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into 10 Classes.   Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.   Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

(ii)    **Specified Unimpaired Classes—Section 1123(a)(2).**

24.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
|---|---|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 8 | Intercompany Interests |

25.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, and all fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

(iii)    **Specified Treatment of Impaired Classes—Section 1123(a)(3).**

26.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|---|---|
| 3 | Term Loan Secured Claims |
| 4 | Intermediation Secured Claims |
| 5 | General Unsecured Claims |
| 6 | Subordinated Remaining Volume Claim |
| 7 | Intercompany Claims |
| 9 | Interests in PES Energy and PES Ultimate Interests |
| 10 | Section 510(b) Claims |

### (iv)    No Discrimination—Section 1123(a)(4).

27.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5).

28.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan and the Plan Supplement, and in the exhibits and attachments to the Plan and the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including regarding:  (a) the consummation of the Sale Restructuring, including the vesting of assets in (i) the Plan Sponsor and (ii) the Liquidating Trust, as applicable; (b) the sources of consideration for Plan distributions; (c) the authorization for the Debtors, the Liquidating Trust, and the Acquired Reorganized Debtors, as applicable, to take all actions necessary to effectuate the Plan, including those actions necessary to effect the Sale Transactions, and all other actions contemplated under or necessary to implement the Plan; (d) the settlement and discharge of Claims and Interests as set forth in the Plan; and (e) the preservation and vesting of certain Causes of Action in the Debtors PES Holdings, LLC, Philadelphia Energy Solutions Refining and Marketing LLC, North Yard Logistics, L.P., and North Yard GP, LLC (collectively, the "Acquired Reorganized Debtors") and the Liquidating Trust, as applicable.

### (vi)    Voting Power of Equity Securities—Section 1123(a)(6).

29.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.  On the Effective Date, other than the assets sold to the Plan Sponsor under the Purchase Agreement, all assets of the

Debtors, including the assets defined as "Excluded Assets" in the Purchase Agreement, will be transferred to the Liquidating Trust.  The Liquidating Trust shall be responsible for, *inter alia*: (a) resolving Disputed Claims; (b) making all distributions to Holders of Allowed Claims as provided under the Plan; *provided* that the GUC Claims Administrator shall be responsible for making distributions to Holders of General Unsecured Claims that have not made the Distribution Proceeds Election; (c) establishing and funding the Distribution Reserve Accounts; (d) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action identified on the Retained Causes of Action List that are Liquidating Trust Assets and, subject to the Litigation Control Agreement, the Retained Matters, in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (e) filing appropriate tax returns; (f) complying with continuing obligations under the Purchase Agreement, if any, and the DIP and Cash Collateral Orders (as applicable), and (g) administering the Plan in an efficacious manner.  The Liquidating Trust will also be responsible for winding-down the Debtors' estates, and the Non-Acquired Reorganized Debtors shall also be deemed to be dissolved as of the Effective Date, subject to the provision of the Plan.  Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable to the Non-Acquired Reorganized Debtors.  On the Effective Date, the charters or equivalent organizational documents of the Acquired Reorganized Debtors will be amended to prohibit the issuance of nonvoting equity securities.  Because the Acquired Reorganized Debtors will not have multiple classes of voting equity securities, the provision of section 1123(a)(6) regarding the distribution of voting power is not applicable.  Accordingly, the Plan complies with section 1123(a)(6) of the Bankruptcy Code.

(vii)        **Directors and Officers—Section 1123(a)(7).**

30.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.E.3 of the Plan, as of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required.   Article VII.G also provides for the dissolution of the Non-Acquired Reorganized Debtors and the formation of the Liquidating Trust to manage the Liquidating Trust Assets, which include all assets of the Debtors that are not transferred to the Plan Sponsor or retained by the Acquired Reorganized Debtors, including Excluded Assets.   The selection of the members of the Liquidating Trust Board by Nominating Parties for the Required Term Loan Lenders, and the Intermediation Provider, pursuant to the Liquidating Trust Agreement, to manage the affairs of the Liquidating Trust is consistent with the interests of Holders of Claims and Interests and public policy.   The selection of officers, directors, and/or managers of the Acquired Reorganized Debtors by the Plan Sponsor also is consistent with the interests of Holders of Claims and Interests and public policy.   Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(viii)        **Impairment / Unimpairment of Classes—Section 1123(b)(1).**

31.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.   Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

(ix)        **Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

32.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases not previously rejected, assumed, or assumed and assigned during these Chapter

16

11 Cases under section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan

or the Plan Supplement.  The Debtors' determinations regarding the assumption and rejection of

Executory Contracts and Unexpired Leases are based on and within the sound business judgment

of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the

Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

(x)    <strong>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).</strong>

33.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  Pursuant

to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the

classification, distributions, releases, and other benefits provided under the Plan, on the Effective

Date, except as stated otherwise in the Plan, the provisions of the Plan shall constitute a good-faith

compromise and settlement of the Settled Claims and of all Claims, Interests, Causes of Action,

and controversies that could have been asserted against any of the Settlement Parties by any of the

Settlement Parties.  The compromise and settlement of such Claims and Interests embodied in the

Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best

interests of the Debtors, the Debtors' estates, and all Holders of Claims and Interests, and are fair,

equitable, and reasonable.

34.    The Plan incorporates an integrated compromise and settlement of the Settled

Claims to achieve a beneficial and efficient resolution of these Chapter 11 Cases for all parties-in-

interest.  Accordingly, except as otherwise set forth in the Plan or herein, in consideration for the

distribution and other benefits provided under the Plan, including the release, exculpation, and

injunction provisions, the Plan shall constitute a good faith compromise and settlement of all

Settled Claims by the Settlement Parties.  Each component of the Settlement is an integral, integrated, and inextricably linked part of the Settlement.

35.     Based upon the representations and arguments of counsel to the Debtors, all other testimony either actually given or proffered, other evidence introduced at the Confirmation Hearing, and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Court's approval of the Settlement, because, among other things: the Settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, the Acquired Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates and maximize recoveries to Holders of Claims and Interests and is essential to the successful implementation of the Plan.  Based on the foregoing, the Settlement satisfies the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

**(xi)        Additional Plan Provisions—Section 1123(b)(6).**

36.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**P.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

37.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

b.   complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and

all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**Q.      Plan Proposed in Good Faith—Section 1129(a)(3).**

38.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to Confirmation, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions and maximize the value of the Estates and the recoveries to Holders of Claims and Interests.

**R.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

39.      The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**S.      Directors, Officers, and Insiders—Section 1129(a)(5).**

40.      Because the Plan provides for the dissolution the existing board of directors or managers, as applicable, of the Debtors and that any remaining directors or officers of the Debtors shall be dismissed, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors. To the extent section 1129(a)(5) applies to the Liquidating Trust, it have satisfied the requirements of this provision by, among other things, disclosing the identity and compensation of the Liquidating Trustees.

**T.      No Rate Changes—Section 1129(a)(6).**

41.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11

Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory

commission.

**U.      Best Interest of Creditors—Section 1129(a)(7).**

42.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

The liquidation analysis attached to the Disclosure Statement and included in the Plan Supplement

and the other evidence related thereto in support of the Plan that were proffered or adduced in the

Declarations or at, prior to, or in connection with the Confirmation Hearing:  (a) are reasonable,

persuasive, credible, and accurate as of the dates such analysis or evidence was prepared,

presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions;

(c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims

and Interests in each Class will recover at least as much under the Plan on account of such Claim

or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated,

on the Effective Date, under chapter 7 of the Bankruptcy Code.

**V.      Acceptance by Certain Classes—Section 1129(a)(8).**

43.      Classes 1, 2, and 8 are Unimpaired under the Plan and are deemed to have accepted

the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Nevertheless, because the Plan has

not been accepted by Class 5 and the Deemed Rejecting Classes, the Debtors seek Confirmation

under section 1129(b), solely with respect to Class 5 and the Deemed Rejecting Classes, rather

than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been

satisfied with respect to Class 5 and the Deemed Rejecting Classes, the Plan is confirmable because

the Plan does not discriminate unfairly and is fair and equitable with respect to Class 5 and the

Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect

to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

> **W.    Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

44.    The treatment of Administrative Claims, Allowed DIP Claims, Allowed Professional Fee Claims, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

> **X.    Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

45.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

> **Y.    Feasibility—Section 1129(a)(11).**

46.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Liquidating Trust or GUC Claims Administrator, as applicable, will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of, among other things, Allowed Claims, Allowed Administrative Claims, Allowed Professional Fee Claims,

Allowed Priority Tax Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, Allowed Term Loan Secured Claims, Allowed Intermediation Secured Claims, Allowed General Unsecured Claims, the Allowed Subordinated Remaining Volume Claim, and the Allowed Interests in PES Energy and each PES Ultimate Interests that will receive cash distributions pursuant to the terms of the Plan and other expenses in accordance with the terms of the Plan and section 507(a) of the Bankruptcy Code; and (e) establishes that the Acquired Reorganized Debtors will have the financial wherewithal to satisfy their obligations following the Effective Date.

### Z.    Payment of Statutory Fees—Section 1129(a)(12).

47.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.F of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by the Liquidating Trust.

### AA.    Continuation of Employee Benefits—Section 1129(a)(13).

48.    The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).    Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

### BB.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).

49.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.    The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

### CC.    "Cram Down" Requirements—Section 1129(b).

50.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.    *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been

met.  *Second*, the Plan is fair and equitable with respect to Class 5 and the Deemed Rejecting Classes.  The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Specifically, to the extent Class 7 Intercompany Claims or Class 8 Intercompany Interests are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Claims and/or Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in Class 5 and the Deemed Rejecting Classes.  *Third*, the Plan does not discriminate unfairly with respect to Class 5 and the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.  Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**DD.    Only One Plan—Section 1129(c).**

51.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

**EE.    Principal Purpose of the Plan—Section 1129(d).**

52.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**FF.    Not Small Business Cases—Section 1129(e).**

53.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**GG.    Good Faith Solicitation—Section 1125(e).**

54.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**HH.    Satisfaction of Confirmation Requirements.**

55.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**II.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

56.    Each of the conditions precedent to the Effective Date, as set forth in Article XI of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article IX of the Plan.

**JJ.    Implementation.**

57.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**KK.    Executory Contracts and Unexpired Leases.**

58.    The Debtors' decisions to assume and to reject certain Executory Contracts and Unexpired Leases, as provided in Article V of the Plan and in the Plan Supplement, are reasonable

exercises of the Debtors' business judgment.  The Debtors have demonstrated adequate assurance of future performance of the Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code (a) by the Acquired Reorganized Debtors, in the case of Executory Contracts and Unexpired Leases to be assumed by the Acquired Reorganized Debtors, and (b) by the Liquidating Trust, in the case of Executory Contracts and Unexpired Leases to be assumed by the Liquidating Trust.

59.    Except with respect to the Executory Contracts and Unexpired Leases discussed in the following paragraph of this Confirmation Order, the amounts set forth in the Plan Supplement (the "Cure Amounts") are the sole amounts necessary to be paid upon assumption of the associated Executory Contracts and Unexpired Leases under section 365(b)(1)(A) and (B) of the Bankruptcy Code, and the payment of such amounts will effect a cure of all defaults existing under such Executory Contracts and Unexpired Leases and compensate the counterparties to such Executory Contracts and Unexpired Leases for any actual pecuniary loss resulting from all defaults existing under such Executory Contracts and Unexpired Leases as of the Effective Date.

60.    The objections of counterparties to the assumption of their Executory Contracts and Unexpired Leases, to the extent that such objection was timely raised in accordance with Article V.C of the Plan, are preserved and will be considered by the Court at date and time to be scheduled.  As provided in the Disclosure Statement Order and the Solicitation Packages, the Debtors, the Liquidating Trust, and the Acquired Reorganized Debtors have reserved the right to move to reject any Executory Contract or Unexpired Lease at any time based upon the existence of any unresolved dispute.

**LL.    Disclosure of Facts.**

61.    The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Sale Transactions.

**MM.    Compliance With Bidding Procedures; Appropriate Exercise of Business Judgment.**

62.    The Debtors and the Plan Sponsor have complied with the Bidding Procedures in pursuing, proposing, and evaluating proposals for Equitization Restructuring and Sale Restructuring.  The Debtors have complied with the Bidding Procedures in selecting the Plan Sponsor as the Successful Bidder, as defined in the Bidding Procedures.  The Debtors' decisions to effectuate an Sale Restructuring and to select the Plan Sponsor as the Successful Bidder are appropriate exercises of their business judgment.

**NN.    Good Faith.**

63.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Purchase Agreement and the other Restructuring Transactions.  The Released Parties have made a substantial contribution to the Debtors' reorganization.

**OO.    Essential Elements of the Plan.**

64.    The Purchase Agreement is an essential element of the Plan, and entry into the Purchase Agreement is in the best interests of the Debtors, their estates, and their creditors. The Debtors have exercised sound business judgment in determining to enter into the Purchase Agreement and have provided adequate notice thereof.  The Purchase Agreement has been negotiated in good faith and at arm's length among the Debtors and the Plan Sponsor thereunder,

and any fees paid thereunder are deemed to have been extended, issued, and made in good faith. In negotiating and consummating the Sale Transactions, the Plan Sponsor has acted and will be acting in good faith for purposes of section 363(m) of the Bankruptcy Code.

65.     Article X.F of the Plan describes certain releases granted by the Debtors, the Liquidating Trust, their Estates, and the Acquired Reorganized Debtors (the "Debtor Release"). The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such release is a necessary and integral element of the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests.  The Debtors', the Liquidating Trust's, the Non-Acquired Reorganized Debtors, or the Acquired Reorganized Debtors' pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.  The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able counsel and financial advisors. The Debtor Release is therefore the result of an arm's-length negotiation process.  Also, the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released in Article X.F. of the Plan; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to any of the Debtors' asserting any Claim or Cause of Action released by Article X.F. of the Plan.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

66.     Article X.H. of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Release").  The Third-Party Release provides finality for the Debtors, the Non-Acquired Reorganized Debtors, the Acquired Reorganized Debtors, and the other Released

Parties regarding the parties' respective obligations under the Plan, the Restructuring Transactions, and with respect to the Acquired Reorganized Debtors.  The Third-Party Release is consensual with respect to the Releasing Parties.  The Confirmation Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* (national edition) and *USA Today* (national edition) on December 16, 2019, and the ballots and notice, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party Release and that each Holder of Claims or Interests may elect not to grant such Third Party Release.  Such release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the ballots and notices. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary.  The Third-Party Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' estates, and all Holders of Claims and Interests.  Also, the Third-Party Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Third-Party Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties' asserting any Claim or Cause of Action released pursuant to the Third-Party Release; and (g) consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code.

67.    The exculpation described in Article X.I of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited

in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance with the applicable laws.  The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

68.    The injunction provision set forth in Article X.J of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve these purposes.

69.    Article IV.E.8 of the Plan appropriately provides that, unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtors shall convey, on the Effective Date, to the Liquidating Trust all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action constituting Excluded Assets (including, subject to the Litigation Control Agreement, any Retained Matters), whether arising before or after the Petition Date, which shall vest in the Liquidating Trust pursuant to the terms of the Plan, in accordance with section 1123(b) of the Bankruptcy Code.  The provisions regarding the preservation of Causes of Action in the Plan,

including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

70.    The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' estates described in Article X.E of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

71.    Each of the Litigation Control Agreement, attached as an exhibit to the Purchase Agreement (the "Litigation Control Agreement"), and the Tax Refund Agreement, attached as an exhibit to the Purchase Agreement (the "Tax Refund Agreement"), as well as the allocation of responsibilities and expenses among the parties to such agreements, are essential elements of the Plan.  The Plan Sponsor would not have entered into the Purchase Agreement or proceeded to close the Sale Transactions if the Plan Sponsor or the Acquired Reorganized Debtors, or affiliates of either, were exposed to liability for income or other taxes that may arise in connection with the receipt by the Liquidating Trust, or by the Acquired Reorganized Debtors on behalf of the Liquidating Trust, of any or all proceeds of the Tax Refund Claims (as defined in the Purchase Agreement), proceeds of insurance related to the June 21, 2019 explosion at the Girard Point refinery, or other claims or Causes of Action from which the Plan Sponsor, the Acquired Reorganized Debtors, and their affiliates will receive no benefit.  The provisions of the Litigation Control Agreement and the Tax Refund Agreement, and the responsibility for taxes and tax reporting requirements therein, are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

72.     The rejection of that certain Option Agreement dated November 1, 2017 between Point Breeze Renewable Energy, LLC ("Point Breeze") and Debtor Philadelphia Energy Solutions Refining and Marketing LLC (the "Point Breeze Option"), and the determination that Point Breeze has no right to present or future occupancy of any portion of the Real Property (as defined in the Purchase Agreement) under the Point Breeze Option, any related lease, section 365(h) of the Bankruptcy Code, or otherwise, are essential elements of the Plan.  The Plan Sponsor would not have entered into the Purchase Agreement or proceeded to close the Sale Transactions if Point Breeze had a right to occupancy of any portion of the Real Property.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

73.     **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

74.     **Solicitation.**  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

75.     **Notice of Confirmation Hearing.**  The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

76.     **Selection of Plan Sponsor and Decision to Pursue Sale Restructuring.**  The Debtors' determination that the Plan Sponsor was the Successful Bidder, as defined in the

Bidding Procedures, and the Debtors' decision to effectuate the Sale Restructuring, were appropriate and satisfactory and are approved in all respects.

77.    **Litigation Control Agreement and Tax Refund Agreement.**  The terms of the Litigation Control Agreement and the Tax Refund Agreement are appropriate and satisfactory and are approved in all respects.  To the extent that any of the Retained Matters (as defined in the Litigation Control Agreement) results in a recovery for the Liquidation Trust (including any contingency fee or other compensation for attorneys or other representatives) and such recovery results in the imposition of income or other taxes, the Liquidating Trust, or the beneficiaries of the Liquidating Trust, as applicable, shall be solely responsible for such taxes, and the Liquidating Trust shall indemnify the Plan Sponsor, the Acquired Reorganized Debtors, and their respective affiliates against any liability for such taxes.  Upon receipt of any such recovery, the Liquidating Trust shall reserve funds of the Liquidating Trust in an amount reasonably sufficient to permit the Liquidating Trust to satisfy any obligation that may be owed by the Liquidating Trust to any taxing authority or with respect to the indemnification obligations described in this paragraph.

78.    **Confirmation of the Plan.**  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

79.    **Objections.**  All objections and all reservations of rights pertaining to Confirmation or approval of the Disclosure Statement that have not been withdrawn, waived, or consensually resolved are overruled on the merits unless otherwise indicated in this Confirmation Order.

80.    **Plan Modifications.**  The Plan Modifications do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019;

*provided* that, as to the United States and the DEP, nothing herein shall alter or change the requirements of section 1127 of the Bankruptcy Code with respect to Plan Modifications by the Debtors and the Liquidating Trust.   After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing with the Court on January 29, 2020, February 10, 2020, and February 12, 2020, respectively, of the *Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates*, the *Third Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates*, and the *Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* and the disclosure of additional Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

81.     **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

82.     **No Action Required.**  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors

to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Purchase Agreement.

83.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, the Non-Acquired Reorganized Debtors, and any and all Holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

84.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Liquidating Trust, the Plan Sponsor, or the Acquired Reorganized Debtors, as applicable, and their respective successors and assigns.

85.    **Vesting of Assets.**  Except as otherwise provided in the Plan, this Confirmation Order, the Purchase Agreement, the Retained Causes of Action List, or any agreement, instrument,

or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, (a) to the extent of the Term Loan Lenders' consent (with respect to Term Loan Priority Collateral) and Intermediation Provider's consent (with respect to SOA Separate Assets and Collateral and Intermediation Priority Collateral), on the Effective Date, the assets of the Debtors that are not Acquired Reorganized Debtors, including all work product, attorney-client, or other privilege (the "Privileges") held by the Debtors or Reorganized Debtors, other than assets sold to the Plan Sponsor pursuant to the Purchase Agreement, as well as the assets defined as "Excluded Assets" in the Purchase Agreement, shall vest in the Liquidating Trust; and (b) all other assets of the Acquired Reorganized Debtors shall remain in the Acquired Reorganized Debtors, in each case free and clear of all Liens, Claims, charges, or other encumbrances to the maximum extent permitted by applicable law and in accordance with the Purchase Agreement; *provided* that, subject to funding the Professional Fee Escrow Account and Article VIII of the Plan, the liens and claims of the DIP Lenders, Term Loan Lenders, and Intermediation Provider shall attach to the proceeds of the Sale Transactions to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets, until such DIP Claims, Term Loan Claims, and Intermediation Claims are satisfied as set forth in Article II.C, Article III.B.3, and Article III.B.4 of the Plan, respectively.  On and after the Effective Date, (y) the Acquired Reorganized Debtors may operate their businesses and use, acquire, or dispose of property and compromise or settle any claims or Causes of Action, and (z) except as otherwise provided for in the Plan, the DIP and Cash Collateral Orders, or the Purchase Agreement, the Non-Acquired Reorganized Debtors may operate their business and use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Pursuant to the Purchase Agreement, and notwithstanding anything to the contrary herein or the Confirmation Order, the bare legal title to the Retained Matters numbered 1, 2, and 3 in Schedule 1 to the Litigation Control Agreement shall remain with the Acquired Reorganized Debtors and shall not transfer to the Non-Acquired Reorganized Debtors or the Liquidating Trust; *provided*, *however*, that pursuant to the terms of the Litigation Control Agreement and the Tax Refund Agreement, each of which are to be entered into at the closing of the Sale Transactions, the Liquidating Trust shall have the sole economic interest in, and shall be entitled to any Proceeds arising from, or otherwise related to, in and all of the Retained Matters (including, with respect to the Tax Refund Claims, as more specifically set forth in the Tax Refund Agreement), along with certain other rights with respect to the Retained Matters, as further set forth in the Litigation Control Agreement and Tax Refund Agreement; *provided*, *further*, that nothing in this Confirmation Order shall impair any right of setoff or recoupment of the United States with respect to the United States Refund Claims (as defined herein), and such rights are expressly reserved.

86.     On and after the Effective Date, the Liquidating Trust shall be entitled to exercise the rights of the Sellers and shall perform the obligations of the Sellers pursuant to the Purchase Agreement, the Litigation Control Agreement the Tax Refund Agreement and any other transaction documents entered into in connection with the Sale Transactions, and any surviving obligations of the Plan Sponsor or the Acquired Reorganized Debtors to the Sellers shall be deemed obligations to the Liquidating Trust.

87.     **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions in connection with the Purchase Agreement, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors,

managers, members, or equity holders of the Debtors or the Acquired Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

88.    **Restructuring Transactions**.  The Debtors or Acquired Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Sale Transactions, including the Purchase Agreement, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Acquired Reorganized Debtors, as and to the extent provided in the Plan.  Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions are hereby approved.  Such transfers and obligations are made for reasonably equivalent value and fair consideration under the Bankruptcy Code, any other laws of the United States, and the laws of any state, territory, possession, and the District of Columbia, and they shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.  Except as otherwise provided in the Plan, each Acquired Reorganized Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

89.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.** On the Effective Date, except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, or this Confirmation Order, on the Effective Date:  (a) the obligations of any Debtor under any certificate, share, note, bond,

indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered to the Debtors and the Debtors shall not have any continuing obligations thereunder; and (b) subject to Article V.D and Article X of the Plan, the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; *provided, however*, that the Term Loan Credit Agreement and all Loan Documents (as defined in the Term Loan Credit Agreement) shall remain in place as between all parties thereto other than the Debtors.

90.    **Distributions.**  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Liquidating Trust or the GUC Claims Administrator, as applicable, shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, this Confirmation Order, or the Liquidating Trust Agreement, as applicable; *provided* that, notwithstanding anything to the contrary in the Plan, the GUC Claims Administrator may make no more than two attempts to seek from a Holder of an Allowed General Unsecured Claim an executed Internal Revenue Service Form W-9 in order to make a distribution to such Holder; *provided, further*, that if, after two unsuccessful attempts by the GUC Claims

Administrator to obtain from such Holder of an Allowed General Secured Claim an executed Internal Revenue Service Form W-9, such Holder's distribution shall constitute GUC Settlement Proceeds and revert to the GUC Settlement Reserve to be distributed on a Pro Rata basis in accordance with the Plan; *provided, further*, that Governmental Units shall not be required to submit an executed Internal Revenue Service Form W-9 to receive a distribution on account of an Allowed Claim.

91.    **Claims Register.**  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Liquidating Trust, or the GUC Claims Administrator, as applicable, without an objection having to be Filed and without any further notice to or action, order, or approval of the Court. Omni Management Group, the Debtors' notice and claims agent, is directed to adjust or expunge such Claims in the Claims Register, as applicable.

92.    **Preservation of Causes of Action.**  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey, on the Effective Date, to the Liquidating Trust all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action constituting Excluded Assets (including, subject to the Litigation Control Agreement, the control over any Retained Matters), whether arising before or after the Petition Date, which shall vest in the Liquidating Trust pursuant to the terms of the Plan. The Liquidating Trust may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, and the Liquidating Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Liquidating Trust may, in its reasonable

business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Liquidating Trust deems appropriate, including on a contingency fee basis, in accordance with the terms of the Liquidating Trust Agreement.  Subject to the Litigation Control Agreement, all other Causes of Action owned by the Acquired Reorganized Debtors (including the bare legal title to the Retained Matters numbered 1, 2, and 3 in <u>Schedule 1</u> to the Litigation Control Agreement) shall remain in the applicable Acquired Reorganized Debtors, which may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, and the Acquired Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Acquired Reorganized Debtors or the Liquidating Trust will not pursue any and all available Causes of Action against them. The Acquired Reorganized Debtors and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the specific identification of a retained or preserved Cause of Action in the Plan, the Disclosure Statement, or the Plan Supplement shall prevail over the general language of the releases set forth in Article X.F of the Plan.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Liquidating Trust and the Acquired Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial,

equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Liquidating Trust and the Acquired Reorganized Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Liquidating Trust and the Acquired Reorganized Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Court.

93.    **Subordination.**    Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Court:   (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise; (b) any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights; and (c) any such subordination rights shall be waived, and this Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

94.    **Release of Liens; Restriction on Pledge.**  On the Effective Date, to the maximum extent permitted by applicable law, all Liens on any property of any Debtors or the Acquired Reorganized Debtors shall automatically terminate, all property subject to such Liens shall be

automatically released, and all guarantees of any Debtors or the Acquired Reorganized Debtors shall be automatically discharged and released.   Notwithstanding the foregoing sentence or anything to the contrary set forth in the Plan other than Article VIII of the Plan, subject to the funding of the Professional Fee Escrow Account, until the DIP Claims are satisfied in accordance with Article II.C of the Plan, the Term Loan Claims are satisfied in accordance with Article III.B.3 of the Plan, the Intermediation Claims are satisfied in accordance with Article III.B.4 of the Plan, and the Other Secured Claims are satisfied in accordance with Article III.B.1 of the Plan, the Liens of the DIP Lenders, Term Loan Lenders, and Intermediation Provider shall attach to the proceeds of the Sale Transactions and shall continue to attach to the assets of the Non-Acquired Reorganized Debtors (other than assets sold to the Plan Sponsor pursuant to the Purchase Agreement) and the assets defined as Excluded Assets in the Purchase Agreement, in each case to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets and in each case such Liens shall be valid, biding, perfected and enforceable until satisfaction in full of the Allowed Claim that such Lien is securing without the need for the filing of any mortgages or financing statements or for any other action to be taken; *provided, further*, that, notwithstanding anything to the contrary set forth in this Plan, valid statutory mechanics' Liens under non-bankruptcy law on any property of the Debtors shall attach to the proceeds of the Sale Transactions to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets.   In no event shall the Plan Sponsor pledge any Excluded Asset to secure any obligation arising on or after the closing date of the Sale Transactions or use Excluded Asset or proceeds thereof to satisfy any obligation except the obligations under the "wrong pocket" provisions of the Purchase Agreement and other agreement entered into in connection therewith, including any litigation cooperation agreement.

95.    **Compromise of Controversies.**  In consideration of the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement of all Settled Claims by the Settlement Parties under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  All distributions made to holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

96.    **Sale Transactions; Free and Clear**.  Entry of this Confirmation Order shall constitute approval of the Restructuring Transactions and Restructuring Documents, including the Sale Transactions and the Purchase Agreement.  The Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, and the Plan Sponsor are authorized to take all actions as may be deemed necessary or appropriate to consummate any Restructuring Transactions, including the Sale Transactions, pursuant to the terms of the Plan, any Restructuring Documents, and this Confirmation Order.  The membership interests sold to the Plan Sponsor under the Purchase Agreement shall be free and clear of any interests, obligations, rights, encumbrances, pledges, liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens), mortgages, deeds of trust, security interests, claims (including any "claim" as defined in Section 101(5) of the Bankruptcy Code), liabilities, debt obligations, losses, penalties, leases, charges, offsets, contracts, options, rights of first refusal, rights of first offer, rights of first sale, rights of notice, easements, servitudes, proxies, voting trusts or agreements, transfer restrictions under any agreement, conditional sale or other title retention agreements, judgments, hypothecations, demands, licenses, sublicenses, assignments, indentures, loan agreements, instruments, debts, rights of recovery, guaranties, contractual commitments,

restrictions, rights of recoupment, labor and employment rights and claims, employee benefit agreements and obligations, collective bargaining agreements and obligations, pension rights and claims, claims based on reimbursement, contribution, indemnity, exoneration, products liability, tortious conduct, property damage, personal injury, alter-ego or taxes, claims based on pension plan contributions and related liabilities, environmental liabilities or obligations (including, without limitation, toxic tort claims), options to purchase, regulatory violations, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, and obligation claims, in each case, of whatever kind, nature, or description in, against or with respect to any of the Debtors, or their businesses, having arisen, existed, or accrued prior to and through the Effective Date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, material or non-material, disputed or undisputed, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise, and whether arising prior to, on or after the Petition Date, including claims or liabilities otherwise arising under doctrines of successor liability, *de facto* merger, or substantial continuity, or liabilities or obligations arising under any law or order (other than encumbrances created by the Plan Sponsor) other than the Transferring Liens.

97.     **Operations After Closing.**  On and after the Effective Date, except as otherwise provided in the Plan, the Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, or the Plan Sponsor, as applicable, may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision

or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

98.    **Rejection of Contracts and Leases.**  On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transactions; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the rejection of an Executory Contract or Unexpired Lease under the Plan, if any, are overruled on their merits.

99.    Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or the Plan Supplement, the current and former directors, officers, and, managers of the Debtors shall be released from any and all non-compete, non-solicit, and similar obligations or liabilities associated therewith, including, without limitation, arising from and in connection with any

non-compete agreement between such directors, officers, and, managers and the Debtors, which shall not be included in the Schedule of Assumed Executory Contracts and Unexpired Leases and shall be rejected pursuant to the Plan and this Confirmation Order.

100.    **Point Breeze Rejection**.  The Debtors shall have through the Effective Date to reject the PBRE Agreements (to the extent they are determined to be executory), under the Plan and Purchase Agreement, and such rejection is hereby approved under section 365(b). Notwithstanding the foregoing, nothing herein or in the Plan shall be construed to impair the rights of PBRE or any other party with respect to (i) whether the PBRE Agreements are executory, (ii) whether any rights under the PBRE Agreements have or can be properly exercised, (iii) whether PBRE has any rights under section 365(h) of the Bankruptcy Code and, if so, the scope of any such rights; (iv) whether the premises that are the subject of the Site Lease Agreement can be transferred free and clear pursuant to section 363 of the Bankruptcy Code of the rights PBRE has asserted in their objection; and (v) whether the exercise of any rights under the PBRE Agreements by PBRE during the pendency of these cases violated the automatic stay under section 362 of the Bankruptcy Code.  Within three (3) days after entry of any order confirming the Plan, the Debtors, HRP, and PBRE shall submit a proposed scheduling order to the Bankruptcy Court for any litigation needed to determine the parties' rights, to conclude with a hearing in the Bankruptcy Court prior to March 27, 2020.

101.    **Assumption of Contracts and Leases.**  On the Effective Date, each Executory Contract and Unexpired Lease scheduled to be assumed in the Plan Supplement (other than the Executory Contracts and Unexpired Leases identified in paragraph 60, which will be addressed in a separate hearing) shall be deemed assumed by the Liquidating Trust or the Acquired Reorganized Debtors, as applicable, pursuant to sections 365 and 1123 of the Bankruptcy Code.  Upon the

payment of the applicable Cure Amount, if any, each such Executory Contract and Unexpired Lease will remain in full force and effect, and no default shall exist under such Executory Contract or Unexpired Lease, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts shall not be subject to further dispute or audit, including any based on performance prior to the Effective Date, irrespective of whether such contract or lease contains an audit clause.  After the payment of the Cure Amounts by or on behalf of the Liquidating Trust's or the applicable Acquired Reorganized Debtor, none of the Liquidating Trust, the Acquired Reorganized Debtors, nor the Plan Sponsor shall have any further liabilities to the counterparties to such Executory Contracts and Unexpired Leases other than the applicable Liquidating Trust's or Acquired Reorganized Debtor's obligations that accrue and become due and payable on or after the Effective Date.  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the assumed Executory Contracts and Unexpired Leases shall be forever barred and permanently enjoined from (a) raising or asserting against the Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, or the Plan Sponsor any default, acceleration, breach, claim, or pecuniary loss, arising under or related to such contracts or leases existing as of and including the Effective Date or arising by reason of the closing of the Sale Transactions, including any breach related to or arising out of change-of-control provisions in such contracts or leases, or any purported written or oral modification to such contracts or leases, and (b) asserting against Plan Sponsor or the Acquired Reorganized Debtors any claim, counterclaim, defense, breach, condition, or setoff arising under such contracts or leases and asserted or capable of being asserted against the Debtors as of the Effective Date or arising by reason of the Sale Transactions.  Notwithstanding the foregoing, nothing herein shall prevent the Liquidating Trust, the Acquired Reorganized Debtors, or the other Debtors, as applicable, from

settling any Cure Claim without further notice to or action, order, or approval of the Court. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and assignments, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to section 365(a) and 1123 of the Bankruptcy Code.

102. **Adjustments to Rejection and Assumption.** Notwithstanding the preceding four paragraphs of this Confirmation Order, on or before the Effective Date, the Plan Sponsor may direct the Debtors to specifically reject or to assume additional Executory Contracts and Unexpired Leases of or relating to the Acquired Reorganized Debtors, including Executory Contracts and Unexpired Leases that have previously been identified for assumption or rejection, as the case may be, to the extent such rejection or assumption is not otherwise inconsistent with this Confirmation Order and the Purchase Agreement. The Debtors shall promptly provide notice of such rejection or assumption to applicable counterparties in a manner substantially similar to the applicable form of notice approved in the Disclosure Statement Order, and such counterparties shall have fourteen (14) days to file and serve any objection to the proposed rejection or assumption or to the Cure Amount identified in such notice. Any rejection or assumption of an Executory Contract or Unexpired Lease pursuant to this paragraph shall be effective as of the Effective Date, unless the parties agree or the Court determines otherwise.

103. **Waiver or Estoppel.** Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as a Secured Claim, or not subordinated, by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed

with the Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.

104.    **Indemnification.**  All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, insurance policies, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed by the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable, and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose; *provided, however*, that none of the Acquired Reorganized Debtors or the Plan Sponsor shall have any liability or other responsibility for any such obligation.  All indemnification obligations of the Debtors arising under or pursuant to the Term Loan Credit Agreement or the DIP Agreement shall be assumed by the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable, and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose; *provided, however*, that neither the Acquired Reorganized Debtors nor the Plan Sponsor shall have any liability or other responsibility for any such obligation.

105.    **Indemnification of Plan Sponsor.**  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Liquidating Trust shall indemnify and hold harmless the Plan Sponsor and the Acquired Reorganized Debtors (i) on account of any liabilities or Claims

that arose under (a) any of the Debtors' compensation and benefits programs; (b) any of the Debtors' collective bargaining agreements, in each case solely to the extent such Claim or liability arose prior to the Effective Date under applicable non-bankruptcy law; and (c) any post-Effective Date exercise of a right of setoff or recoupment against a receivable or other asset to which an Acquired Reorganized Debtor is entitled (other than an Excluded Asset) by a Governmental Unit to satisfy, in whole or in part, a pre-Effective Date Allowed Claim against the Liquidating Trust; and and (ii) on account of any liability or obligation on account of any Claim of a Governmental Unit arising on or after the Confirmation Date but before the Effective Date; *provided* that, to the extent that the Court determines that the Plan Sponsor or an Acquired Reorganized Debtor is required to satisfy the RINs Retirement Obligations, the Liquidating Trust shall not be required to indemnify the Plan Sponsor or an Acquired Reorganized Debtor on account of such RINs Retirement Obligations.

106.   **Authorization to Consummate.**   The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XI of the Plan.

107.   **Professional Compensation.**   All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than 45 days after the Effective Date.   After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Court orders, including the Interim Compensation Order, the Allowed amounts of such Professional Fee Claims shall be determined by the Court.   The amount of the Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.   Professionals shall deliver to

the Debtors their estimates for purposes of the Liquidating Trust's computing the Professional Fee Amount no later than five (5) days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims filed with the Court.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

108.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Liquidating Trust, as applicable, shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Acquired Reorganized Debtors, or the Liquidating Trust, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

109.    **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Liquidating Trust promptly following the occurrence of the Effective Date, if not returned or applied earlier.

110.    **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, injunction, opt out, and related provisions set forth in the Plan are approved

and authorized in their entirety, and such provisions are effective and binding on all Persons and

Entities to the extent provided therein except as otherwise provided in this Confirmation Order,

*provided*, *however*, that nothing in the exculpation related provisions of the Plan shall release the

Debtors from the provisions of the Plan governing satisfaction of Allowed Claims including

Allowed Administrative Expense Claims or change the standard for liability on Allowed Claims

or Allowed Administrative Expense Claims, subject to any applicable bankruptcy and

non-bankruptcy law.

111.    **Governmental Units**.  Nothing in this Order or the Plan or related Plan documents

discharges, releases, exculpates, precludes or enjoins: (i) any liability to a governmental unit as

defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C.

§ 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation

Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations

that any entity would be subject to as the owner or operator of property after the Confirmation

Date; (iv) any liability to a Governmental Unit on the part of any non-Debtor; or (v) any liability

of any debtor, non-debtor, or any other person or entity under criminal laws of any Governmental

Unit.  Nothing in this Order or the Plan or related Plan documents authorizes the transfer or

assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e)

approval, or the discontinuation of any obligation thereunder, without compliance with all

applicable legal requirements and approvals under police or regulatory law.  The first sentence of

Article VI.J.2 of the Plan shall not apply to Allowed Claims of Governmental Units.

112.    Nor shall anything in this Order or the Plan or related Plan documents (x) enjoin or

otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability

described in the preceding sentence, except as provided in Article VI.K of the Plan, or (y) affect

any setoff or recoupment rights of any Governmental Unit except as such rights may be impaired under applicable law subject to paragraph 119 of this Confirmation Order; *provided* that (i) the Court retains jurisdiction to determine whether environmental liabilities asserted by any Governmental Unit or other Entity are discharged or otherwise barred by the Plan or related Plan documents, this Order, any other order relating to the Debtors or the Liquidating Trust, or the Bankruptcy Code and (ii) nothing in any of the orders or other documents identified in the preceding subclause (i) hereof divests any tribunal of any jurisdiction it may have under applicable environmental law or other police or regulatory laws to adjudicate any defense asserted under any of those orders or other documents; *provided, further*, that all Governmental Units and other Entities hereby reserve whatever rights they may have to argue that any tribunal of any jurisdiction has or does not have jurisdiction with respect to the matters described in the preceding subclauses (i) and (ii).

113.    **RINs Retirement Obligations**.  Unless prior to the Effective Date (i) the Court determines that the RINs Retirement Obligations  constitute dischargeable "debt" and/or a "claim" pursuant to the Bankruptcy Code or orders that an alternative treatment is warranted, or (ii) the Acquired Reorganized Debtors and/or Debtors have complied with the RINs Retirement Obligations or the Acquired Reorganized Debtors have committed to the United States to comply with the RINs Retirement Obligations  or the Court determines that the RINs Retirement Obligations are the responsibility of the Acquired Reorganized Debtors under the Purchase and Sale Agreement, then on the Effective Date, the Liquidating Trust shall establish the RINs Retirement Obligations Reserve in accordance with Article VI.K  by depositing Cash in the amount of $35 million into the RINs Retirement Obligations Reserve; *provided*, that the deposit shall not constitute a limit on the RINs required to be retired. Any deposit remaining in the RINs

Retirement Obligations Reserve after satisfaction of injunctive compliance obligations shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII of the Plan without any further action or order of the Bankruptcy Court.

114.    Notwithstanding anything to the contrary in the Plan or the Confirmation Order, in the event the Court determines that the RINs Retirement Obligations constitute dischargeable "debt" and/or a "claim" pursuant to the Bankruptcy Code, then (i) such liabilities shall constitute Class 5 General Unsecured Claims (but shall be subject to any right of setoff or recoupment as provided in and limited by paragraph 119 of this Confirmation Order and may be estimated in accordance with Article IX.C subject to applicable provisions of the Bankruptcy Code and the United States shall receive pro rata distributions (subject to any right of setoff or recoupment as provided in and limited by paragraph 119 of this Order ); and (ii) the RINs Retirement Obligations Reserve shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court.

115.    Notwithstanding anything in the Plan or this Confirmation Order, nothing herein is intended to modify or does modify the obligations of the respective parties under the Purchase and Sale Agreement relating to the Consent Decree and RINs Retirement Obligations.

116.    **PPA Administrative Agreement**.  The Acquired Reorganized Debtor PESRM shall continue to be liable for all of PESRM's obligations under In re Philadelphia Energy Solutions LLC and Philadelphia Energy Solutions Refining and Marketing LLC, CERC/RCRA-03-2012-0224DC (the "PPA Administrative Agreement") which shall continue to be in full force and effect notwithstanding the Bankruptcy Case.  Notwithstanding anything to the contrary in this

Order, the Plan or related documents, nothing in the Plan or related documents shall impair the rights, Claims or Causes of Action of governmental units against the PESRM under the PPA Administrative Agreement and such rights, claims and causes of action shall not be discharged or otherwise adversely affected by the Plan, shall survive the Chapter 11 Case as if it had not been commenced, and may be determined or adjudicated before the respective administrative agency having jurisdiction or court of competent jurisdiction; *provided*, *however*, that all claims for penalties (including stipulated penalties), fines, or costs under the PPA Administrative Agreement for days of violation prior to the Effective Date shall be treated as provided in the Plan. Notwithstanding anything to the contrary in this Order, the Plan or related documents, no provision of this Order shall (1) preclude PESRM and/or the Reorganized Debtors, as applicable, to seek redevelopment of the Real Property for alternative purposes to the extent not inconsistent with applicable law, including other commercial or industrial uses and seek approval, if and to the extent required, of a commercially reasonable soil management work plan or similar approvals that permits and is otherwise consistent with such redevelopment, or (2) impair or abrogate any rights or defenses of PESRM and/or the U.S. Environmental Protection Agency under the PPA Administrative Agreement.

117.    **2006 Consent Decree**.  The Acquired Reorganized Debtor PESRM shall continue to be liable for all of PESRM's obligations under United States v. Sunoco, Inc., No. 05-02866 (E.D.PA 2006) (the "2006 Consent Decree") as amended, to the extent applicable, which shall continue to be in full force and effect notwithstanding the Bankruptcy Case except with respect to existing claims for penalties.  Notwithstanding anything to the contrary in this Order, the Plan or related documents, nothing in the Plan or related documents shall impair the rights, claims or causes of action of governmental units against the PESRM under the 2006 Consent Decree and

such rights, claims and causes of action shall not be discharged or otherwise adversely affected by the Plan, shall survive the Chapter 11 Case as if it had not been commenced, and may be determined or adjudicated before the respective administrative agency having jurisdiction or court of competent jurisdiction; *provided*, *however*, that all claims for penalties (including stipulated penalties) or fines under the 2006 Consent Decree for days of violation prior to the Effective Date shall be treated as provided in the Plan (subject to any right of setoff as provided in Paragraph 119 of this Order). Notwithstanding anything to the contrary in this Order, the Plan or related documents, no provision of this Order shall (1) preclude PESRM and/or the Reorganized Debtors, as applicable, to seek redevelopment of the Real Property for alternative purposes to the extent not inconsistent with applicable law, including other commercial or industrial uses and seek approval, if and to the extent required, of a commercially reasonable soil management work plan or similar approvals that permits and is otherwise consistent with such redevelopment, or (2) impair or abrogate any rights or defenses of PESRM and/or the U.S. Environmental Protection Agency under the 2006 Consent Decree.

118. **Department of Environmental Protection**. The Acquired Reorganized Debtor PESRM shall continue to be liable for all of PESRM's obligations under the Consent Order and Agreement entered into on January 15, 2020 by and between the DEP and PESRM and the Consent Order and Agreement entered into on August 14, 2012 by and among DEP, Sunoco, Inc. (R&M), and PESRM (together, the "CO&As"), which shall continue to be in full force and effect notwithstanding the Bankruptcy Case. Notwithstanding anything to the contrary in this Order, the Plan or related documents, nothing in the Plan or related documents shall impair the rights, claims or causes of action of the DEP against PESRM under the CO&As and such rights, claims and causes of action shall not be discharged or otherwise adversely affected by the Plan, shall survive

the Chapter 11 Case as if it had not been commenced, and may be determined or adjudicated before the respective administrative agency having jurisdiction or court of competent jurisdiction; *provided, however*, that all claims arising on or prior to the Effective Date for penalties (including stipulated penalties), fines, fees or any other monetary liability, under the CO&As shall be treated as provided in the Plan (subject to any right of setoff as provided in paragraph 119 of this Order).  Notwithstanding anything to the contrary in this Order, the Plan or related documents, no provision of this Order shall (1) contradict Paragraph 17 of the January 15, 2020 Consent Order and Agreement by and between DEP and PESRM, or (2) excuse DEP from complying with applicable laws and procedures in the CO&As as necessary to effect the foregoing. Notwithstanding any provisions to the contrary in the Documents (as defined below), as to the DEP, nothing in the Documents shall alter or change the requirements of section 1127 of the Bankruptcy Code with respect to Plan modifications by the Debtors and Liquidating Trust.

119.    **United States**.  Notwithstanding any provision to the contrary in the Plan, this Order or any implementing plan documents (collectively, "Documents"):

      a.    As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), nothing in the Documents shall: (i) require the United States to file an administrative claim in order to receive payment for any liability described in section 503(b)(1)(B) and (C) of the Bankruptcy Code; (ii) be construed as a compromise or settlement of any claim, liability, suit, cause of action, right or interest of the United States;  (iii) require the United States to obtain Bankruptcy Court approval prior to amending any pre-petition or post-petition claim and such amendments shall not be automatically adjusted or expunged under the Plan; (iv) allow the Debtors or the Reorganized Debtors

to assume, assign or otherwise transfer a contract, lease or any other interest ("Federal Interests") of the United States without first complying with the terms of any Federal Interest and applicable non-bankruptcy law; (v) be interpreted to set cure amounts with respect to Federal Interests or require the United States to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (vi) discharge any debt described in section 1141(d)(6) of the Bankruptcy Code; (vii) alter or expand the scope of sections 505 or 525 of the Bankruptcy Code; (viii) alter or affect the Bankruptcy Code provisions, including section 502 of the Bankruptcy Code, governing the estimation of claims held by the United States; (ix) alter or change the requirements of section 1127 of the Bankruptcy Code with respect to Plan modifications by the Debtors and the Liquidating Trust; (x) release, discharge, enjoin, or exculpate any non-Debtor from any claim, liability, suit, cause of action, right or interest of the United States nor shall anything enjoin the United States from bringing any claim, suit, cause of action or other proceeding against any non-Debtor for any liability whatsoever; (xi) alter or expand the scope of section 1141(d)(3) of the Bankruptcy Code; (xii) confer exclusive jurisdiction to the Bankruptcy Court with respect to the claims, liabilities, and causes of action of the United States, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code) ; or (xiii) as to setoff and recoupment,

(1) with respect to any request or claim of Debtors asserted in Philadelphia Energy Solutions Refining and Marketing, LLC, No. 19-510T

(Fed. Cl.) or related thereto, including but not limited to the Tax Refund Claims, as defined in the Purchase Agreement, (the "United States Refund Claims"),

    i. Nothing in the Documents shall impair any right of setoff or recoupment of the United States with respect to the United States Refund Claims, and such rights are expressly reserved;

    ii. The United States has adequately preserved, and does not need to take any further action prior to Confirmation to exercise any right of setoff and/or recoupment with respect to the United States Refund Claims;

    iii. The Debtors waive any defenses related to the adequacy of preservation (including whether the United States needed to take further action prior to Confirmation) of any right of setoff or recoupment with respect to the United States Refund Claims;

    iv. The Debtors reserve all defenses to any right of setoff and/or recoupment with respect to the United States Refund Claims under applicable law other than whether the United States has adequately preserved its rights or needed to take further action to exercise its rights prior to confirmation and the United States reserves all responses thereto; *provided, however*, that nothing in the Documents shall alter the status quo as to any requirement of mutuality for purposes of 11 U.S.C. § 553 in the offsetting of claims, including but not limited to, for purposes of mutuality, changing the ownership or title to any United States Refund Claims from Philadelphia

Energy Solutions Refining and Marketing, LLC; *provided, further*, that nothing in the Documents shall alter any right of setoff or recoupment the United States may be entitled to exercise or alter the law of setoff or recoupment on account of provisions relating to the distribution of any United States Refund Claims or the proceeds thereof.

(2) With respect to any other receivable from or claim against the United States other than the United States Refund Claims ("Other United States Claims"),

i.   Nothing in the Documents shall impair any right of setoff with respect to the Other United States Claims and such rights are expressly reserved except as to whether, if any, further action may be required prior to Confirmation to preserve such right of setoff under applicable law; and

ii.  The Debtors reserve all defenses to any right of setoff with respect to the Other United States Claims under applicable law and the United States reserves all responses thereto.

(3) Except as provided in this paragraph with respect to United States Refund Claims, nothing in the Documents shall affect any recoupment rights of the United States, and such rights are expressly reserved.

b.  Without limiting the foregoing, and for the avoidance of doubt, (1) the United States, on behalf of U.S. Customs and Border Protection

(the "CBP"), reserves any and all rights, interests, and claims that it has or may acquire against any surety or sureties who issued any bond or bonds to the Debtors or Liquidating Trust for the benefit of CBP (e.g., on which CBP is the third party beneficiary, if any) and nothing shall release, discharge, enjoin or exculpate any entity from its obligations or liabilities as a surety, nor affect or impair any rights or causes of action that the United States has or may have against any surety under any Customs bond pursuant to applicable non-bankruptcy law, nor shall anything preclude or prohibit the ability of the United States to make demand on, be paid by, or otherwise pursue any surety that is liable for any debt owed to the United States; and (2) notwithstanding any other provision in the Documents, no sale or transfer of control of any rights and interests of the Debtors in any federal license or authorization issued by the Federal Communications Commission (the "FCC") shall take place prior to the issuance of FCC regulatory approval for such sale or transfer of control  pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales and transfers and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

c.  Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code, notwithstanding Article VI(H) of the Plan, shall accrue interest and penalties to the extent required by the Bankruptcy Code and applicable  law until paid in full.  Priority Tax Claims allowed pursuant to the Plan or the Bankruptcy Code shall be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code and to the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in section 511 of the Bankruptcy Code.  Moreover, nothing shall effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor or the Debtors' Estates by or on behalf of the United States for any liability arising (a) out of pre-petition or post-petition tax periods for which a required return has not been filed or (b) as a result of a pending audit or audit that may be performed with respect to any pre-petition tax or post-petition tax return. Further, nothing shall enjoin the United States from amending any claim against any Debtor or the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax return.  Any liability arising out of pre-petition or post-petition tax periods for which a required return

has not been filed or as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax return shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(A) and (C). Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Liquidating Trust, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

120. **Management Incentive Plan**. The Liquidating Trust shall adopt the Management Incentive Plan in accordance with the Plan. The Acquired Reorganized Debtors shall have no liability under the Management Incentive Plan. The participants to the Management Incentive Plan shall be available to provide reasonable services to the Liquidating Trust with respect to the pursuit of assets distributable to Holders of Claims and Interest in order to be eligible to receive payments under the Management Incentive Plan, in accordance with the Management Incentive Plan.

121. **CBA Settlement Fee**. Without prejudice to ordinary course obligations under the CBA through the Effective Date (which are not released if not paid),the CBA Settlement Fee shall be paid, at the direction of Sellers (as defined in the Purchase and Sale Agreement), by the Seller or the Liquidating Trust, as applicable, to individuals designated by the USW on the Effective

Date, and this CBA Settlement Fee shall cure, satisfy, extinguish, resolve, and release any and all Claims, liabilities, Causes of Action, or remedies that exist as of the Effective Date of the USW, its members, and its agents, affiliates, employees, professionals, or other representatives under the CBA, including Claims asserted in the USW's proof of claim (Claim No. 218), any other agreement, or any other Claim of the USW under applicable law against the Debtors and any other Released Parties under the Plan.

122.    PES Ultimate (or an affiliate thereof) shall assume the CBA and continue the employment of USW bargaining unit employees with respect to the Existing Activities.  The CBA will be extended for one year (i.e., through August 31, 2021) (the "Extended Term"), and shall terminate in its entirety at that time.  PES Ultimate (or an affiliate thereof) shall be reimbursed by PESRM for all expenses, costs, and other amounts due under or related to the CBA, including for work done by USW employees during the Extended Term.  Neither PES Ultimate (or an affiliate thereof) nor the Plan Sponsor nor PESRM shall be obligated to make any payments, to the USW, employees, or otherwise, other than those to compensate USW members covered by the CBA for their work during the Extended Term.  Except as *provided* herein or in Article X.B of the Plan, none of the Liquidating Trust or any Released Parties shall have any obligation to make any payments, perform any obligations, or otherwise have any liability whatsoever to the USW, its members, and its agents, affiliates, employees, professionals, or other representatives arising out of or relating to the CBA.

123.    PES Ultimate (or an affiliate thereof) and PESRM shall enter into the Transition Services Agreement at the Effective Date with respect to the use of USW workers for Existing Activities that is cost-neutral to PES Ultimate (or an affiliate thereof).  Such Transition Services Agreement will continue until August 31, 2021.

124.    From and after the Effective Date, PESRM agrees that it shall exclusively employ, retain, or hire USW bargaining unit employees under the terms of a new collective bargaining agreement for any future refining operations on the Real Property, if any.

125.    USW has withdrawn its objection to this Plan and supports Confirmation of this Plan.

126.    The foregoing and Article X.B of the Plan shall be subject to the occurrence of the Effective Date and entry into the Transition Services Agreement.

127.    **Reporting of Insurance Correspondence**.  Upon entry of this Order, the Debtors or Liquidating Trust (as applicable) shall use commercially reasonable efforts to copy counsel to the Intermediation Provider and Term Loan Lenders on any written correspondence to or from the Debtors or the Liquidating Trust (as applicable) with the Insurers, and counsel to the Intermediation Provider and the Term Loan Lenders shall use commercially reasonable efforts to copy counsel to the Debtors or the Liquidating Trust (as applicable) on any written correspondence to or from the Insurers, including in relation with the ICBCS Direct Claim. Counsel to the Intermediation Provider and the Term Loan Lenders shall be entitled to attend all meetings and telephone calls with the Insurers, and counsel to the Debtors or the Liquidating Trust (as applicable) shall be entitled to attend all meetings and telephone calls with the Insurers in relation with the ICBCS Direct Claim, in each case subject to each party's commercially reasonable efforts to appraise each other party entitled to attend of such meeting or telephone call.  The Debtors (and, once formed, the Liquidating Trust), the Term Loan Lenders, and the Intermediation Provider agree discussions and negotiations in the ordinary course with respect to the ICBCS Direct Claim shall proceed in parallel, to the extent reasonably practicable, with the Debtors or Liquidating

Trust's (as applicable) claims under the Business Interruption and Property Damage Insurance Policies, to avoid causing any delay to either claim.

128. **Settlement of Insurance Claims**.  Upon entry of this Order, the consent of the Debtors, the Required Term Loan Lenders, and the Intermediation Provider shall be required for material decisions related to, and to settle any claim under the business interruption portion of the Business Interruption and Property Damage Insurance Policies; provided however, upon the Effective Date this paragraph shall no longer apply and the settlement of any claims under Business Interruption and Property Damage Insurance Policies shall be subject to the terms of the Liquidating Trust Agreement; *provided, further*, that if the Purchase Agreement is terminated, this Paragraph shall no longer apply and the settlement of any claims under the Business Interruption and Property Damage Insurance Policies shall be subject to the Final DIP Order.  For the avoidance of doubt, nothing in this paragraph shall affect the ICBCS Direct Claim.

129. **Insurance Adversary Proceeding**.  Notwithstanding paragraph J of Article X of the Plan, upon entry of this Order, the automatic stay provisions of section 362 of the Bankruptcy Code shall be modified to allow the Intermediation Provider to pursue the ICBCS Direct Claim by any means necessary, including without limitation to bring its own action or proceeding, or intervene in any action or proceeding brought by the Debtors or the Liquidating Trust (as applicable), against any of the Insurers.  The ICBCS Direct Claim shall be pursued in parallel with the Debtors' own insurance claim under the Business Interruption and Property Damage Insurance Policies to the extent reasonably practical.

130. **Sale Proceeds Allocation**.  Within a commercially reasonable amount of time prior to the Effective Date, the Debtors shall deliver to the Intermediation Provider, the Creditors' Committee and the Term Loan Lenders (i) a funds flow consistent with the Plan and this

Confirmation Order showing the proposed distribution of sale proceeds under the Sale Transactions and the Plan on the Effective Date and (ii) the allocation of sale proceeds from the Sale Transaction to Intermediation Priority Collateral, SOA Separate Assets and Collateral, and Term Loan Priority Collateral.  To the extent any Intermediation Priority Collateral, SOA Separate Assets and Collateral are not sold under the Sale Transactions, the funds flow shall break out any such Intermediation Priority Collateral and SOA Separate Assets and Collateral, and the Debtors and the Liquidating Trust shall work in good faith to provide the Intermediation Provider with a proposed strategy to dispose of such collateral and provide a corresponding recovery to the Intermediation Provider.

131.    **Catalyst Assets**.  Upon entry of this Order, the Debtors (and if applicable, the Liquidating Trust) shall use commercially reasonable efforts to provide regular updates to the Intermediation Provider, the Term Loan Lenders, and the Creditors' Committee regarding the sale process for the Catalyst Assets (as defined in the Final DIP Order).

132.    **SOA Adequate Protection Claim**. The SOA Adequate Protection Claim shall be Allowed in an amount set forth in Plan and shall not be subject to objection or dispute from any party in interest.  The SOA Adequate Protection Claim shall be secured (without any further action required by the Holder of the SOA Adequate Protection Claim) on a first priority basis (senior to any DIP Liens or Prepetition Liens) by the SOA Adequate Protection Escrow Account.  The SOA Adequate Protection Escrow Account shall be funded on the Effective Date with Distribution Proceeds in an amount equal to 45% of the Proceeds of the Catalyst Assets.  The Acquired Reorganized Debtors shall have no liability for the SOA Adequate Protection Claim.

133.   **Global Resolution.**  Nothing herein or in the Plan shall relieve the Debtors, the Non-Acquired Reorganized Debtors, and the Liquidating Trust of their obligations under the Global Term Sheet (as defined in the Final DIP Order).

134.   **Business Interruption Litigation Committee.**   On the Effective Date, the Business Interruption Litigation Committee (as defined in the Liquidating Trust Agreement) shall be formed in accordance with the Liquidating Trust Agreement.   Subject to the terms of the Liquidating Trust Agreement, the Business Interruption Litigation Committee have exclusive power and authority with respect to any Claim or Causes of Action to recover the June 21 Business Interruption Insurance Proceeds.

135.   Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, with respect solely to General Unsecured Claims that have not made the Distribution Proceeds Election, the GUC Claims Administrator shall have the authority to File and prosecute objections to such General Unsecured Claims and to:  (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all such General Unsecured Claims, regardless of whether such General Unsecured Claims; (2) settle, compromise, or resolve any Disputed General Unsecured Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. On and after the Effective Date, the GUC Claims Administrator will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

136.   **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trust, as applicable, shall comply with all tax

withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Liquidating Trust Board, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors or the Liquidating Trust Board, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

137. **Exemption from Certain Taxes and Fees.** To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property pursuant to the Plan or this Confirmation Order, including any transaction that is deemed or treated as equivalent to a transfer of property under applicable nonbankruptcy law as a result of a change of ownership or control, shall not be subject to any tax under a law imposing a stamp tax or similar tax, including, but not limited to, a realty transfer tax, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

138.    Nothing in this Confirmation Order, the Plan, the Plan Supplement, the Purchase Agreement, or any documents relating thereto (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction, exculpation or release) or the transactions contemplated thereby modifies, limits, waives or releases any defenses the Insurers may have under the Business Interruption and Property Damage Insurance Policies under which the Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, or any successor to or assignee of the Debtors seeks coverage; or shall be deemed to alter, limit or prejudice the rights and/or defenses of any party, or limit the relief available or change the burden or standard of proof in any pending or subsequent litigation in which the Insurers, the Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, or any successor to or assignee of the Debtors may seek a declaration or other relief regarding the existence or extent of coverage under the Business Interruption and Property Damage Insurance Policies.

139.    **Moran's Reservation of Rights**.  Notwithstanding anything contained in this Confirmation Order, in the Plan, or in the Plan Supplement or any document, agreement or instrument included in the Plan Supplement to the contrary, no provision of this Confirmation Order, of the Plan, or of the Plan Supplement or any document, agreement or instrument included in the Plan Supplement shall in any way release, exculpate, enjoin, or otherwise limit any contractual guarantee rights that Moran Towing Corporation, on behalf of itself and its affiliates ("Moran"), may have with respect to any Entity that is not a Debtor, including without limitation any contractual guarantee rights or direct, express contractual obligations arising under or relating to that certain Consent to Assignment of Articulated Tug-Barge Time Charter Agreement dated as of September 15, 2006 (including any amendments, exhibits and assignments) and/or that certain Guarantee by Sunoco, Inc. (R&M), now known as Sunoco R&M, LLC, dated as of September 7,

2012. All such rights are hereby preserved. Moran has opted out and is deemed hereby to have

opted out of releases under the Plan subject to paragraph 5 of the *Order (I) Allowing Administrative*

*Expense Claim of Moran Towing Corporation and (II) Directing Payment Thereof* [Docket No.

854].

140. **Westchester Fire Insurance Company Surety Bonds**. Notwithstanding any

provision of the Plan, any prior orders of the Court, or this Confirmation Order, (i) on the Effective

Date, unless otherwise agreed by Westchester Fire Insurance Company ("Westchester"), the

Debtors shall replace and procure the release of Bond No. K09171320 issued by Westchester,

which secures the Debtor's performance of decommissioning and other obligations to the State of

Pennsylvania under permit no. PAD049791098; (ii) the Administrative Claims Bar Date shall not

be applicable to administrative claims held by any governmental unit that is secured by a surety

bond issued by Westchester; (iii) Westchester's right to subrogate to the claim of any entity whose

claim against the Debtors is satisfied by Westchester shall not be impaired and Westchester ability

to assert such claim and obtain the priority status of such claim shall be preserved notwithstanding

Article VI.J. of the Plan; (iv) any collateral held by Westchester, including cash collateral, shall

remain in place to secure Westchester for losses on bonds issued at the Debtor's request and for

the obligations of Westchester's indemnitors regardless of when the obligations arise or when the

collateral was provided; and (v) nothing in the Plan or this Confirmation Order, including, but not

limited, to any release or injunction provisions therein, shall be deemed to bar, impair, alter, or

diminish any of the rights of Westchester against any non-Debtor entities, including, but not

limited to, any and all contractual or common law indemnitors to Westchester, and, for avoidance

of doubt, Westchester shall not be a "Releasing Party" under the Plan. Nothing in this paragraph

shall be deemed to waive any of the Debtors' or the Reorganized Debtors' rights or defenses with

respect to any Claims.  Nor shall this paragraph be deemed to modify the respective rights and

obligations of the Sureties, Debtors, or Reorganized Debtors, as applicable, under the Surety

Bonds, the Surety Indemnity Agreements, or any related collateral agreements.

141.    Nothing set forth in this Confirmation Order or the Plan or any document

effectuating any provision of this Confirmation Order or the Plan, including but not limited to any

deed, purchase and sale agreement, assignment, bill of sale, mortgage, or any other document

executed in connection with a sale of the Debtors' equity or assets shall alter, impact, or impair

the parties' rights to argue that the following deeds bear covenants and restrictions running with

the land or are executory in nature and subject to rejection under section 365 of the Bankruptcy

Code, or any and all defenses or counterclaims relating to any such potential arguments:

> a.    Special Warranty Deed dated September 7, 2012 from Sunoco, Inc. (R&M) to Philadelphia Energy Solutions Refining and Marketing LLC, recorded on October 3, 2012 in Philadelphia, Pennsylvania, bearing Doc. ID 52542486;
>
> b.    Special Warranty Deed dated September 7, 2012 from Atlantic Refining & Marketing Corp. to Philadelphia Energy Solutions Refining and Marketing LLC, recorded on October 3, 2012 in Philadelphia, Pennsylvania, bearing Doc. ID 52542487;
>
> c.    Quitclaim Deed dated September 7, 2012, between Sunoco, Inc. to Philadelphia Energy Solutions Refining and Marketing LLC, recorded on October 3, 2012 in Philadelphia, Pennsylvania, bearing Doc. ID 52542488;
>
> d.    Deed of Confirmation dated February 16, 2015 from Sunoco, Inc. (R&M) to Philadelphia Energy Solutions Refining and Marketing, LLC, recorded on February 23, 2015 in Philadelphia, Pennsylvania, bearing Doc. ID 52884740; and
>
> e.    any and all easements related to Sunoco, whether or not included on the Schedule of Assumed Executory Contracts and Unexpired Leases

142.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth,

local, foreign, or other governmental agency is authorized to accept any and all documents,

mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

143.    **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

144.    **Nonseverability of Plan Provisions Upon Confirmation.**  Each provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and, solely to the extent such deletion or modification has a material effect on the Plan Sponsor or the Acquired Reorganized Debtors, the Plan Sponsor; and (c) nonseverable and mutually dependent.

145.    **Notice of Subsequent Pleadings**.  Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Reorganized Debtors and their counsel; (b) the U.S. Trustee; (c) any party known to be directly affected by the relief sought by such pleadings; and (d) any party that specifically requests additional notice in writing to the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Notice and Claims Agent shall not be required to file updated service lists.

146.    **Post-Confirmation Reports**.  After the Effective Date, neither the Liquidating Trust nor the Acquired Reorganized Debtors shall have any obligation to file with the Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or

a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the Liquidating Trust will comply with the U.S. Trustee's quarterly reporting requirements until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

147.    **Post-Confirmation Modifications.**    Without need for further order or authorization of the Court, the Debtors, the Liquidating Trust, or, subject to paragraph 144 hereof, the Acquired Reorganized Debtors, as applicable, are authorized to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein).  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, the Liquidating Trust, and, subject to paragraph 144 hereof, the Acquired Reorganized Debtors expressly reserve their respective rights to alter, amend, or modify materially the Plan with respect to such Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII of the Plan; *provided*, that nothing in this Confirmation Order shall impair any right of setoff or recoupment

of the United States with respect to the United States Refund Claims, and such rights are expressly reserved.

148. **Plan Classification Controlling**. The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

149. **Choice of Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors, the Liquidating Trust, or the Acquired Reorganized Debtors, as applicable, not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor, the Liquidating Trust, or Acquired Reorganized Debtors. The State of New York has (a) a substantial relationship to the parties and to the underlying transactions embodied by the Plan, and (b) a material interest

in the determination of matters concerning the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan.

150.    **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

151.    **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

152.    **Governmental Approvals Not Required; No Revocation of Permits.**  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.  As provided in section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license of the Acquired Reorganized Debtors on account of the filing or pendency of the Chapter 11 Cases or the discharge of any debt owed to such governmental unit.

153.    **Notices of Confirmation and Effective Date.**  The Liquidating Trust shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Confirmation") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Confirmation Hearing Notice within seven

Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

154.    No later than 10 Business Days after the Effective Date, the Liquidating Trust shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition) and *USA Today* (national edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

155.    The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.  The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

156.    **Removal or Abandonment of Third Parties' Property.**  Nothing in the Plan or this Confirmation Order shall impose upon the Plan Sponsor or the Acquired Reorganized Debtors any obligation to store or protect any third party's property, all of which property will be deemed abandoned and surrendered to the Plan Sponsor if such property has not been removed (by its owner in a commercially reasonable manner, and with insurance to cover any damage from such

removal) from the Real Property (as defined in the Purchase Agreement) within forty-five (45) days after the filing of the Notice of Confirmation on the docket of the Chapter 11 cases. Following the abandonment and surrender of any such property, the Plan Sponsor may sell, transfer, assign, scrap, abandon, or otherwise dispose of such property and retain any proceeds resulting therefrom.

157.    **Exemption from Registration**.  The parties to the Liquidating Trust Agreement intend that the rights of the holders of the beneficial interests arising under the Liquidating Trust Agreement shall not be "securities" under applicable laws, but none of the parties to the Liquidating Trust Agreement represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the parties the Liquidating Trust Agreement intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

158.    **Dissolution of the Creditors' Committee**.  Except to the extent provided in the Plan, on the Effective Date, the Creditors' Committee shall dissolve, and the members of the Creditors' Committee and their respective officers, employees, counsel, advisors and agents shall be released and discharged from further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, except with respect to (i) prosecuting any fee applications of the Professionals for the Creditors' Committee, including payment thereon, or seeking reimbursement of expenses for members of the Creditors' Committee; and (ii) prosecuting or participating in any appeals or stays of orders relating to the Plan until such time as such orders become Final Orders.  Upon dissolution of the Creditors' Committee, the retention or employment of the Creditors' Committee's respective attorneys, accountants and other agents shall terminate.  The Debtors, Liquidating Trust, or Acquired Reorganized Debtors, as

applicable, shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.

159.    **Effect of Non-Occurrence of Conditions to the Effective Date.**  If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

160.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

161.    **Waiver of Stay.**  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

162.    **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

163.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

164.    **Effect of Conflict.**  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

165.    **Final, Appealable Order.**  This Confirmation Order is a final judgment, order, or decree for purposes of 28 U.S.C. § 158(a), and the period in which an appeal must be filed shall commence upon the entry hereof.

166.    **Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XIII of the Plan and section 1142 of the Bankruptcy Code.

Dated: February 13th, 2020
Wilmington, Delaware

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE