# EXHIBIT A

**The Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PES HOLDINGS, LLC, *et al.*,[1] | ) Case No. 19-11626  (KG) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

---

**FOURTH AMENDED JOINT CHAPTER 11 PLAN OF**
**PES HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

---

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted *pro hac vice*)
Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:      edward.sassower@kirkland.com
            steven.serajeddini@kirkland.com
            matthew.fagen@kirkland.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 870
Wilmington, Delaware 19899
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:      ljones@pszjlaw.com
            pkeane@pszjlaw.com

Dated:  February 13, 2020

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate Holdings, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).  The Debtors' service address is:  1735 Market Street, Philadelphia, Pennsylvania 19103.

**TABLE OF CONTENTS**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**................................................................................................................1
    A.    Defined Terms ............................................................................................................1
    B.    Rules of Interpretation ..............................................................................................15
    C.    Computation of Time ................................................................................................16
    D.    Governing Law ..........................................................................................................16
    E.    Reference to Monetary Figures ................................................................................16
    F.    Controlling Document ..............................................................................................16
    G.    Nonconsolidated Plan ..............................................................................................16

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS** .............................17
    A.    Administrative Claims and Priority Tax Claims ......................................................17
    B.    Professional Compensation.......................................................................................17
    C.    DIP Claims ...............................................................................................................18
    D.    Existing Term Loan Adequate Protection Claims ....................................................18
    E.    SOA Adequate Protection Claim .............................................................................19
    F.    Statutory Fees............................................................................................................19

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**.............................20
    A.    Summary of Classification .......................................................................................20
    B.    Treatment of Claims and Interests ...........................................................................20
    C.    Special Provision Governing Unimpaired Claims ...................................................24
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................24
    E.    Elimination of Vacant Classes .................................................................................24
    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ..............................24
    G.    Intercompany Interests .............................................................................................24
    H.    Subordinated Claims and Interests ...........................................................................25

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................25
    A.    General Settlement of Claims ...................................................................................25
    B.    Restructuring Transactions .......................................................................................25
    C.    Cancelation of Notes, Instruments, Certificates, and Other Documents ..................25
    D.    Exemption from Certain Taxes and Fees .................................................................26
    E.    The Sale Restructuring .............................................................................................26
    F.    Management Incentive Plan ......................................................................................29
    G.    KERP Documents .....................................................................................................29
    H.    The Liquidating Trust ...............................................................................................30

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .....................31
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...................31
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.....................31
    C.    Cure of Defaults for Assumed, or Assumed and Assigned, Executory Contracts and Unexpired Leases .............................................................................................31
    D.    Indemnification Obligations......................................................................................32
    E.    Director and Officer Liability Insurance ..................................................................33
    F.    Chubb Insurance Program.........................................................................................33
    G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.........................34
    H.    Reservation of Rights................................................................................................34
    I.    Nonoccurrence of Effective Date..............................................................................35

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ..........................................35
    A.    Timing and Calculation of Amounts to Be Distributed ..........................................35
    B.    Disbursing Agent ......................................................................................................35
    C.    Rights and Powers of Disbursing Agent ..................................................................35

D. Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................................... 35
E. Manner of Payment. ........................................................................................................................ 36
F. Tax Issues and Compliance with Tax Requirements ........................................................................ 36
G. Allocations ...................................................................................................................................... 37
H. No Postpetition Interest on Claims ................................................................................................. 37
I. Setoffs and Recoupment ................................................................................................................. 37
J. Claims Paid or Payable by Third Parties ......................................................................................... 37
K. Treatment of Debtors' RINs Retirement Obligations Under the Consent Decree and the Clean Air Act ................................................................................................................................... 38

**ARTICLE VII. THE LIQUIDATING TRUST** ......................................................................................... **38**
A. The Liquidating Trust Board ........................................................................................................... 38
B. Wind Down ...................................................................................................................................... 40
C. Privilege .......................................................................................................................................... 40
D. Transfer of Information ................................................................................................................... 41
E. Exculpation, Indemnification, Insurance and Liability Limitation .................................................. 41
F. Tax Returns ..................................................................................................................................... 41
G. Dissolution of the Non-Acquired Reorganized Debtors .................................................................. 41

**ARTICLE VIII. RESERVES ADMINISTERED BY THE LIQUIDATING TRUST** ........................... **42**
A. Establishment of Reserve Accounts ................................................................................................ 42
B. Undeliverable Distribution Reserve ................................................................................................ 42
C. Disputed Claims Reserve ................................................................................................................ 42
D. RINs Retirement Obligations Reserve ............................................................................................. 43
E. Wind-Down Reserve ....................................................................................................................... 43
F. Other Secured Claims Reserve. ....................................................................................................... 44
G. Priority Claims Reserve .................................................................................................................. 44
H. [Reserved] ....................................................................................................................................... 44
I. GUC Distributions ........................................................................................................................... 44
J. Distributions to Holders of Allowed Term Loan Claims .................................................................. 45
K. Distributions to Intermediation Provider ........................................................................................ 45
L. Additional Distributions ................................................................................................................. 45

**ARTICLE IX. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS** ...................................................................................................................... **46**
A. Allowance of Claims ....................................................................................................................... 46
B. Claims Administration Responsibilities .......................................................................................... 46
C. Estimation of Claims ....................................................................................................................... 46
D. Adjustment to Claims Without Objection ....................................................................................... 47
E. Time to File Objections to Claims ................................................................................................... 47
F. Disallowance of Claims ................................................................................................................... 47
G. No Distributions Pending Allowance .............................................................................................. 47
H. Distributions After Allowance ........................................................................................................ 47

**ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ........................ **47**
A. Compromise and Settlement of Claims, Interests, and Controversies ............................................ 47
B. CBA Settlement .............................................................................................................................. 48
C. Discharge of Claims and Termination of Interests .......................................................................... 49
D. Term of Injunctions or Stays ........................................................................................................... 49
E. **Release of Liens** ............................................................................................................................ 49
F. **Debtor Release** ............................................................................................................................ 49
G. **Releases of Preference Actions by the Debtors** ........................................................................... 50
H. **Release by Holders of Claims or Interests** ................................................................................... 50
I. **Exculpation** .................................................................................................................................. 51
J. **Injunction** .................................................................................................................................... 52
K. Protection Against Discriminatory Treatment ................................................................................ 52

    L.          Recoupment ...................................................................................................................52
    M.        Subordination Rights......................................................................................................52

**ARTICLE XI. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN....................................53**
    A.         Conditions Precedent to the Effective Date ....................................................................53
    B.         Waiver of Conditions......................................................................................................53
    C.         Substantial Consummation .............................................................................................53
    D.         Effect of Nonoccurrence of Conditions to the Effective Date .......................................53

**ARTICLE XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN...........................54**
    A.         Modification and Amendments.......................................................................................54
    B.         Effect of Confirmation on Modifications.......................................................................54
    C.         Revocation or Withdrawal of the Plan ...........................................................................54

**ARTICLE XIII. RETENTION OF JURISDICTION .................................................................................54**

**ARTICLE XIV. MISCELLANEOUS PROVISIONS ..................................................................................56**
    A.         Immediate Binding Effect...............................................................................................56
    B.         Additional Documents ....................................................................................................56
    C.         Dissolution of the Creditors' Committee ........................................................................57
    D.         Dismissal of the Creditors' Committee Adversary Claims Against Term Loan Lenders ..............57
    E.         Setoff of SOA Liabilities by Intermediation Provider ...................................................57
    F.         Reservation of Rights......................................................................................................57
    G.        Restructuring Expenses...................................................................................................57
    H.         Successors and Assigns...................................................................................................57
    I.          Service of Documents .....................................................................................................57
    J.          Entire Agreement ...........................................................................................................59
    K.         Exhibits ..........................................................................................................................59
    L.         Nonseverability of Plan Provisions.................................................................................59
    M.        Votes Solicited in Good Faith ........................................................................................59

**INTRODUCTION**

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  The Debtors propose this Plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan for each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Acquired Reorganized Debtors*" means, collectively, each of the following Debtors, as reorganized pursuant to and under the Plan, or any successor thereto:  PES Holdings; PESRM; North Yard Logistics, L.P.; and North Yard GP, LLC.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; (d) all DIP Claims; and (e) the Remaining Volume Administrative Claim.

3.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, except as otherwise set forth in the Plan or a Final Order, which:  (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date; *provided* that Filing requests for payment of Administrative Claims is not required, where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

4.    "*Additional Priority Claims Reserve Amount*" means the amount of Distribution Proceeds to be allocated and paid to the Holders of Allowed Administrative Claims (excluding Professional Fee Claims and DIP Claims) and Allowed Priority Claims pursuant to Article VIII.G.

5.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

6.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; *provided* that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code,

1

the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

7.    "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the Liquidating Trust or the applicable Acquired Reorganized Debtors, as set forth on the Schedule of Assumed Executory Contract and Unexpired Leases.

8.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or similar remedies that may be brought by or on behalf of the Debtors or the Estates, including Causes of Action or defenses arising under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or analogous state or federal law and common law, including fraudulent transfer and/or preference law.

9.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time, as applicable to the Chapter 11 Cases.

10.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

11.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

12.    "*Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed pursuant to the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (IV) Approving the Form and Manner for Filing Proofs of Claim, (V) Approving Notice of Bar Dates, and (VI) Granting Related Relief* [Docket No. 218] (the "Bar Date Order"), which is October 21, 2019 at 5:00 p.m., prevailing Eastern Time, for all creditors except for (i) governmental units, for which the Bar Date is January 17, 2020, at 5:00 p.m., prevailing Eastern Time, and (ii) certain other exceptions as set forth in the Bar Date Order.

13.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.    "*Business Interruption and Property Damage Insurance Policies*" means the twelve (12) insurance policies available to compensate the Debtors for property damage and business interruption losses up to $1.25 billion in the aggregate, including those losses incurred as a result of the fire that occurred at the Debtors' Girard Point refinery on June 21, 2019.

15.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

16.    "*Causes of Action*" means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; *provided* that Retained Matters shall constitute Causes of Action.

17.    "*CBA*" means that certain collective bargaining agreement by and between PESRM and the USW, as modified by a memorandum of understanding approved by the Court on September 17, 2019 [Docket No. 384].

18.    "*CBA Settlement Fee*" means a fee in the aggregate amount of $5 million of the Purchase Price (as defined in the Purchase and Sale Agreement) to be funded by the Plan Sponsor.

19.    "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

20.    "*Chubb*" means ACE American Insurance Company and certain of its U.S.-based affiliated insurance companies, collectively, and together with each of their respective affiliates and successors.

21.    "*Chubb Insurance Program*" means the "Insurance Program" as that term is defined in the *Order (I) Authorizing Assumption of the Existing Insurance Program, (II) Authorizing the Debtors to Enter into the New Insurance Program, and (III) Granting Related Relief* [Docket No. 730].

22.    "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, asserted against a Debtor.

23.    "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) upon an order of the Bankruptcy Court, such other period of limitation as may be specifically fixed by the Debtors or the Liquidating Trust.

24.    "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent or the Bankruptcy Court.

25.    "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

26.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan.

27.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

28.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court, if any, to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

29.    "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.    "*Consent Decree*" shall have the meaning ascribed to such term in Article VI.K.

31.    "*Consummation*" means the occurrence of the Effective Date.

32.    "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

33.    "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

34.    "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of

the Bankruptcy Code, which notice shall include:  (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

35.     "*Cure/Assumption Objection Deadline*" means the date that is 14 days after filing of the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be 14 days after service of the amended Schedule of Assumed Executory Contracts and Unexpired Leases with such modification.

36.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors for liability of any current or former directors, managers, officers, and members.

37.     "*Debtors*" means, collectively, each of the following:  PES Holdings; North Yard GP, LLC; North Yard Logistics, L.P.; PES Administrative Services, LLC; PES Energy; PES Intermediate, LLC; PES Ultimate; and PESRM.

38.     "*Delaware Trustee*" means the trustee, or its successor, appointed in accordance with the Liquidating Trust Agreement to comply with the requirement of Section 3807 of the Delaware Statutory Trust Act.

39.     "*DIP Agent*" means Cortland Capital Market Services LLC, in its capacity as administrative agent under the DIP Agreement.

40.     "*DIP Agreement*" means that certain Superpriority Secured Debtor in Possession Credit Agreement, dated as of July 24, 2019, by and among the Debtors, the DIP Lenders, and the DIP Agent, as may be amended, restated, supplemented, or otherwise modified from time to time.

41.     "*DIP and Cash Collateral Orders*" means, collectively, the interim and final orders entered by the Bankruptcy Court (a) authorizing certain Debtors to enter into the DIP Agreement and incur postpetition obligations thereunder, (b) granting certain Debtors the authority to use cash collateral and prepetition collateral and (c) granting adequate protection to the Holders of certain Secured Claims.

42.     "*DIP Claim*" means any and all Claims derived from, based upon, or secured by, the DIP Documents.

43.     "*DIP Documents*" means the Final DIP Order and the DIP Agreement and any amendments, modifications, supplements thereto, as well as any related notes, certificates, agreements, security agreements, documents and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the DIP Agreement.

44.     "*DIP Facility*" means that certain superpriority secured debtor in possession credit facility available pursuant to the DIP Agreement.

45.     "*DIP Lenders*" means, collectively, the lenders from time to time party to the DIP Agreement.

46.     "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or

otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

47.    "*Disbursing Agent*" means the Liquidating Trust or the Entity or Entities selected by the Liquidating Trust to make or facilitate distributions contemplated under the Plan, or, with respect to the GUC Settlement Proceeds, the GUC Claims Administrator.

48.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

49.    "*Disputed*" means, with respect to any Claim, any Claim that is neither Allowed nor Disallowed.

50.    "*Disputed Claims Reserve*" means an appropriate reserve in an amount to be determined by the Liquidating Trust for distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VIII.C hereof.

51.    "*Disputed Priority June 21 Insurance Proceeds*" shall have the meaning ascribed to such term in the Final DIP Order.

52.    "*Distribution Proceeds*" means all Cash of the Debtors on or after the Effective Date (other than Cash constituting Intermediation Priority Collateral, SOA Separate Assets and Collateral, Disputed June 21 Insurance Proceeds, and GUC Settlement Proceeds) after giving effect to any payments or distributions required to be made on the Effective Date pursuant to the Plan and the funding of the Priority Claims Reserve with the Initial Priority Claims Reserve Amount, the GUC Settlement Reserve, the Other Secured Claims Reserve, the Professional Fee Escrow Account, the Wind-Down Reserve, and the RINs Retirement Obligations Reserve.

53.    "*Distribution Proceeds Election*" means, instead of receiving its Pro Rata share of the GUC Settlement Proceeds as provided in Article VIII.I, the election of a Holder of an Allowed General Unsecured Claim, on account of all of its Allowed General Unsecured Claims, to receive its Pro Rata share of the Distribution Proceeds as provided in Article VIII.L hereof; *provided* that to make the Distribution Proceeds Election, any Holder must not opt out from the GUC Settlement Release in accordance with the terms of Article VIII.I hereof.

54.    "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions hereunder, which shall be (a) the Confirmation Date or (b) such other date as designated in a Final Order of the Bankruptcy Court.

55.    "*Distribution Reserve Accounts*" means the Priority Claims Reserve, the Undeliverable Distribution Reserve, the Wind-Down Reserve, the Other Secured Claims Reserve, the GUC Settlement Reserve, and the RINs Retirement Obligations Reserve established pursuant to this Plan.

56.    "*DTC*" means the Depository Trust Company.

57.    "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtors on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article XI.A hereof have been satisfied or waived (in accordance with Article XI.B); and (c) the Plan is declared effective.

58.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

59.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

60.    "*Excluded Assets*" shall have the meaning ascribed to such term in the Purchase Agreement.

61.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Non-Acquired Reorganized Debtors; (c) the Creditors' Committee and the individual members of the

Creditors' Committee; (d) the Debtors' and Non-Acquired Reorganized Debtors' current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, funds, portfolio companies, and management companies, and (e) with respect to each of the foregoing Entities in clauses (a) through (d), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (d), each solely in their capacity as such).

62.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

63.     "*Existing Activities*" means the work that is currently being performed by employees who are subjet to the CBA, including caretaker and maintenance work, to the extent that such work continues.

64.     "*Existing Intercreditor Agreement*" shall have the meaning ascribed to such term in the Final DIP Order.

65.     "*Existing Term Loan Adequate Protection Claim*" shall have the meaning ascribed to such term in the Final DIP Order.

66.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

67.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

68.     "*Final DIP Order*" means that certain *Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(B), 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) and 364(E) and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(B)* [Docket No. 580].

69.     "*Final Order*" means:  (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility of a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

70.     "*General Account*" means a general account maintained at an institution reasonably acceptable to the Required Term Loan Lenders from which payments shall be made as set forth in Article VIII.

71.     "*General Unsecured Claim*" means any Claim other than: (a) an Administrative Claim; (b)  an Other Secured Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a Term Loan Secured Claim; (f) an Intermediation Secured Claim; (g) an Intercompany Claim; (h) a DIP Claim; (i) a Section 510(b) Claim; and (j) the Subordinated Remaining Volume Claim; *provided* that General Unsecured Claims shall include NGL Installment Sale Agreement Deficiency Claims and any RINs Retirement Obligations to the extent such RINs Retirement Obligations

are determined to constitute Claims; *provided*, *further*, that to the extent such RINs Retirement Obligations are determined to constitute General Unsecured Claims, they shall be subject to any right of setoff or recoupment.

72. "*Global Resolution*" shall have the meaning set forth in the DIP Documents.

73. "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

74. "*GUC Claims Administrator*" means a person or entity, selected by the Creditors' Committee, to administer the General Unsecured Claims and make distributions to Allowed General Unsecured Claims in accordance with Article III herein; *provided* that the GUC Claims Administrator shall be reasonably acceptable to the Debtors.

75. "*GUC Settlement Proceeds*" means Cash in the amount of $20 million less the amount of the GUC Settlement Reserve pursuant to Article VIII.I hereof.

76. "*GUC Settlement Release*" shall mean that the Holder of a General Unsecured Claim granting such release (a) irrevocably releases any and all Claims and Causes of Action against the Term Loan Administrative Agent and the holders of Term Loan Claims (including any dispute as to lien or claims priority or under the Intercreditor Agreement) and (b) voluntarily dismisses with prejudice any adversary complaint that has been filed in these Chapter 11 Cases or related adversary proceedings.

77. "*GUC Settlement Reserve*" means a separate, segregated account to be established and maintained by the GUC Claims Administrator and funded with the GUC Settlement Proceeds in an amount to be determined by the Creditors' Committee prior to the Effective Date pursuant to Article VIII.I hereof; *provided*, *however*, that if the full amount of such GUC Settlement Reserve is not utilized by the GUC Claims Administrator, such excess funds shall become GUC Settlement Proceeds.

78. "*Holder*" means an Entity holding a Claim or Interest, as applicable.

79. "*ICBCS Direct Insurance Claim*" shall have the meaning ascribed to such term in the Final DIP Order.

80. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81. "*Initial Priority Claims Reserve Amount*" means an amount equal to the total amount of Allowed Administrative Claims (excluding Professional Fee Claims and DIP Claims, but including the Remaining Volume Administrative Claim) and Allowed Priority Claims.

82. "*Insurance Priority Dispute Adversary Proceeding*" shall mean Adv. Pro. No. 19-50282 (KG).

83. "*Insurance Recovery Surcharge*" means solely to the extent the June 21 Insurance Proceeds are determined by Final Order to be Intermediation Priority Collateral, the surcharge of the SOA Priority June 21 Insurance Proceeds pursuant to section 506(c) of the Bankruptcy Code in an amount equal to the reasonable and necessary costs and expenses determined by the Bankruptcy Court, or agreed to by the Debtors, the DIP Lenders, or after the DIP Obligations have been paid in full, the Required Existing Term Lenders, and ICBCS, as being allocable to the preservation, preparation, and pursuit of the SOA Priority June 21 Insurance Proceeds (and the Debtors' claims thereto) less any amount of (i) SOA Priority June 21 Insurance Proceeds, or (ii) June 21 Insurance Proceeds that are later determined by Final Order to be SOA Priority June 21 Insurance Proceeds, applied to repay DIP Obligations or Term Loan Obligations.

84. "*Insurers*" means, collectively, the insurance companies, underwriters, and other Entities listed as such under the Business Interruption and Property Damage Insurance Policies.

85. "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

86.     "*Intercompany Interest*" means, other than an Interest in PES Energy, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

87.     "*Intercreditor Agreement*" means that certain intercreditor agreement dated August 7, 2018, between the Intermediation Provider, the Term Loan Administrative Agent, Merrill Lynch Commodities, Inc., PESRM, and the other grantors thereto.

88.     "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

89.     "*Interim Compensation Order*" means the order of the Bankruptcy Court establishing procedures for interim compensation and reimbursement of expenses for professionals.

90.     "*Intermediation Claim*" means any Claim held by the Intermediation Provider arising under, derived from, or based on the Intermediation Facility, including, but not limited, to the Remaining Volume SOA Claim.

91.     "*Intermediation Deficiency Claim*" means any Intermediation Claim that is not an Allowed Secured Claim.

92.     "*Intermediation Facility*" means the intermediation facility documented in that certain Sixth Amended and Restated Supply and Offtake Agreement, dated June 18, 2019 (as amended from time to time), by and among the Intermediation Provider, PESRM, and the other transaction parties thereto.

93.     "*Intermediation Provider*" means ICBC Standard Bank Plc.

94.     "*Intermediation Priority Collateral*" means all Common Collateral (as defined in the Intercreditor Agreement) that is not Term Loan Priority Collateral.

95.     "*Intermediation Secured Claim*" means any Intermediation Claim that is an Allowed Secured Claim.

96.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, as applicable to the Chapter 11 Cases.

97.     "*KERP Documents*" means (a) the extraction non-insider key employee retention programs and the various agreements related therewith approved by the Court on January 31, 2020 [Docket No. 846] and (b) the non-insider key employee retention programs and the various agreements related therewith approved by the Court on November 14, 2019 [Docket No. 582].

98.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

99.     "*Liquidating Trust*" means that certain Delaware statutory trust to be created on the Plan Effective Date for the primary purpose of receiving and distributing, as applicable and as described in the Liquidating Trust Agreement, the Liquidating Trust Assets and fulfilling the Liquidating Trust Obligations, including for the purposes described in Article IV.H herein and in the Liquidating Trust Agreement, and not for any other purposes.

100.    "*Liquidating Trust Agreement*" means the agreement to be executed as of the Plan Effective Date establishing the Liquidating Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement. The Liquidating Trust Agreement shall be in form and substance reasonably satisfactory to the Debtors, the Required Lenders and, to the extent the Intermediation Provider is receiving Liquidating Trust Units, to the Intermediation Provider.

101.    "*Liquidating Trust Assets*" means the assets set forth in the Liquidating Trust Agreement, including for the avoidance of doubt, (a) each of the assets and Interest of the Non-Acquired Reorganized Debtors that are not transferred under the Purchase Agreement (including, for the avoidance of doubt, Proceeds from the Sale Transaction not actually distributed on the Effective Date); and (b) each of the Excluded Assets, including, but not limited, to

(i) any Proceeds arising from, or otherwise related to the Retained Matters, including the Business Interruption and Property Damage Insurance Policies and (ii) all Claims and Causes of Action that constitute Excluded Assets, including those Claims and Causes of Action identified on the Retained Causes of Action List other than Claims and Causes of Action vested in the Acquired Reorganized Debtors and, subject to the Litigation Control Agreement, the Retained Matters except for the bare legal title to those Retained Matters numbered 1, 2, and 3 in <u>Schedule 1</u> to the Litigation Control Agreement.

102.    "*Liquidating Trust Board*" means the board of trustees appointed to administer and oversee the affairs of the Liquidating Trust.

103.    "*Liquidating Trust Expenditures*" means all expenditures, costs and expenses of the Liquidating Trust, including funding of and distributions from the Priority Claims Reserve, the Other Secured Claims Reserve, the Professional Fee Escrow Account, the Wind-Down Reserve, the RINs Retirement Obligations Reserve, and the Disputed Claims Reserve.

104.    "*Liquidating Trust Obligations*" means any obligations that are incumbent upon the Liquidating Trust pursuant to the terms of the Plan and the Liquidating Trust Agreement including, for the avoidance of doubt, any obligations arising under the Management Incentive Plan.

105.    "*Liquidating Trust Units*" means the beneficial interests in the Liquidating Trust as more fully set forth in the Liquidating Trust Agreement.

106.    "*Litigation Control Agreement*" means that certain agreement, the form of which is listed as <u>Exhibit E</u> to the Purchase Agreement.

107.    "*Management Incentive Plan*" means a post-Effective Date management incentive plan, the material terms of which shall be consistent with Article IV.F of the Plan, and which shall be acceptable to the Required Term Loan Lenders.

108.    "*NGL*" means NGL Energy Partners LP, a Delaware master limited partnership.

109.    "*NGL Installment Sale Agreement*" means that certain Installment Sale and Purchase Agreement, dated August 7, 2018 (as amended from time to time), by and among PESRM, as the buyer, and NGL, as the seller.

110.    "*NGL Installment Sale Agreement Claim*" means any Allowed Claim held by NGL arising under, derived from, or based on the NGL Installment Sale Agreement.

111.    "*NGL Installment Sale Agreement Deficiency Claim*" means any NGL Installment Sale Agreement Claim that is not a Secured Claim.

112.    "*Non-Acquired Reorganized Debtors*" means the Debtors that are not Acquired Reorganized Debtors, as reorganized pursuant to and under the Plan or any successor thereto, on or after the Effective Date.

113.    "*Non-Settlement GUC Reserve*" shall have the meaning given to such term in Article VIII.I.

114.    "*Notice and Claims Agent*" means Omni Management Group, Inc.

115.    "*Other Priority Claim*" means any Allowed Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

116.    "*Other Secured Claim*" means any Secured Claim other than the Term Loan Secured Claims and Intermediation Secured Claims.

117.    "*Other Secured Claims Reserve*" means the account to be established and maintained by the Liquidating Trust and funded with the Other Secured Claims Reserve Amount pursuant to Article VIII.F.

118.    "*Other Secured Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors with the consent of the Required Term Loan Lenders, which amount shall be funded by the Debtors, and used by the Liquidating Trust for the payment of Allowed Other Secured Claims to the extent that such Other Secured Claims have not been satisfied pursuant to Article III.B.1 on or before the Effective Date.

119.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

120.    "*PES Energy*" means PES Energy Inc., a Delaware corporation.

121.    "*PES Holdings*" means PES Holdings, LLC, a Delaware limited liability company, the parent of PESRM, North Yard Logistics, L.P., North Yard GP, LLC, and PES Administrative Services, LLC.

122.    "*PES Ultimate*" means PES Ultimate Holdings, LLC, a Delaware limited liability company.

123.    "*PES Ultimate Interest*" means, other than an Interest held by PES Energy, an Interest in PES Ultimate.

124.    "*PESRM*" means Philadelphia Energy Solutions Refining and Marketing LLC.

125.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

126.    "*Plan*" means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto.

127.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors, and acceptable to the Required Term Loan Lenders, no later than 14 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  The Plan Supplement shall include the following:  (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) a list of retained Causes of Action; (c) the Purchase Agreement; (d) the identity or method of appointment of the Liquidating Trust Board; (e) the Liquidating Trust Agreement; (f) the Management Incentive Plan; (g) a description of the bids received and/or the tentative successful bid or stalking horse, as applicable; (h) a chart detailing the projected creditor recoveries following the auction (to the extent applicable, based on the tentative successful bid); (i) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated under the Plan; (j) any additional information the Debtors deem material to the Holders' decision to vote to accept or reject the Plan; (k) a notice of consummation of the Sale Restructuring and a notice of successful bidder, if any; (l) an updated Liquidation Analysis taking into account estimated recoveries based on the successful bid, if any; (m) a disclosure table listing creditor recovery estimates based upon a successful bid, if any; (n) a letter from the Creditors' Committee recommending how Holders of General Unsecured Claims should vote on the revised Plan; and (o) a summary explanation of any Plan changes; *provided* that the foregoing Plan Supplement documents in clauses (k) to (o) shall be delivered by overnight mail after the Debtors select a successful bidder at the auction (if an auction occurs), but under no circumstances later than 6 days prior to the Voting Deadline upon the parties entitled to vote on the Disclosure Statement; *provided, further,* that the foregoing Plan Supplement document in clause (n) shall not be Filed.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with Article XII of the Plan and, solely with respect to matters that have a material effect on the Purchased Interests or the assets, liabilities, executory contracts, or unexpired leases of the Acquired Reorganized Debtors, with the consent of the Plan Sponsor.

128.    "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

129.    "*Priority Claims Reserve*" means the account to be established by the Liquidating Trust with the Initial Priority Claims Reserve Amount and Additional Priority Claims Reserve Amount to fund distributions to

Holders of Allowed Administrative Claims and Allowed Priority Claims (excluding Professional Fee Claims and DIP Claims).

130. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

131. "*Proceeds*" means any economic interests, proceeds, monies, cash or cash equivalent, property or other assets.

132. "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

133. "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

134. "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Liquidating Trust on the Effective Date.

135. "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B.3 of this Plan.

136. "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Cases.

137. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

138. "*Purchase Agreement*" means that certain purchase agreement filed contemporaneously with the notice of sale restructuring and successful bidder pursuant to which the Sale Transactions are consummated, as may be amended from time to time.

139. "*Purchased Interests*" means 100% of the membership interests of PES Holdings, including all beneficial, voting, management, economic and other interests in PES Holdings.

140. "*Plan Sponsor*" means the sponsor of the Acquired Reorganized Debtors under the Plan and the Purchase Agreement.

141. "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

142. "*Released Party*" means, collectively, and in each case in its capacity as such: (a) the DIP Lenders; (b) the DIP Agent; (c) the Term Loan Lenders; (d) the Term Loan Administrative Agent; (e) the Intermediation Provider; (f) any Plan Sponsor; (g) the Acquired Reorganized Debtors; (h) any Holder of a Claim or Interest that does not opt out of the releases in the Plan; (i) the Creditors' Committee and its members; (j) with respect to each of the Debtors, and each of the foregoing entities in clauses (a) through (i), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equityholders, funds, portfolio companies, and management companies; and (j) with respect to each of the Debtors and each of the foregoing Entities in clauses (a) through (h), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, trustees investment bankers, and

other professional advisors (with respect to clause (k), each solely in their capacity as such); ***provided, however, that any Holder of a Claim or Interest that opts out of the releases in the Plan shall not be a "Released Party***."

143.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Non-Acquired Reorganized Debtors; (c) the Acquired Reorganized Debtors; (d) the DIP Lenders; (e) the DIP Agent; (f) the Term Loan Lenders; (g) the Term Loan Administrative Agent; (h) the Intermediation Provider; (i) any Plan Sponsor; (j) the Creditors' Committee and its members; (k) with respect to each of the Debtors, and each of the foregoing entities in clauses (a) through (j), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equityholders, funds, portfolio companies, and management companies; and (l) with respect to each of the foregoing Entities in clauses (a) through (k), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, trustees investment bankers, and other professional advisors (with respect to clause k), each solely in their capacity as such); and (m) all Holders of Claims and Interests not described in the foregoing clauses (a) through (j); ***provided, however, that any Holder of a Claim or Interest that opts out of the releases in the Plan shall not be a "Releasing Party.***"

144.    "*Remaining Volume Administrative Claim*" shall have the meaning ascribed to such term in the Final DIP Order.

145.    "*Remaining Volume SOA Claim*" shall have the meaning ascribed to such term in the Final DIP Order.

146.    "*Reorganized Debtors*" means, collectively, the Acquired Reorganized Debtors and the Non-Acquired Reorganized Debtors.

147.    "*Required DIP Lenders*" has the meaning ascribed to that term in the DIP Agreement.

148.    "*Required Lenders*" means the Required DIP Lenders and the Required Term Loan Lenders.

149.    "*Required Term Loan Lenders*" has the meaning ascribed to that term in the Term Loan Facility Agreement.

150.    "*Restructuring*" means the restructuring of the Debtors on the terms of the Plan.

151.    "*Restructuring Documents*" means the Plan, the Disclosure Statement, the Plan Supplement (including, for the avoidance of doubt, the Liquidating Trust Agreement), the Management Incentive Plan, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

152.    "*Restructuring Expenses*" means all fees, expenses and disbursements (including, without limitation, attorneys' and other professionals' fees and expenses) of the DIP Agent, the DIP Lenders, the Term Loan Administrative Agent, and the Term Loan Lenders in connection with the Chapter 11 Cases, the DIP Facility, the Restructuring Transactions or the Term Loan Facility, including, without limitation, distributions of property under the Plan and any and all actions requested by any party to cancel or extinguish any liens or security interests, whether incurred prior to, on or after the Effective Date.

153.    "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary to implement the Restructuring, as described in more detail in Article IV.B herein.

154.    "*Retained Causes of Action List*" means a list of all retained Claims and Causes of Action of the Debtors, identified in the Plan Supplement.

155.    "*Retained Matters*" shall have the meaning ascribed to such term in the Litigation Control Agreement.

156.    "*RINs Retirement Obligations*" means any Renewable Identification Numbers retirement obligations under the Consent Decree and/or Clean Air Act and regulations.

157.    "*RINs Retirement Obligations Reserve*" means a segregated account that may be established by the Liquidating Trust in accordance with Article VIII.D hereof.

158.    "*Sale Transactions*" means the sale or sales of all, substantially all, or certain of the Debtors' assets or equity under this Plan pursuant to a Purchase Agreement or as otherwise authorized by order of the Bankruptcy Court or the Bankruptcy Code, the terms of which shall be reasonably acceptable to the Debtors and the Required Term Loan Lenders.

159.    "*Sale Restructuring*" means a restructuring under this Plan in accordance with Article IV.E of this Plan providing for the Sale Transactions.

160.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors or the Acquired Reorganized Debtors, as applicable, pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtors and, with respect to Executory Contracts and Unexpired Leases of the Acquired Reorganized Debtors, to the Plan Sponsor.

161.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

162.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

163.    "*Secured*" means, when referring to a Claim:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as a Secured Claim pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

164.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

165.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

166.    "*Settled Claims*" means all Claims and Causes of Action made, or which could have been made, against the Settlement Parties, including, but not limited to, the Term Loan Facility, or the DIP Facility, to the extent not already released or waived in connection with the Final DIP Order.

167.    "*Settlement*" means the settlement of the Settled Claims on the terms set forth in Article X.A.

168.    "*Settlement Parties*" means (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders; (d) the DIP Agent; (e) the Term Loan Lenders; (f) the Term Loan Administrative Agent; (g) the Plan Sponsor; (h) the Creditors' Committee and its members; and (i) for each of the foregoing entities in clauses (a) through (h), such entity's current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, principals, equity holders (regardless of whether such interest are held directly or

indirectly), predecessors, participants, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, members, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

169.    "*SOA Adequate Protection Claim*" shall have same meaning ascribed to such term in the Final DIP Order.

170.    "*SOA Adequate Protection Claim Escrow Account*" shall mean an escrow account established and maintained by the Liquidating Trust in accordance with Article II.E of the Plan.

171.    "*SOA Separate Assets and Collateral*" shall have the meaning ascribed to such term in the Intercreditor Agreement.

172.    "*Subordinated Remaining Volume Claim*" shall have the meaning ascribed to such term in the Final DIP Order.

173.    "*Sunoco*" means ETC Sunoco Holdings LLC f/k/a Sunoco, Inc. and its affiliates and subsidiaries, including, for the avoidance of doubt, the SXL Promissory Note Lender.

174.    "*Sunoco Office Sublease*" means that that certain sublease agreement dated October 5, 2012 by and between Sunoco Inc., as sublessor, and PESRM, as sublessee, as subsequently amended on August 28, 2013, and April 1, 2014.

175.    "*Sunoco Office Sublease Rejection Damages Claims*" means any General Unsecured Claims arising from or related to the Debtors' rejection of the Sunoco Office Sublease.

176.    "*SXL Promissory Note*" means that certain promissory note, dated August 7, 2018 (as amended from time to time), by and among PESRM, as the borrower, and the SXL Promissory Note Lender.

177.    "*SXL Promissory Note Claim*" means any Allowed Claim held by the SXL Promissory Note Lender arising under, derived from, or based on the SXL Promissory Note.

178.    "*SXL Promissory Note Deficiency Claim*" means any Allowed SXL Promissory Note Claim that is not a Secured Claim.

179.    "*SXL Promissory Note Lender*" means Sunoco Logistics Partners Operations L.P. as lenders under the SXL Promissory Note.

180.    "*Term Loan Administrative Agent*" means Cortland Capital Market Services LLC, in its capacity as administrative agent to the Term Loan Facility.

181.    "*Term Loan Claim*" means any Allowed Claim held by the Term Loan Lenders arising under, derived from, or based on the Term Loan Facility.

182.    "*Term Loan Deficiency Claim*" means any Allowed Term Loan Claim that is not an Allowed Secured Claim.

183.    "*Term Loan Credit Agreement*" means that certain Credit Agreement, dated August 7, 2018 (as amended from time to time), by and among PES Holdings, as the borrower, the Term Loan Lenders, and the Term Loan Administrative Agent.

184.    "*Term Loan Facility*" means the credit facility governed by the Term Loan Credit Agreement.

185.    "*Term Loan Priority Collateral*" has the meaning ascribed to it in the Intercreditor Agreement.

186.     "*Term Loan Secured Claim*" means any Allowed Term Loan Claim that is a Secured Claim.

187.     "*Term Loan Lenders*" means the lenders from time to time pursuant to the Term Loan Facility.

188.     "*Transition Services Agreement*" means that certain transition services agreement, to be entered into on the Effective Date, between PES Ultimate (or an affiliate thereof) and PESRM with respect to the use thereafter of USW workers for Existing Activities that is cost-neutral to PES Ultimate (or an affiliate thereof), and which shall continue until August 31, 2021.

189.     "*Undeliverable Distribution Reserve*" means a segregated account established by the Liquidating Trust in accordance with Article VIII.B hereof.

190.     "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

191.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

192.     "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

193.     "*USW*" means the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers International Union.

194.     "*Voting Deadline*" means February 3, 2020, at 5:00 p.m. (prevailing Eastern Time).

195.     "*Wind Down*" means the wind down and dissolution of the Debtors' Estates following the Effective Date as set forth in Article VII.B hereof.

196.     "*Wind-Down Amount*" means Cash in an amount to be determined by the Liquidating Trust with the consent of the Required Term Loan Lenders, which amount shall be funded by the Liquidating Trust and used by the Liquidating Trust to fund the Wind Down.

197.     "*Wind-Down Reserve*" means a segregated account established by the Liquidating Trust in accordance with Article VIII.E hereof.

B.     *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11

15

Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Debtors or the Liquidating Trust in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors shall mean, with respect to Debtors that are not Acquired Reorganized Debtors, the Liquidating Trust or the Non-Acquired Reorganized Debtors to the extent the context requires.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors, the Non-Acquired Reorganized Debtors, the Liquidating Trust, or the Acquired Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor, Non-Acquired Reorganized Debtor, the Liquidating Trust, or Acquired Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

G.      *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.  Each and every Debtor shall remain responsible for the payment of United States Trustee Program fees pursuant to 28 U.S.C. § 1930 until the earlier of the time a particular case is closed, dismissed or converted, which shall be administered by the Liquidating Trust.  For the avoidance of doubt, on or after the Effective Date, no Acquired Reorganized Debtors shall be responsible for the payment of such United States Trustee Program fees pursuant to 28 U.S.C. § 1930.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims and Priority Tax Claims*

Except as otherwise provided in this Article II.A and except with respect to claims pursuant to to 28 U.S.C. § 1930 and Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), or otherwise allowed by a Final Order, requests for payment of Allowed Administrative Claims must be Filed and served on the Liquidating Trust pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Liquidating Trust and the requesting party by the Claims Objection Bar Date.

Except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, or the SOA Adequate Protection Claim, and except to the extent that an Administrative Claim or Priority Tax Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim or Priority Tax Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim or Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment in full in Cash from the Priority Claims Reserve on the Effective Date or as soon as reasonably practicable thereafter.

Any amounts remaining in the Priority Claims Reserve after payment of all Allowed Administrative Claims and all Allowed Priority Claims shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court.

B.    *Professional Compensation*

1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than 45 days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account in the full amount Allowed.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Liquidating Trust shall promptly pay the full unpaid amount of such Allowed Administrative Claim in Cash.

2.    Professional Fee Escrow Account

On the Effective Date, the Liquidating Trust shall establish and fund the Professional Fee Escrow Account with Cash in an amount equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Liquidating Trust as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee

Escrow Account shall promptly be paid to the Liquidating Trust without any further action or order of the Bankruptcy Court.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims will be paid by the Liquidating Trust.

        3.      Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide an estimate, the Liquidating Trust may estimate the unpaid and unbilled fees and expenses of such Professional.

        4.      Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Liquidating Trust, as applicable, shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Acquired Reorganized Debtors, or the Liquidating Trust, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

C.      *DIP Claims*

As of the Effective Date, the DIP Claims shall be Allowed Claims in the full amount outstanding under the DIP Agreement and the DIP and Cash Collateral Orders, including principal, interest, fees, and expenses.

Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction of the Allowed DIP Claims, each Holder of an Allowed DIP Claim will be indefeasibly repaid in full in Cash on the Effective Date.

Unless and until Holders of Allowed DIP Claims receive payment in full in Cash, then notwithstanding entry of the Confirmation Order and anything to the contrary in this Plan or the Confirmation Order, solely with respect to the Non-Acquired Reorganized Debtors, (i) none of the DIP Claims shall be discharged, satisfied or released or otherwise affected in whole or in part, and each of the DIP Claims shall remain outstanding, (ii) none of the Liens securing the DIP Claims shall be deemed to have been waived, released, satisfied or discharged, in whole or in part, and (iii) neither the DIP Credit Agreement nor any other agreement, instrument or document executed at any time in connection therewith shall be deemed terminated, discharged, satisfied or released or otherwise affected in whole or in part, and each such agreement, instrument and document shall remain in effect.  Upon the election of DIP Lenders holding at least $25 million in DIP Claims (the "Rollover DIP Lenders"), the Liquidating Trust shall leave DIP Claims in an amount not to exceed $25 million outstanding upon the Effective Date, and (a) the maturity date of the DIP Credit Agreement shall be extended to the five year anniversary of the Effective Date; (b) the Liquidating Trust Agreement shall be amended to provide that the DIP Claims shall receive, at the election of the Rollover DIP Lenders, either the first $25 million of June 21 Business Interruption Insurance Proceeds (in lieu of the Term Loan Claims recovering such amount) and/or Liquidating Trust Assets available to distribute to Holders of Term Loan Secured Claims; and (c) the DIP Credit Agreement shall be amended in a conforming manner; *provided* that, as of any date, the outstanding post-Effective Date DIP Claims shall accrue interest at the highest rate then applicable to outstanding Term Loan Claims under the Term Loan Credit Agreement; *provided*, *further*, that the DIP Lenders shall not be entitled to any other fees or "case controls" under the DIP Credit Agreement.

D.      *Existing Term Loan Adequate Protection Claims*

As of the Effective Date, the Existing Term Loan Adequate Protection Claims shall be deemed Allowed Claims in the full amount of such Claims as of the Effective Date *plus* (i) the amount of any Term Loan Priority

Collateral used to fund or repay any DIP Claims, Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, Other Priority Claims, SOA Adequate Protection Claims or Statutory Fees on or after the Effective Date and (ii) the amount of any Term Loan Priority Collateral used to fund any Liquidating Trust Expenditures, in each of cases (i) and (ii) on a dollar-for-dollar basis; *provided,* for the avoidance of doubt, that the Existing Term Loan Adequate Protection Claims shall be capped at the amount of unpaid Term Loan Claims (including accrued interest thereon pursuant to the terms of the Term Loan Credit Agreement).

Unless and until Holders of Allowed Existing Term Loan Adequate Protection Claims receive payment in full in Cash, then notwithstanding entry of the Confirmation Order and anything to the contrary in this Plan or the Confirmation Order, including for the avoidance of doubt, Article VIII herein, solely with respect to the Non-Acquired Reorganized Debtors, (i) none of the Existing Term Loan Adequate Protection Claims shall be discharged, satisfied or released or otherwise affected in whole or in part, and each of the Existing Term Loan Adequate Protection Claims shall remain outstanding, (ii) none of the Liens securing the Existing Term Loan Adequate Protection Claims shall be deemed to have been waived, released, satisfied or discharged, in whole or in part, and (iii) the Existing Term Loan Adequate Protection Liens shall be deemed to attach to the assets vested in the Liquidating Trust (including all Collateral (as defined in the Final DIP Order) in the same order of relative priority with respect to the DIP Liens and the SOA Adequate Protection Liens set forth in the Final DIP Order.

E.       *SOA Adequate Protection Claim*

The SOA Adequate Protection Claim shall survive the Effective Date, and shall be Allowed if the June 21 Business Interruption Insurance Proceeds are determined by Final Order to constitute Intermediation Priority Collateral in the Insurance Priority Dispute Adversary Proceeding, (i) in the amount of $25 million *minus* the reasonable and necessary costs and expenses determined by the Court, or agreed to by the DIP Lenders, or after the DIP Obligations have been paid in full, the Required Existing Term Lenders (as such term is defined in the Final DIP Order), and the Intermediation Provider, as being allocable to the preservation, preparation, and pursuit of the SOA Priority June 21 Insurance Proceeds and, in any case, shall not exceed an amount equal to 45% of the Proceeds of the Catalyst Assets and (ii) in all other circumstances, $0.  The Allowed SOA Adequate Protection Claim shall not be subject to objection by any party in interest.  The Acquired Reorganized Debtors shall have no liability for the SOA Adequate Protection Claim.

To the extent the proceeds of the Catalyst Assets are or may be distributed to holders of Claims (other than the SOA Adequate Protection Claim) on or after the Effective Date, the Liquidating Trust shall establish the SOA Adequate Protection Claim Escrow Account, which shall be funded with Distribution Proceeds in an amount equal to 45% of the Proceeds of the Catalyst Assets (less any amounts already paid as of such time on account of any SOA Adequate Protection Claim), and the SOA Adequate Protection Claim shall be secured on a first priority basis (including senior to the DIP Liens (as defined in the Final DIP Order) and the Existing Term Loan Adequate Protection Liens (as defined in the Final DIP Order)) by the SOA Adequate Protection Claim Escrow Account. For the avoidance of doubt, the SOA Adequate Protection Claims shall be capped at the amount of unpaid Intermediation Claims (including accrued interest thereon); *provided, further* that in the event that the SOA Adequate Protection Claim is satisfied in full, any amounts remaining in the SOA Adequate Protection Claim Escrow Account shall be released to the General Account and treated as Distribution Proceeds in accordance with Article VIII.L hereof.

F.       *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, to the extent applicable, the Liquidating Trust shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Liquidating Trust shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Reorganized Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  For the avoidance of doubt, on or after the Effective Date, no Acquired Reorganized Debtors shall be responsible for the payment of United States Trustee Program fees pursuant to 28 U.S.C. § 1930.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Summary of Classification*

Claims and Interests, except for DIP Claims, Administrative Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

1.      Class Identification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
| --- | --- | --- | --- |
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | Term Loan Secured Claims | Impaired | Entitled to Vote |
| 4 | Intermediation Secured Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Subordinated Remaining Volume Claim | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote |
| 8 | Intercompany Interests | Impaired/Unimpaired | Not Entitled to Vote |
| 9 | Interests in PES Energy and PES Ultimate Interests | Impaired | Deemed to Reject |
| 10 | Section 510(b) Claims | Impaired | Deemed to Reject |

B.      *Treatment of Claims and Interests*

Subject to Article VI hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.      Class 1 – Other Secured Claims

a.      *Classification*: Class 1 consists of Other Secured Claims against any Debtor.

b.      *Treatment*: Each Holder of an Allowed Other Secured Claim will receive, at the Debtors' election (subject to the reasonable consent of the Required Term Loan Lenders): (a) payment in full in Cash, which may come from the Other Secured Claims Reserve; (b) delivery of the collateral securing any such Claim and payment of any interest required

under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired.[2]

Subject to the occurrence of the Effective Date, the Secured portion of the SXL Promissory Note Claim shall be Allowed in the amount of $12 million and, notwithstanding anything to the contrary herein, shall be paid in full, in Cash, on the Effective Date. The SXL Promissory Note Deficiency Claim shall be Allowed as a General Unsecured Claim.

c.    *Voting*:  Class 1 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims

a.    *Classification*:  Class 2 consists of Other Priority Claims.

b.    *Treatment*: Each Holder of an Allowed Other Priority Claim will receive payment in full in Cash from the Priority Claims Reserve.

c.    *Voting*:  Class 2 is Unimpaired.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.    Class 3 – Term Loan Secured Claims

a.    *Classification*:  Class 3 consists of all Allowed Term Loan Secured Claims.

b.    *Treatment*:  The Term Loan Claims shall be allowed in the aggregate principal amount of $698,639,651.00 plus accrued and unpaid interest and fees thereon as of the Petition Date plus, to the extent the Term Loan Claims are secured, accrued interest and fees (including any attorneys', accountants', appraisers', and financial advisors' fees, in each case that are chargeable or reimbursable under the Term Loan Credit Agreement) to the extent permitted by section 506(b) of the Bankruptcy Code.  Each Holder of an Allowed Term Loan Secured Claim will receive its share of: (i) the Distribution Proceeds available for distribution to Holders of Allowed Term Loan Secured Claims from time to time as provided in Article VIII hereof; in accordance with section 7.03(a) of the Term Loan Credit Agreement; (ii) Cash proceeds of the Intermediation Priority Collateral to the extent such proceeds remain available after Holders of Allowed Intermediation Secured Claims are paid in full in accordance with Article III.B.4 hereof in accordance with section 7.03(a) of the Term Loan Credit Agreement; and (iii) to effectuate the foregoing following the Effective Date, distributions on account of Liquidating Trust Units, which shall be distributed to the Term Loan Administrative Agent, as set forth in the Liquidating Trust Agreement, in accordance with section 7.03(a) of the Term Loan Credit Agreement.  To the extent that such distribution is not sufficient to pay the Allowed Term Loans Claims in full, any unsatisfied amount shall constitute an Allowed Term Loan Deficiency Claim.

c.    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Term Loan Secured Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – Intermediation Secured Claims

---

[2]    Certain Holders of Other Secured Claims may be entitled to legal fees, expenses, and interest on account of their Claims, as applicable.

a.     *Classification*:  Class 4 consists of all Allowed Intermediation Secured Claims.

b.     *Treatment*:  Each Holder of an Allowed Intermediation Secured Claim shall receive its Pro Rata Share of: (a) Cash proceeds of Intermediation Priority Collateral and the SOA Separate Assets and Collateral, subject to the Global Resolution between the Debtors and the Intermediation Lender as set forth in the Final DIP Order and the exhibits thereto; *provided*, for the avoidance of doubt, that the amount of any surcharge applied pursuant to the Final DIP Order or the Plan if the June 21 Business Interruption Insurance Proceeds are determined by Final Order to constitute SOA Priority Collateral in the Insurance Priority Dispute Adversary Proceeding shall reduce the amount of the June 21 Business Interruption Insurance Proceeds but not be deducted from the Intermediation Claims; (b) all other assets that constitute Intermediation Priority Collateral or SOA Separate Assets and Collateral or the net Cash proceeds thereof; (c) Cash proceeds of the Term Loan Priority Collateral to the extent such proceeds remain available after Holders of Allowed Term Loan Secured Claims are paid in full in accordance with Article III.B.3 hereof; and (d) to effectuate the foregoing following the Effective Date, the Liquidating Trust Units as provided in the Liquidating Trust Agreement.   To the extent such distribution is not sufficient to pay the Allowed Intermediation Secured Claims in cash in full, any unsatisfied amount shall constitute an Allowed Intermediation Deficiency Claim, plus, to the extent the Intermediation Secured Claims are secured, accrued interest and fees (including any attorneys', accountants', appraisers', and financial advisors' fees, in each case that are chargeable or reimbursable under the Intermediation Facility) to the extent permitted by section 506(b) of the Bankruptcy Code..

c.     *Voting*:  Class 4 is Impaired under the Plan.  Holders of Intermediation Secured Claims are entitled to vote to accept or reject the Plan.

5.     <u>Class 5 – General Unsecured Claims</u>

a.     *Classification*:  Class 5 consists of all General Unsecured Claims.

b.     *Treatment*:  Each Holder of an Allowed General Unsecured Claim will receive, on account of all of its Allowed General Unsecured Claims, its Pro Rata share of the GUC Settlement Proceeds as provided in Article Article VIII.I hereof, and shall be deemed to have assigned its General Unsecured Claims to the Holders of Term Loan Claims (on a ratable basis); *provided* that any Holder of an Allowed General Unsecured Claim, on account of all of its Allowed General Unsecured Claims, may elect to receive instead its Pro Rata share of the Distribution Proceeds in accordance with Article VIII.I, in which case it shall not be deemed to have assigned its General Unsecured Claims to the Holders of Term Loan Claims; *provided, further,* that any Holder of an Allowed General Unsecured Claim who does not make the Distribution Proceeds Election shall be deemed to grant the GUC Settlement Release in accordance with the terms of Article VIII.I hereof; *provided, further*, that any Holder of an Allowed General Unsecured Claim who does not make the Distribution Proceeds Election shall not be entitled to receive any other Liquidating Trust Assets (including any Distribution Proceeds, Liquidating Trust Units or proceeds of Intermediation Priority Collateral or proceeds of the SOA Separate Assets and Collateral) on account of such General Unsecured Claims.  Holders of Allowed Term Loan Deficiency Claims and Allowed Intermediation Deficiency Claims shall be deemed to have made the Distribution Proceeds Election on account of their Allowed Term Loan Deficiency Claim and the Allowed Intermediation Deficiency Claim, respectively, and shall not be permitted to receive their Pro Rata share of the GUC Settlement Proceeds*.*

Notwithstanding anything to the contrary in the Plan, the Allowed Sunoco Office Sublease Rejection Damages Claims shall be entitled to elect to receive their Pro Rata Share of the GUC Settlement Proceeds.  In respect of Sunoco's other General Unsecured Claims, Sunoco shall be deemed to have made the Distribution Proceeds Election, and such other

General Unsecured Claims of Sunoco shall receive their Pro Rata Share of the Distribution Proceeds in accordance with Article VIII.I.

    c.     *Voting*: Class 5 is Impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.     <u>Class 6 – Subordinated Remaining Volume Claim</u>

    a.     *Classification*: Class 6 consists of the Subordinated Remaining Volume Claim.

    b.     *Treatment*: The Holder of the Allowed Subordinated Remaining Volume Claim will receive its Pro Rata Share of the Distribution Proceeds as provided in Article VIII.L hereof and, to effectuate the foregoing following the Effective Date, the Liquidating Trust Units as provided in the Liquidating Trust Agreement.

    c.     *Voting*: Class 6 is Impaired. The Holder of the Allowed Subordinated Remaining Volume Claim is entitled to vote to accept or reject the Plan.

7.     <u>Class 7 – Intercompany Claims</u>

    a.     *Classification*: Class 7 consists of all Intercompany Claims.

    b.     *Treatment*: Each Allowed Intercompany Claim will be canceled and released, and no distributions shall be made on account of any Intercompany Claims.

    c.     *Voting*: Class 7 is Impaired, and the Holders of Allowed Intercompany Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.     <u>Class 8 – Intercompany Interests</u>

    a.     *Classification*: Class 8 consists of all Intercompany Interests.

    b.     *Treatment*: The Intercompany Interests in the Acquired Reorganized Debtors shall be Reinstated for administrative convenience and the Purchased Interests shall be sold to the Plan Sponsor in accordance with the Purchase Agreement. Each other Allowed Intercompany Interest (including, for the avoidance of doubt, the Intercompany Interests of PES Administrative Services, LLC) shall be canceled and released without any distribution on account of such interests.

        *Voting*: Class 8 is either Unimpaired, and the Holders of Allowed Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and the Holders of Allowed Intercompany Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9.     <u>Class 9 – Interests in PES Energy and PES Ultimate Interests</u>

    a.     *Classification*: Class 9 consists of all Interests in PES Energy and PES Ultimate Interests.

    b.     *Treatment*: Each Holder of Allowed Interest in PES Energy and each PES Ultimate Interest will receive, following the full satisfaction of the Allowed Subordinated Remaining Volume Claim, its Pro Rata Share of the Distribution Proceeds as provided in Article VIII.L hereof and, to effectuate the foregoing following the Effective Date, the Liquidating Trust Units as provided in the Liquidating Trust Agreement

      c.      *Voting*:  Class 9 is Impaired.  Holders of Interests in PES Energy and of PES Ultimate Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

    10.    <u>Class 10 – Section 510(b) Claims</u>

      a.      *Classification*:  Class 10 consists of all Section 510(b) Claims.

      b.      *Treatment*:  Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim.  The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

      c.      *Voting*:  Class 10 is Impaired.  Holders of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

    Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Acquired Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

    Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims and Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XII hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Elimination of Vacant Classes*

    Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

    If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

G.      *Intercompany Interests*

    To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Plan Sponsor.

H.      *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidating Trust, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Settled Claims and of all Claims, Interests, Causes of Action, and controversies that could have been asserted against any of the Settlement Parties by any of the Settlement Parties.  The Plan shall be deemed a motion to approve the good-faith Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

B.      *Restructuring Transactions*

Before, on, and after the Effective Date, the Debtors or the Liquidating Trust shall take all actions as may be necessary or appropriate to effectuate the Sale Restructuring, as applicable, including:  (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; (e) all transactions necessary to provide for the purchase of the Purchased Interests and other assets sold to the Plan Sponsor under the Purchase Agreement, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

C.      *Cancelation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered to the Debtors and the Debtors shall not have any continuing obligations thereunder; and (2) subject to Article V.D of the Plan, the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; *provided, however*, that the Term Loan Credit Agreement, the Existing Intercreditor Agreement, and all Loan

Documents (as defined in the Term Loan Credit Agreement) shall remain in place as between all parties thereto other than the Debtors.

D.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property pursuant hereto, including any transaction that is deemed or treated as equivalent to a transfer of property under applicable nonbankruptcy law as a result of a change of ownership or control, shall not be subject to any tax under a law imposing a stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

E.    *The Sale Restructuring*

The Debtors, with the consent of the Required Term Loan Lenders and Required DIP Lenders, determined before the Confirmation Hearing to effectuate the Sale Restructuring. On the Effective Date, the Debtors shall consummate the Sale Transactions, and, among other things, the Purchased Interests and other acquired assets or equity, as set forth in the Purchase Agreement, shall be transferred to and vest in the Plan Sponsor free and clear of all Liens, Claims, charges, or other encumbrances, other than the Transferring Liens (as defined in the Purchase Agreement), to the maximum extent permitted by applicable law and pursuant to the terms of the Purchase Agreement and Confirmation Order. On the Effective Date, the Plan Sponsor shall pay to the Debtors the proceeds from the Sale Transactions, as and to the extent provided for in the Purchase Agreement. The Confirmation Order shall: (a) approve the Restructuring Transactions and Restructuring Documents, including the Sale Transaction and the Purchase Agreement; and (b) authorize the Debtors or Liquidating Trust, as applicable, to undertake the transactions contemplated by the Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

The Debtors and the Plan Sponsor shall be authorized to take all actions as may be deemed necessary or appropriate to consummate any Restructuring Transactions, including the Sale Transaction, pursuant to the terms herein, any Restructuring Documents, and the Confirmation Order, and the sale of the Purchased Interests shall be free and clear of all Liens, Claims, Interests and encumbrances, other than the Transferring Liens (as defined in the Purchase Agreement), pursuant to sections 363 and 1123 of the Bankruptcy Code as of the Closing Date (as defined in the Purchase Agreement) (the "Sale Closing Date"). On and after the Effective Date, except as otherwise provided in the Plan and the Liquidating Trust Agreement, the Debtors, the Acquired Reorganized Debtors, the Liquidating Trust, or the Plan Sponsor, as applicable, may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing . Neither the Plan Sponsor nor any of its affiliates (other than the Acquired Reorganized Debtors) shall be deemed a successor of the Debtors. Entry of the Confirmation Order shall constitute approval of the Sale Transactions and the Purchase Agreement.

1.    Vesting of Assets

Except as otherwise provided in the Plan, the Confirmation Order, the Purchase Agreement, the Retained Causes of Action List, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, (a) to the extent of the Term Loan Lenders' consent (with respect to Term Loan Priority Collateral) and Intermediation Provider's consent (with respect to SOA Separate Assets and Collateral and Intermediation Priority Collateral), on the Effective Date, the assets of the Debtors that are not Acquired Reorganized Debtors, including all work product, attorney-client, or other privilege (the "Privileges") held by the Debtors or Reorganized Debtors, other than assets sold to the Plan Sponsor pursuant to the Purchase Agreement, as well as the assets defined as "Excluded Assets" in the Purchase Agreement, shall vest in the Liquidating Trust; and (b) all other assets of the Acquired Reorganized Debtors shall remain in the Acquired Reorganized Debtors, in each case free and clear of all Liens, Claims, charges, or other

encumbrances to the maximum extent permitted by applicable law, other than the Transferring Liens (as defined in the Purchase Agreement) pursuant to the terms of the Purchase Agreement and Confirmation Order; *provided* that, subject to funding the Professional Fee Escrow Account, the liens and claims of the DIP Lenders, Term Loan Lenders, and Intermediation Provider shall attach to the proceeds of the Sale Transactions to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets, until such DIP Claims, Term Loan Claims, and Intermediation Claims are satisfied as set forth in Article II.C, Article III.B.3, and Article III.B.4 herein, respectively. On and after the Effective Date, (y) the Acquired Reorganized Debtors may operate their businesses and use, acquire, or dispose of property and compromise or settle any claims or Causes of Action, and (z) except as otherwise provided for in the Plan, the DIP and Cash Collateral Orders, or the Purchase Agreement, the Liquidating Trust may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Pursuant to the Purchase Agreement, and notwithstanding anything to the contrary herein or the Confirmation Order, the bare legal title to the Retained Matters numbered 1, 2, and 3 in Schedule 1 to the Litigation Control Agreement shall remain with the Acquired Reorganized Debtors and shall not transfer to the Non-Acquired Reorganized Debtors or the Liquidating Trust; *provided*, *however*, that pursuant to the terms of the Litigation Control Agreement and the Tax Refund Agreement, each of which are to be entered into at the closing of the Sale Transactions, the Liquidating Trust shall have the sole economic interest in, and shall be entitled to any Proceeds arising from, or otherwise related to, in and all of the Retained Matters (including, with respect to the Tax Refund Claims, as more specifically set forth in the Tax Refund Agreement), along with certain other rights with respect to the Retained Matters, as further set forth in the Litigation Control Agreement and Tax Refund Agreement.

On and after the Effective Date, the Liquidating Trust shall be entitled to exercise the rights of the Sellers and shall perform the obligations of the Sellers pursuant to the Purchase Agreement, the Litigation Control Agreement the Tax Refund Agreement and any other transaction documents entered into in connection with the Sale Transactions, and any surviving obligations of the Plan Sponsor or the Acquired Reorganized Debtors to the Sellers shall be deemed obligations to the Liquidating Trust.

2.      Sources of Consideration for Plan Distributions

The Liquidating Trust will fund distributions under the Plan with Proceeds of the Liquidating Trust Assets, including (a) Cash on hand on the Effective Date; (b) the revenues and Proceeds of all interests and assets sold to the Plan Sponsor under the Purchase Agreement; and (c) the revenues and Proceeds from all Excluded Assets, including from Retained Matters and from all Causes of Action constituting Excluded Assets and not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Purchase Agreement, on the Effective Date, any Cause of Action that constitutes an Excluded Asset (excluding, for the avoidance of doubt, the bare legal title to the Retained Matters numbered 1, 2, and 3 in Schedule 1 to the Litigation Control Agreement) and is not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Liquidating Trust.

3.      Dissolution of the Board of the Debtors

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

4.      Final DIP Order

Notwithstanding anything to the contrary set forth in the Plan, Plan Supplement, Confirmation Order or otherwise, solely with respect to the Debtors that are not Acquired Reorganized Debtors, (i) the Liens, claims, and rights of the DIP Lenders, Term Loan Lenders, and Intermediation Provider, set forth in the Final DIP Order shall

continue in full force and effect on and after the Effective Date until all DIP Claims, Allowed Term Loan Claims, and Allowed Intermediation Claims are paid in full in Cash or otherwise satisfied with the consent of the Holders of such Claim; and (ii) the Final DIP Order shall govern the use, distribution, application, or treatment of the Disputed Priority June 21 Insurance Proceeds, and any Disputed Priority June 21 Insurance Proceeds placed in a segregated escrow account  pursuant to paragraph 17(f) of the Final DIP Order shall be subject to the Liens as set forth in the Final DIP Order.

5.      Release of Liens; Restriction on Pledge

On the Effective Date, to the maximum extent permitted by applicable law, all Liens on any property of any Debtors or the Acquired Reorganized Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Acquired Reorganized Debtors shall be automatically discharged and released.  Notwithstanding the foregoing sentence or anything to the contrary set forth in the Plan, subject to the funding of the Professional Fee Escrow Account, until the DIP Claims are satisfied in accordance with Article II.C of the Plan, the Term Loan Claims are Satisfied in accordance with Article III.B.3 hereof, and the Intermediation Claims are satisfied in accordance with Article III.B.4 of the Plan, the Liens of the DIP Lenders, Term Loan Lenders, and Intermediation Provider shall attach to the proceeds of the Sale Transactions and shall continue to attach to (x) the assets of the Debtors that are not Acquired Reorganized Debtors (other than assets sold to the Plan Sponsor pursuant to the Purchase Agreement) and (y) the assets defined as Excluded Assets in the Purchase Agreement, in each case to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets and in each case such Liens shall be valid, binding, perfected and enforceable until satisfaction in full of the Allowed Claim that such Lien is securing without the need for the filing of any mortgages or financing statements or for any other action to be taken, to the maximum extent permitted by law and under the Purchase Agreement; *provided, further*, that, notwithstanding anything to the contrary set forth in this Plan, valid statutory mechanics' Liens under non-bankruptcy law on any property of the Debtors shall attach to the proceeds of the Sale Transactions to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets. In no event shall the Plan Sponsor pledge any Excluded Asset to secure any obligation arising on or after the closing date of the Sale Transactions or use Excluded Asset or proceeds thereof to satisfy any obligation except the obligations under the "wrong pocket" provisions of the Purchase Agreement and other agreement entered into in connection therewith, including any litigation cooperation agreement.

6.      Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (a) the implementation of the Restructuring Transactions; (b) consummation of the Sale Transactions; and (c) all other actions contemplated under or necessary to implement the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors, and any corporate action required by the Debtors or trust action required by the Liquidating Trust in connection with the Plan or corporate structure of the Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors and the Liquidating Trust, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors or the Liquidating Trust, as applicable.  The authorizations and approvals contemplated by this Article IV.E shall be effective notwithstanding any requirements under non-bankruptcy law.

7.      Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Acquired Reorganized Debtors, the Non-Acquired Reorganized Debtors, and the Liquidating Trust are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

8.      Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey, on the Effective Date, to the Liquidating Trust all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action constituting Excluded Assets (including subject to the Litigation Control Agreement, the control over any Retained Matters), whether arising before or after the Petition Date, which shall vest in the Liquidating Trust pursuant to the terms of the Plan.  The Liquidating Trust may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action (including subject to the Litigation Control Agreement, any Retained Matters), whether arising before or after the Petition Date, and the Liquidating Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Liquidating Trust may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Liquidating Trust deems appropriate, including on a contingency fee basis, in accordance with the terms of the Liquidating Trust Agreement.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Acquired Reorganized Debtors or the Liquidating Trust will not pursue any and all available Causes of Action against them.  The Acquired Reorganized Debtors and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the specific identification of a retained or preserved Cause of Action in the Plan, the Disclosure Statement, or the Plan Supplement shall prevail over the general language of the releases set forth in Article X.F herein.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Liquidating Trust and the Acquired Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Liquidating Trust and the Acquired Reorganized Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Liquidating Trust and the Acquired Reorganized Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Confirmation Order, the Purchase Agreement, or any other Restructuring Documents, (a) any Proceeds arising from, or otherwise related to the Retained Matters, including to the Business Interruption and Property Damage Insurance Policies, shall be payable in the Liquidating Trust, and the Bankruptcy Court shall retain jurisdiction over any related claims, rights, or Causes of Actions in accordance with Article XIII hereof, and (b) nothing contained herein shall constitute or be deemed to constitute an assignment or transfer of any Retained Matter numbered 1, 2, and 3 in Schedule 1 to the Litigation Control Agreement, including of any claim under any Business Interruption and Property Damage Insurance Policy.

F.      *Management Incentive Plan*

The Liquidating Trust shall implement the Management Incentive Plan, the terms of which shall be included in the Plan Supplement and which shall be acceptable to the Required Term Loan Lenders; *provided*, that the Acquired Reorganized Debtors shall not have any liability under the Management Incentive Plan.  The participants to the Management Incentive Plan shall be available to provide reasonable services to the Liquidating Trust with respect to the pursuit of assets distributable to Holders of Claims and Interest in order to be eligible to receive payments under the Management Incentive Plan, in accordance with the Management Incentive Plan.

G.      *KERP Documents*

On the Effective Date, the KERP Documents shall be assumed by the Liquidating Trust as of the Effective Date; *provided* that the Acquired Reorganized Debtors shall not have any liability under the KERP Documents.

H.    *The Liquidating Trust*

On the Plan Effective Date, the Liquidating Trust will be formed for the benefit of the Liquidating Trust beneficiaries, as determined by the Liquidating Trust Agreement, to administer and distribute the Liquidating Trust Assets and fulfill the Liquidating Trust Obligations.  The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets and pursuant to the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets.

On and after the Effective Date, the Liquidating Trust shall assume responsibility for purposes of (a) resolving Disputed Claims, (b) making distributions on account of Allowed Claims as provided hereunder, (c) establishing and funding the Distribution Reserve Accounts, (d) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action identified on the Retained Causes of Action List that are Liquidating Trust Assets and, subject to the Litigation Control Agreement, the Retained Matters, in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (e) filing appropriate tax returns, (f) complying with their continuing obligations under the Purchase Agreement, if any, and the DIP and Cash Collateral Orders (as applicable), and (g) administering the Plan in an efficacious manner. The Liquidating Trust may take actions in the name of the Non-Acquired Reorganized Debtors or be deemed to be substituted as the party-in-lieu of such Non-Acquired Reorganized Debtors in all matters, including, subject to Article VII.G hereof, (i) motions and contested matters pending in the Bankruptcy Court, (ii) matters related to the DIP and Cash Collateral Orders (as applicable) and (iii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Liquidating Trust to file motions or substitutions of parties or counsel in each such matter.  Except as otherwise provided in the Plan, the Debtors, the Liquidating Trust, and the Acquired Reorganized Debtors, as applicable, reserve the right to commence and pursue any and all Causes of Action against any Entity, including Causes of Action that are not expressly identified in the List of Retained Causes of Action, but excluding Causes of Action that are expressly released under the Plan.  Confirmation of the Plan shall not in any way affect such right, and the Non-Acquired Reorganized Debtors or the Liquidating Trust reserve the right to control the Retained Matters as provided for in, and subject to, the Litigation Control Agreement.

For all federal income tax purposes, the beneficiaries of the Liquidating Trust will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations.  Accordingly, for federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of Term Loan Secured Claims, Intermediation Secured Claims, General Unsecured Claims, the Subordinated Remaining Volume Claim, and Interests in PES Energy and PES Ultimate Interests, as applicable, and (b) a second-step transfer by such Holders to the Liquidating Trust.  As a result, the beneficiaries of the Liquidating Trust shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the trustee of the Liquidating Trust, and the holders of Claims and Interests receiving interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes. The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items.  The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

The Liquidating Trust will, in an expeditious but orderly manner, make timely distributions to the beneficiaries of the Liquidating Trust pursuant to the Plan and the Confirmation Order, and not unduly prolong its

duration. The Liquidating Trust shall be deemed a successor in interest to the Non-Acquired Reorganized Debtors and, solely to the extent of the Excluded Assets, to the Acquired Reorganized Debtors. For the avoidance of doubt, the Liquidating Trust shall perform no actions other than administering and distributing the Liquidating Trust Assets and fulfilling the Liquidating Trust Obligations; *provided* that the Liquidating Trust may perform claims reconciliation and object to claims in accordance with the terms of the Liquidating Trust Agreement.

For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Confirmation Order, the Purchase Agreement, or any other Restructuring Documents, any Proceeds received or obtained under or related to any Retained Matter, including to claims or rights to coverage or payment under the Business Interruption and Property Damage Insurance Policies, except the ICBCS Direct Insurance Claims, shall vest in the Liquidating Trust, and Bankruptcy Court shall retain jurisdiction over any related claims, rights, or Causes of Actions in accordance with Article XIII hereof.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transactions; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) 30 days after the Debtors provide notice of surrender of possession to a landlord of a rejected lease where surrender occurs after entry of an order approving such rejection; and (3) 30 days after notice of any rejection that occurs after the Effective Date. **Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Liquidating Trust, as applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.** Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.5 of the Plan.

C.    *Cure of Defaults for Assumed, or Assumed and Assigned, Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court (including

the Confirmation Order), in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree.  Upon the payment of the applicable amounts set forth in the Confirmation Order (the "Cure Amounts"), if any, each Executory Contract and Unexpired Lease scheduled to be assumed in the Plan Supplement (other than any Executory Contracts and Unexpired Leases identified in the Confirmation Order as deferred for resolution at a separate hearing), will remain in full force and effect, and no default shall exist under such Executory Contract or Unexpired Lease, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts shall not be subject to further dispute or audit, including any based on performance prior to the Effective Date, irrespective of whether such contract or lease contains an audit clause.  After the payment of the Cure Amounts by or on behalf of the Liquidating Trust's or the applicable Acquired Reorganized Debtor, none of the Liquidating Trust, the Acquired Reorganized Debtors, nor the Plan Sponsor shall have any further liabilities to the counterparties to such Executory Contracts and Unexpired Leases other than the applicable Liquidating Trust's or Acquired Reorganized Debtor's obligations that accrue and become due and payable on or after the Effective Date.  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the assumed Executory Contracts and Unexpired Leases shall be forever barred and permanently enjoined from (a) raising or asserting against the Debtors, the Liquidating Trust, the Acquired Reorganized Debtors, or the Plan Sponsor any default, acceleration, breach, claim, or pecuniary loss, arising under or related to such contracts or leases existing as of and including the Effective Date or arising by reason of the closing of the Sale Transactions, including any breach related to or arising out of change-of-control provisions in such contracts or leases, or any purported written or oral modification to such contracts or leases, and (b) asserting against the Plan Sponsor or the Acquired Reorganized Debtors any claim, counterclaim, defense, breach, condition, or setoff arising under such contracts or leases and asserted or capable of being asserted against the Debtors as of the Effective Date or arising by reason of the Sale Transactions.  Notwithstanding the foregoing, nothing herein shall prevent the Liquidating Trust, the Acquired Reorganized Debtors, or the other Debtors, as applicable, from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court; *provided, however*, that in all cases, with respect to Cure Claims associated with Executory Contracts or Unexpired Leases where the Plan Sponsor is responsible for the Cure Claim, the Plan Sponsor must consent to such resolution.

Unless otherwise provided by an order of the Bankruptcy Court or in the Purchase Agreement, fourteen days before the Voting Deadline or as soon as reasonably practicable following the filing of the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim.  To the extent that the Debtors or Acquired Reorganized Debtors seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors or Acquired Reorganized Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease.

D.      *Indemnification Obligations*

All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, insurance policies, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed by the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable, and remain in full force and effect after the Effective Date, and shall not be modified, reduced,

discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose; *provided, however*, that none of the Acquired Reorganized Debtors or the Plan Sponsor shall have any liability or other responsibility for any such obligation. All indemnification obligations of the Debtors arising under or pursuant to the Term Loan Credit Agreement or the DIP Agreement shall be assumed by the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable, and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose; *provided, however*, that neither the Acquired Reorganized Debtors nor the Plan Sponsor shall have any liability or other responsibility for any such obligation.

E.     *Director and Officer Liability Insurance*

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Effective Date pursuant to section 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies; *provided, however*, that neither the Acquired Reorganized Debtors nor the Plan Sponsor shall have any liability or other responsibility for any monetary or non-monetary obligation under the D&O Liability Insurance Policies, which shall be solely obligations of the Liquidation Trust and, as applicable, individuals covered under such policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed; *provided, however*, that neither the Acquired Reorganized Debtors nor the Plan Sponsor shall have any liability or other responsibility for any such obligation which shall be solely an obligation of the Liquidating Trust.

F.     *Chubb Insurance Program*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, Plan Supplement, the Confirmation Order, any agreement or order related to postpetition or exit financing, any bar date notice or claim objection, any document related to the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, confers Bankruptcy Court jurisdiction, grants an injunction, discharge or release, or requires a party to opt out of any releases):

(a) nothing alters, modifies or otherwise amends the terms and conditions of the Chubb Insurance Program (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature and priority of the Chubb Collateral), except that on and after the Effective Date, the Non-Acquired Reorganized Debtors jointly and severally (or the Liquidating Trust, if applicable) shall assume the Chubb Insurance Program in its entirety pursuant to sections 105 and 365 of the Bankruptcy Code;

(b) nothing therein releases or discharges (i) Chubb's security interests and liens on the Chubb Collateral and (ii) the claims of Chubb arising from or pursuant to the Chubb Insurance Program and such claims are actual and necessary expenses of the Debtors' estates (or the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable) and shall be paid in full by the Non-Acquired Reorganized Debtors or the Liquidating Trust in the ordinary course of business, whether as an Allowed Administrative Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, regardless of when such amounts are or shall become liquidated, due or paid, without the need or requirement for Chubb to file or serve a request, motion, or application for payment of or proof of any proof of claim, cure claim (or any objection to cure amounts/notices), or Administrative Claim (and further and for the avoidance of doubt, any claim bar date shall not be applicable to Chubb);

(c) the Debtors or the Non-Acquired Reorganized Debtors or Liquidating Trust, as applicable, shall not sell, assign, or otherwise transfer the Chubb Insurance Program, including in the event of a Sale Restructuring, except with the express written permission of Chubb, which shall not be unreasonably withheld; and

(d) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article X of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Chubb under applicable non-bankruptcy law to proceed with their claims; (II) Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) all workers' compensation claims covered by the Chubb Insurance Program, (B) all claims where a claimant asserts a direct claim against Chubb under applicable law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article X hereof to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) Chubb to draw against any or all of the Chubb Collateral provided by or on behalf of the Debtors (or the Non-Acquired Reorganized Debtors or Liquidating Trust, as applicable) to Chubb at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable) to Chubb and/or apply such proceeds to the obligations of the Debtors (and the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable) under the applicable Chubb Insurance Program, in such order as Chubb may determine; and (IV) subject to the terms of the Chubb Insurance Program and/or applicable non-bankruptcy law, Chubb to (A) cancel any policies under the Chubb Insurance Program, and (B) take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Chubb Insurance Program.

Terms used in this Article V.F but not defined in the Plan shall have the meaning attributed to them in that certain *Order (I) Authorizing Assumption of the Existing Insurance Program, (II) Authorizing the Debtors to Enter into the New Insurance Program, and (III) Granting Related Relief* entered by the Bankruptcy Court on January 10, 2020 [Docket No. 730].

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Liquidating Trust has any liability thereunder.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article IX of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities (as applicable); and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidating Trust.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.          Delivery of Distributions

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VI or Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent:  (a) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors have not received a written notice of a change of address; or (d) to any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  None of the Debtors, the Disbursing Agent, the Liquidating Trust, or any representatives of the Liquidating Trust, as applicable, shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

3.          Minimum Distributions

Holders of Allowed Claims entitled to distributions of $100 in the aggregate (whether Cash or otherwise) or less shall not receive distributions, and each such Claims shall be discharged pursuant to Article X and their Holders are forever barred pursuant to Article X from asserting such Claims against the Debtors or the Liquidating Trust or their property.

4.          Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust or GUC Settlement Reserve, as applicable, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

E.      *Manner of Payment.*

Unless otherwise set forth herein, all distributions of Cash to the Holders of Allowed Claims under the Plan shall be made by the Disbursing Agent.  At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements; *provided* that the Holder of the Remaining Volume Administrative Claim and the Intermediation Claims shall be paid by wire.

F.      *Tax Issues and Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors or the Liquidating Trust Board, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors or the Liquidating Trust Board, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

G.    *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

H.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim; *provided that* interest may accrue on the DIP Claims in accordance with the terms of the DIP Agreement and the DIP and Cash Collateral Orders until paid in full in Cash or otherwise satisfied with the consent of the Holders of DIP Claims; *provided, further*, that this paragraph shall not apply to Term Loan Secured Claims or Intermediation Secured Claims to the extent such Term Loan Secured Claims or Intermediation Secured Claims are oversecured.

I.    *Setoffs and Recoupment*

The Debtors or the Liquidating Trust, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Liquidating Trust may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or their successors of any such Claim it may have against the Holder of such Claim.

J.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trust, such Claim shall be Disallowed without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Liquidating Trust on account of such Claim, the Debtors or the Liquidating Trust, as applicable, retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action to request that such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or the Liquidating Trust, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan, and to assert, in the event of the failure of such Holder to timely repay or return such distribution, that such Holder owes the applicable Debtor or the Liquidating Trust annualized interest at the Federal Judgment Rate (or other applicable interest rate) on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. For the avoidance of doubt, the foregoing sentence shall not be applicable to Claims secured by the business interruption portion of any Business Interruption and Property Damage Insurance Policies. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part an Allowed Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon receipt of payment by the Holder of such Allowed Claim, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

3.       Applicability of Insurance Policies

Notwithstanding anything herein to the contrary, nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

K.       *Treatment of Debtors' RINs Retirement Obligations Under the Consent Decree and the Clean Air Act*

The Court shall determine, after the submission of briefs in accordance with a schedule for briefing the issue following the Confirmation Hearing, whether the Debtors' obligations under the Consent Decree and Environmental Settlement Agreement entered by this Court in the Debtors' prior bankruptcy case, *see In re PES Holdings, LLC*, No. 18-10122 (KG), Docket Nos. 244, 347, 510 (the "Consent Decree") and the Clean Air Act and implementing regulations, constitute injunctive compliance obligations or are a dischargeable "debt" and/or a "claim" under the Bankruptcy Code. If it is determined by the Court (a) that the Debtors have RINs Retirement Obligations, which are an injunctive compliance obligation, then (i) the RINs Retirement Obligations shall not be classified as "claims" within the meaning of section 101(5) of the Bankruptcy Code and (ii) the Liquidating Trust shall comply with the RINs Retirement Obligations unless the Acquired Reorganized Debtors have by such date of determination committed to the United States to comply with the RINs Retirement Obligations or the Court has entered an Order by such date of determination requiring the Acquired Reorganized Debtors to comply with the RINs Retirement Obligations in accordance with Debtors' position that they are required to do so under the terms of the Purchase and Sale Agreement; and (iii) if, as of such date of determination, the Debtors (or, following the Effective Date, the Liquidating Trust) files a notice on the docket in these Chapter 11 Cases stating that Liquidating Trust and not the Acquired Reorganized Debtors are obligated to comply with the RINs Retirement Obligations pursuant to the Purchase Agreement (or there is a final order by a court of competent jurisdiction to such effect), such notice shall be binding on the Debtors and the Liquidating Trust and the Acquired Reorganized Debtors and Plan Sponsor shall have no further responsibility for such obligations, or (b) that the Debtors have liabilities under the Consent Decree and/or the Clean Air Act and implementing regulations which constitute dischargeable "debt" and/or a "claim" pursuant to the Bankruptcy Code, in which case such obligations shall constitute Class 5 General Unsecured Claims (but shall be subject to any right of setoff or recoupment) and may be estimated in accordance with Article IX.C subject to applicable provisions of the Bankruptcy Code and the United States shall receive pro rata distributions (subject to any right of setoff or recoupment to the extent unimpaired under applicable law as provided in and limited by paragraph 119 of the Confirmation Order), or (c) that an alternative treatment is warranted, then the treatment shall be as provided by order of the Court. The Plan and Confirmation Order and related documents are without prejudice to all parties' positions on the issue of dischargeability and setoff and recoupment and all parties reserve their existing rights and contentions without prejudice as to the legal issues, provided, that the Plan and Confirmation Order are without prejudice to any right under 11 U.S.C. § 553 or otherwise to set off and/or recoup as provided in paragraph 119 of the Confirmation Order. Debtors reserve all defenses to any such Claim of setoff and/or recoupment under applicable law as provided in and limited by paragraph 119 of the Confirmation Order.

**ARTICLE VII.**
**THE LIQUIDATING TRUST**

A.       *The Liquidating Trust Board*

The powers of the Liquidating Trust and the Liquidating Trust Board shall be subject to the Liquidating Trust Agreement, and, for the avoidance of doubt, if any inconsistency between this Plan, the Confirmation Order, or the Liquidating Trust exists, the Liquidating Trust Agreement shall govern.

The powers of the Liquidating Trust shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors' Estates or the Liquidating Trust, as applicable, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Liquidating Trust; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (3) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (4) establishing and

maintaining bank accounts in the name of the Liquidating Trust; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Liquidating Trust; (7) administering and paying taxes of the Liquidating Trust, including filing tax returns; (8) representing the interests of the Estates or the Liquidating Trust, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (9) managing and carrying out the purpose of the Liquidating Trust as its trustees; (10) closing the Sale Transactions; and (11) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

1.      Liquidating Trust Rights and Powers

The Liquidating Trust Board shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  For the avoidance of doubt, these powers shall include, to the extent applicable, the power to assert, enforce, release, or waive any privilege or any defense on behalf of the Liquidating Trust (including as to any Privilege that the Debtors held prior to the Effective Date).The Liquidating Trust Board shall be the exclusive trustee of the assets and liabilities of the Liquidating Trust for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.      Agents; Retention of Professionals

The Liquidating Trust Board may appoint officers or other representative agents of the Liquidating Trust, including a Liquidating Trust manager and a secretary, to serve as agents to the Liquidating Trust and carry out the purpose of the Liquidating Trust.  The Liquidating Trust Board shall have the right to hire employees and retain the services of attorneys, accountants, and other professionals, subject to any limitations imposed by the Liquidating Trust Board, that are necessary to assist the Liquidating Trust Board in the performance of their duties, including, for the avoidance of doubt, and subject to the Litigation Control Agreement, prosecution of Claims and Causes of Action that constitute Liquidating Trust Assets and of Retained Matters, including claims under the Business Interruption and Property Damage Insurance Policies.  The payment of the reasonable fees and expenses of the Liquidating Trust Board's retained professionals shall be made in the ordinary course of business from the Liquidating Trust Assets, as applicable, and shall not be subject to the approval of the Bankruptcy Court.

Until all Term Loan Secured Claims are paid or otherwise satisfied in full, the Required Term Loan Lenders shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Required Term Loan Lenders, are necessary or desirable to assist the Required Term Loan Lenders.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the Distribution Proceeds within five business days of submission of statements to the Liquidating Trust Board.  The payment of the reasonable fees and expenses of the Required Term Loan Lenders' retained professionals shall be made in the ordinary course of business from the Distribution Proceeds and shall not be subject to the approval of the Bankruptcy Court.

3.      Compensation of the Liquidating Trust Board

The Liquidating Trust Board's compensation, on a post-Effective Date basis, if any, shall be as described in the Plan Supplement and paid out of the Liquidating Trust Assets.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trust Board on or after the Effective Date (including taxes imposed on the Liquidating Trust, as applicable) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trust Board in connection with such Liquidating Trust Board's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Liquidating Trust Assets, as applicable, if such amounts relate to any actions taken hereunder.

4.      Liquidating Trust Board Expenses

All reasonable costs, expenses, and obligations incurred by the Liquidating Trust Board in administering this Plan, or in any manner connected, incidental, or related thereto, in effecting distributions thereunder from the

Liquidating Trust (including the reimbursement of reasonable expenses) shall be incurred and paid from the Liquidating Trust Assets.

The Debtors, the Delaware Trustee, and the Liquidating Trust Board, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that the Delaware Trustee or the Liquidating Trust Board is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidating Trust Assets.

5.      GUC Claims Administrator Expenses

From and after the Effective Date, all costs, expenses, and obligations incurred by the GUC Claims Administrator in resolving General Unsecured Claims, in effecting distributions thereunder from the GUC Settlement Reserve shall be paid from the GUC Settlement Proceeds; *provided*, in each case, that such costs, expenses, and obligations shall be reasonable and documented.

B.      *Wind Down*

On and after the Effective Date, the Liquidating Trust will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Liquidating Trust shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Liquidating Trust shall:  (1) cause the Debtors to comply with, and abide by, the terms of the Purchase Agreement, and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Non-Acquired Reorganized Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Liquidating Trust may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Liquidating Trust on behalf of a Debtor that is not an Acquired Reorganized Debtor without need for any action or approval by the shareholders or board of directors or managers of such Debtor.  From and after the Effective Date, the Non-Acquired Reorganized Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trust.

C.      *Privilege*

To effectively acquire, dispose, liquidate, manage, and conduct the business of the Liquidating Trust and the Liquidating Trust Assets, including, but not limited to, any and all Causes of Action identified on the Retained Causes of Action List, the Liquidating Trust and its counsel and representatives require full access to all documents and information in the possession of the Debtors and must be able to obtain such information from the Debtors and Reorganized Debtors on a confidential basis and in common interest without being restricted by or waiving any Privileges. Accordingly, on or prior to the Effective Date, all of the Non-Acquired Reorganized Debtors' books, records, and information, including, without limitation, (i) all information relating to the Debtors' claims and Causes of Action under the Business Interruption and Property Damage Insurance Policies, and (ii) any other information necessary to operate the Liquidating Trust, shall be transferred to the Liquidating Trust, and the Liquidating Trust shall have the rights to copies and access to similar information in the possession of the Acquired Reorganized Debtors as provided in the Purchase Agreement, in each case without waiving, and instead expressly preserving, any of the

Privileges that may apply to such transferred information.  As of the Effective Date, all Privileges held by the Debtors and Reorganized Debtors (including the board of directors or any committee of the board of directors of any of the Debtors and Reorganized Debtors) in connection with such information shall transfer to, and vest exclusively in, the Liquidating Trust. If, at any time after the Effective Date, the Debtors and/or Reorganized Debtors discover the existence of any other information or records, the Entity discovering such information or records shall promptly inform the Trust Board of their existence and transfer such information to the Liquidating Trust.

D.      *Transfer of Information*

        The transfer of information to the Liquidating Trust in accordance with the Liquidating Trust Agreement shall not result in the destruction or waiver of any applicable Privileges. Further, with respect to any Privileges: (i) they are transferred to the Liquidating Trust to enable the Trust Board and/or Business Interruption Litigation Committee to perform its duties to administer the Trust and for no other reason, (ii) they shall be preserved and not waived (except as the Liquidating Trust may elect to waive such Privileges), and (iii) no information subject to a Privilege shall be publicly disclosed by the Liquidating Trust or communicated to any Person not entitled to receive such information or in a manner that would diminish the protected status of any such information, except following a waiver of such Privilege pursuant to (iii) above or pursuant to the specific terms of the Plan and the Confirmation Order and the Liquidating Trust Agreement.

E.      *Exculpation, Indemnification, Insurance and Liability Limitation*

        The Liquidating Trust Board, the Delaware Trustee, all officers of the Liquidating Trust and all employees, contractors, and professionals employed or retained by the Liquidating Trust, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Liquidating Trust.  The Liquidating Trust may obtain, at the expense of the Liquidating Trust and with funds from the Liquidating Trust Assets, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust Board or any employees of the Liquidating Trust.  The Liquidating Trust may rely upon written information previously generated by the Debtors.

F.      *Tax Returns*

        After the Effective Date, the Liquidating Trust shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Non-Acquired Reorganized Debtors or the Liquidating Trust, as applicable, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtors or their Estates, or the Liquidating Trust, as applicable, for any tax incurred during the administration of such Debtor's Chapter 11 Case, or the administration of the Liquidating Trust, as applicable, as determined under applicable tax laws.

G.      *Dissolution of the Non-Acquired Reorganized Debtors*

        On the Effective Date, the Non-Acquired Reorganized Debtors shall be deemed to be dissolved without any further action by such Non-Acquired Reorganized Debtors or the Liquidating Trust, including the filing of any documents with the secretary of state for the state in which such Non-Acquired Reorganized Debtors are formed or any other jurisdiction.  The Liquidating Trust, however, shall have authority to take all necessary actions to dissolve the Non-Acquired Reorganized Debtors in and withdraw such Debtors from applicable state(s).  Notwithstanding anything to the contrary in the Plan, including, for the avoidance of doubt, this Article VII.G and Article IV.H hereof, the Confirmation Order, or any Restructuring Documents, the Non-Acquired Reorganized Debtors shall be deemed to continue in existence for the purpose of pursuing pending adversary proceedings and/or Retained Matters, as applicable, as of the Effective Date that such Debtors are a party to; *provided* that the proceeds of any such adversary proceedings and/or Retained Matters, as applicable, if any, shall vest in the Liquidating Trust, as successor in interest to the Non-Acquired Reorganized Debtors, to the same extent as such proceeds would have vested into the applicable Non-Acquired Reorganized Debtor; *provided, further*, the dissolution of the Non-Acquired Reorganized Debtors and the vesting of any assets or interest in the Liquidating Trust shall not constitute or be deemed to constitute an assignment or transfer of legal title to any Retained Matter numbered 1, 2, and 3 in Schedule 1 to the Litigation Control Agreement, including of any Business Interruption and Property Damage Insurance Policy.

## ARTICLE VIII.
## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

A.      *Establishment of Reserve Accounts*

The Liquidating Trust shall establish each of the Distribution Reserve Accounts (which may be effected by either establishing a segregated account, which shall be at an institution reasonably acceptable to the Creditors' Committee, the Term Loan Lenders and the Intermediation Provider to the extent Holders of Term Loan Secured Claims or Holders of Intermediation Secured Claims have not been paid in full, or establishing book entry accounts, in the sole discretion of the Liquidating Trust).

B.      *Undeliverable Distribution Reserve*

1.      Deposits

If a distribution to any Holder of an Allowed Claim is returned to the Liquidating Trust as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VI.D.4 of the Plan.

2.      Forfeiture

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed distribution within six months after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Liquidating Trust, or their respective properties or assets.  In such cases, any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and shall constitute Distribution Proceeds and promptly be transferred to the General Account to be distributed without any further action or order of the Bankruptcy Court; *provided* that any undeliverable or unclaimed distribution on account of an Allowed General Unsecured Claim shall be transferred to the GUC Settlement Reserve.

3.      Disclaimer

The Liquidating Trust and any representative of the Liquidating Trust are under no duty to take any action to either (i) attempt to locate any Claim Holder or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim Holder; *provided* that, in its sole discretion, the Liquidating Trust may periodically publish notice of unclaimed distributions.

4.      Distribution from Reserve

Within 15 Business Days after the Holder of an Allowed Claim satisfies the requirements of the Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution (*provided* that satisfaction occurs within the time limits set forth in Article VI.D.4 of the Plan), the Liquidating Trust shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, to the General Account, and such amount shall constitute Distribution Proceeds.

C.      *Disputed Claims Reserve*

On or after the Effective Date, the Liquidating Trust shall be authorized, but not directed, to establish one or more Disputed Claims Reserves.

After the Effective Date, the Liquidating Trust may, in its sole discretion, hold any property to be distributed pursuant to the Plan, in the same proportions and amounts as provided for in the Plan, in the Disputed Claims Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed after the Effective Date. The Liquidating Trust shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article III of the Plan solely to the extent of the amounts available in the applicable Disputed Claims Reserves. Any amounts remaining in the Disputed Claims Reserve after satisfaction of all Allowed Disputed Claims shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court

D.    *RINs Retirement Obligations Reserve*

Unless prior to the Effective Date (i) the Court determines that the RINs Retirement Obligations constitute dischargeable "debt" and/or a "claim" pursuant to the Bankruptcy Code or orders that an alternative treatment is warranted, or (ii) the Acquired Reorganized Debtors and/or Debtors have complied with the RINs Retirement Obligations or the Acquired Reorganized Debtors have committed to the United States to comply with the RINs Retirement Obligations or the Court determines that the RINs Retirement Obligations are the responsibility of the Acquired Reorganized Debtors under the Purchase and Sale Agreement, then on the Effective Date, the Liquidating Trust shall establish the RINs Retirement Obligations Reserve in accordance with Article VI.K by depositing Cash in the amount of $35 million into the RINs Retirement Obligations Reserve; *provided* that the deposit shall not constitute a limit on the RINs required to be retired. Any deposit remaining in the RINs Retirement Obligations Reserve after satisfaction of injunctive compliance obligations shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, in the event the Court determines that the RINs Retirement Obligations constitute dischargeable "debt" and/or a "claim" pursuant to the Bankruptcy Code, then (i) such liabilities shall constitute Class 5 General Unsecured Claims (but shall be subject to any right of setoff or recoupment as provided in and limited by paragraph 119 of the Confirmation Order and may be estimated in accordance with Article IX.C subject to applicable provisions of theBankruptcy Code and the United States shall receive pro rata distributions (subject to any right of setoff or recoupment as provided in and limited by paragraph 119 of the Confirmation Order); and (ii) the RINs Retirement Obligations Reserve shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court.

Notwithstanding anything in the Plan or the Confirmation Order, nothing herein is intended to modify or does modify the obligations of the respective parties under the Purchase and Sale Agreement relating to the Consent Decree and RINs Retirement Obligations.

E.    *Wind-Down Reserve*

On the Effective Date, the Liquidating Trust shall establish the Wind-Down Reserve by depositing Cash in the amount of the Wind-Down Amount into the Wind-Down Reserve. After the Effective Date, the Wind-Down Amount may be modified from time to time by the Liquidating Trust Board to further the purpose of the Wind-Down Reserve as set forth herein. The Wind-Down Reserve shall be used by the Liquidating Trust solely to satisfy the expenses of the Liquidating Trust as set forth in the Plan; *provided* that all costs and expenses associated with the winding up of the Liquidating Trust and the storage of records and documents shall constitute expenses of the Liquidating Trust and shall be paid from the Wind-Down Reserve. In no event shall the Delaware Trustee or any member of the Liquidating Trust be required or permitted to use their personal funds or assets for such purposes. Any amounts remaining in the Wind-Down Reserve after payment of all expenses of the Liquidating Trust shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court.

F.      *Other Secured Claims Reserve*

        On the Effective Date, the Liquidating Trust shall establish the Other Secured Claims Reserve by depositing Cash in the amount of the Other Secured Claims Reserve Amount into the Other Secured Claims Reserve. The Other Secured Claims Reserve Amount shall be used to pay Allowed Other Secured Claims. If all or any portion of an Other Secured Claim shall become a Disallowed Claim, then the amount on deposit in the Other Secured Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Other Secured Claims Reserve, shall remain in the Other Secured Claims Reserve to the extent that the Liquidating Trust determines necessary to ensure that the Cash remaining in the Other Secured Claims Reserve is sufficient to ensure that all Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise constitute Distribution Proceeds and promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Bankruptcy Court. Any amounts remaining in the Other Secured Claims Reserve after satisfaction of all Allowed Other Secured Claims shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII without any further action or order of the Bankruptcy Court.

G.      *Priority Claims Reserve*

        On the Effective Date, the Liquidating Trust shall establish the Priority Claims Reserve by depositing Cash in the amount of the Initial Priority Claims Reserve Amount and the Additional Priority Claims Reserve Amount into the Priority Claims Reserve. The Priority Claims Reserve shall be used to pay Holders of all Allowed Priority Claims in full in Cash, to the extent that such Allowed Priority Claims have not been paid in full on or before the Effective Date. If all or any portion of a Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Priority Claims Reserve attributable to such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Priority Claims Reserve, shall remain in the Priority Claims Reserve to the extent that the Liquidating Trust determines necessary to ensure that the Cash remaining in the Priority Claims Reserve is sufficient to ensure that all Allowed Priority Claims will be paid in full in Cash in accordance with the Plan, and shall otherwise constitute Distribution Proceeds and promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Bankruptcy Court. Any amounts remaining in the Priority Claims Reserve after payment of all Allowed Priority Claims shall constitute Distribution Proceeds and promptly be transferred to the General Account and shall be distributed in accordance with Article VIII hereof without any further action or order of the Bankruptcy Court.

H.      *[Reserved]*

I.      *GUC Distributions*

        1.      GUC Settlement Reserve

        Upon the Effective Date, the GUC Claims Administrator shall establish and thereafter maintain the GUC Settlement Reserve in a separate, segregated account by depositing Cash in the amount of such GUC Settlement Proceeds into the GUC Settlement Reserve. The GUC Settlement Reserve shall be used to pay Allowed General Unsecured Claims other than those that have made the Distribution Proceeds Election on a Pro Rata basis; *provided* that If a distribution to any Holder of an Allowed General Unsecured Claim (who has not made the Distribution Proceeds Election) is returned to the GUC Settlement Reserve as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable GUC Settlement Reserve," in accordance with Article VIII.B.1 of the Plan, for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VI.D.4 of the Plan.

        2.      GUC Settlement Release

        Promptly following entry of the Confirmation Order, the Debtors shall serve an election notice in a form reasonably acceptable to the Creditors' Committee and the U.S. Trustee that affords Holders of General Unsecured Claims (whether or not Allowed) no less than two weeks to make the Distribution Proceeds Election and thereby opt

out of the GUC Settlement Release.  Any Holder of a General Unsecured Claim that has not opted out of the GUC Settlement Release shall be deemed to have provided the GUC Settlement Release.

3.      GUC Waterfall Distribution

Following payment in full of all Allowed Term Loan Claims and Allowed Intermediation Secured Claims as set forth in Article II and Article III of the Plan, and after funding of the Wind-Down Reserve, the RINs Retirement Obligations Reserve, the Other Secured Claims Reserve, and the Priority Claims Reserve, the Liquidating Trust shall establish and thereafter maintain in a separate, segregated account (the "Non-Settlement GUC Reserve") the Distribution Proceeds remaining for General Unsecured Claims and the Subordinated Remaining Volume Claim in accordance with Article VIII hereof.  The Non-Settlement GUC Reserve shall be used to pay Allowed General Unsecured Claims making  the Distribution Proceeds Election on a Pro Rata basis, and, upon complete satisfaction of such Allowed General Unsecured Claims, the Subordinated Remaining Volume Claim on a Pro Rata Basis, *provided* that Distribution Proceeds in the Non-Settlement GUC Distribution Reserve shall only be used to pay the Allowed Subordinated Remaining Volume Claim to the extent Allowed General Unsecured Claims that have made the Distribution Proceeds Election have been paid in full, *provided, further*, that the Liquidating Trust may, in its sole discretion, upon five Business Days' notice to the Bankruptcy Court, donate the funds in the Non-Settlement GUC Reserve to a suitable charitable organization (for example, the American Bankruptcy Institute Endowment Fund, CARE, or similar organization) without any further action or order of the Bankruptcy Court if distribution of the funds to Holders of Allowed General Unsecured Claims on a Pro Rata basis is not feasible, and such distribution would not satisfy the outstanding Allowed General Unsecured Claims such that the Allowed Subordinated Remaining Volume Claim would receive a recovery.

J.      *Distributions to Holders of Allowed Term Loan Claims*

Following the Effective Date, the Liquidating Trust shall promptly deliver to the Term Loan Administrative Agent all Distribution Proceeds at such time for distributions to the Holders of Allowed Term Loan Claims to be made in accordance with section 7.03 of the Term Loan Credit Agreement until such claims are paid in full in cash including (to the extent Allowed) all interest accrued and accruing under the Term Loan Credit Agreement until such payment in full in cash.

K.      *Distributions to Intermediation Provider*

Following the Effective Date, the Liquidating Trust shall promptly deliver to the Intermediation Provider all Cash constituting proceeds of Intermediation Priority Collateral and proceeds of SOA Separate Assets and Collateral to the Holders of Allowed Intermediation Secured Claims until such claims are paid in full in cash including all interest accrued, but subject to any right of the DIP Claims or Term Loan Claims to recover such proceeds on a prior basis pursuant to the Liquidating Trust Agreement and, in the case of SOA Priority June 21 Insurance Proceeds, subject to the Insurance Recovery Surcharge.  Notwithstanding anything in this Plan or the Plan Supplement, the Intermediation Provider shall have the right to object to any distribution by the Liquidating Trust on the basis that (i) the allocation of proceeds from the Sale Transaction to the Intermediation Priority Collateral and the SOA Separate Assets and Collateral was insufficient compensate the Intermediation Provider for the value of the Intermediation Priority Collateral and SOA Separate Assets and Collateral, and (ii) a distribution to any Allowed Claim improperly includes Intermediation Priority Collateral and SOA Separate Assets and Collateral, or the proceeds of either Intermediation Priority Collateral or SOA Separate Assets and Collateral.

L.      *Additional Distributions*

After the Allowed Administrative Claims and Allowed Priority Claims have been satisfied or funded pursuant to Article II of the Plan, any Distribution Proceeds shall be allocated and distributed in the following priority (in each case on a Pro Rata basis):  *first*, either (a) to holders of Allowed Term Loan Claims pursuant to Article VIII.J hereof or (b) to holders of Allowed Intermediation Secured Claims, whichever has priority over the underlying collateral to be distributed, unless the liens on such Distribution Proceeds securing the applicable Allowed Claims have been successfully challenged pursuant to Article XIV.D; *second*, to whichever of (a) or (b) that does not have priority, unless the liens on such Distribution Proceeds securing the applicable Allowed Claims have been successfully challenged pursuant to Article XIV.D; (c) *third*, on a Pro Rata basis to the holders of General Unsecured Claims that

have not made the GUC Settlement Election; (d) *fourth*, to the Holder of the Allowed Subordinated Remaining Volume Claim; and (e) *fifth*, to the Holders of Allowed Interests in PES Energy and PES Ultimate Interests.  For the avoidance of doubt, Distribution Proceeds shall not be allocated or distributed to Holders of General Unsecured Claims that have made the GUC Settlement Election.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Allowance of Claims*

After the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trust shall have the authority to File and prosecute objections to Claims, and the Liquidating Trust shall have the sole authority to:  (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims (other than General Unsecured Claims), regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim (other than Disputed General Unsecured Claims) without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  On and after the Effective Date, the Liquidating Trust will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, with respect solely to General Unsecured Claims, the GUC Claims Administrator shall have the authority to File and prosecute objections to General Unsecured Claims and to:  (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all General Unsecured Claims, regardless of whether such General Unsecured Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed General Unsecured Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  On and after the Effective Date, the GUC Claims Administrator will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

C.    *Estimation of Claims*

Before, on, or after the Effective Date, the Liquidating Trust or the GUC Claims Administrator, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Liquidating Trust or the GUC Claims Administrator, as applicable, and, prior to the Effective Date, the

Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied in full, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidating Trust or the GUC Claims Administrator, as applicable, without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Liquidating Trust.  All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

G.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Liquidating Trust or the GUC Claims Administrator, as applicable.

H.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trust or the GUC Claims Administrator, as applicable, shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## ARTICLE X.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates an integrated compromise and settlement of the Settled Claims to achieve a beneficial and efficient resolution of these Chapter 11 Cases for all parties-in-interest. In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including the releases set forth in Article X.F and Article X.H and the

exculpation set forth in Article X.I, shall constitute a good-faith compromise and settlement of all Settled Claims by the Settlement Parties.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Settled Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, the Reorganized Debtors, creditors, and all other parties in interest and is fair, equitable, and reasonable. The compromises, settlements and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle any Claims and Causes of Action against other Entities.

The Settlement provided for herein and the distributions and other benefits provided for under the Plan, including the releases set forth in Article X.F and Article X.H and the exculpation set forth in Article X.I herein, shall be in full satisfaction of all Claims or Causes of Action that could have been asserted against any of the Settlement Parties by any of the Settlement Parties, regardless of whether any of the foregoing Settled Claims are identified herein or could have been asserted.

B.      *CBA Settlement*

Without prejudice to ordinary course obligations under the CBA through the Effective Date (which are not released if not paid),the CBA Settlement Fee shall be paid, at the direction of Sellers (as defined in the Purchase and Sale Agreement), by the Seller or the Liquidating Trust, as applicable, to individuals designated by the USW on the Effective Date, and this CBA Settlement Fee shall cure, satisfy, extinguish, resolve, and release any and all Claims, liabilities, Causes of Action, or remedies that exist as of the Effective Date of the USW, its members, and its agents, affiliates, employees, professionals, or other representatives under the CBA, including Claims asserted in the USW's proof of claim (Claim No. 218), any other agreement, or any other Claim of the USW under applicable law against the Debtors and any other Released Parties under this Plan.

PES Ultimate (or an affiliate thereof) shall assume the CBA and continue the employment of USW bargaining unit employees with respect to the Existing Activities. The CBA will be extended for one year (i.e., through August 31, 2021) (the "Extended Term"), and shall terminate in its entirety at that time. The Confirmation Order will make clear that PES Ultimate (or an affiliate thereof) shall be reimbursed by PESRM for all expenses, costs, and other amounts due under or related to the CBA, including for work done by USW employees during the Extended Term. The Confirmation Order will also make clear that neither PES Ultimate (or an affiliate thereof) nor the Plan Sponsor nor PESRM shall be obligated to make any payments, to the USW, employees, or otherwise, other than those to compensate USW members covered by the CBA for their work during the Extended Term. The Confirmation Order will also make clear that (except as *provided* herein) none of the Liquidating Trust or any Released Parties shall have any obligation to make any payments, perform any obligations, or otherwise have any liability whatsoever to the USW, its members, and its agents, affiliates, employees, professionals, or other representatives arising out of or relating to the CBA.

PES Ultimate (or an affiliate thereof) and PESRM shall enter into the Transition Services Agreement at the Effective Date with respect to the use of USW workers for Existing Activities that is cost-neutral to PES Ultimate (or an affiliate thereof). Such Transition Services Agreement will continue until August 31, 2021.

From and after the Effective Date, PESRM agrees that it shall exclusively employ, retain, or hire USW bargaining unit employees under the terms of a new collective bargaining agreement for any future refining operations on the Real Property, if any.

USW will withdraw its objection to this Plan and will support Confirmation of this Plan.

The foregoing and this Article X.B shall be subject to the occurrence of the Effective Date and entry into the Transition Services Agreement.

C.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Liquidating Trust), Interests, and Causes of Action against any Debtor of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Causes of Action accrued before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  Notwithstanding anything to the contrary in the Plan or Confirmation order, the discharge of Claims and termination of Interests provided for in this Article X.C shall only apply to Debtors that constitute Acquired Reorganized Debtors and shall not apply to Debtors that constitute Non-Acquired Reorganized Debtors.

D.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

E.      **Release of Liens**

**Except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trust, the Acquired Reorganized Debtors, and their respective successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, the Liquidating Trust, or the Acquired Reorganized Debtors, as applicable.  Subject to the funding of the Professional Fee Escrow Account, all Liens securing the DIP Claims, Term Loan Secured Claims, Intermediation Secured Claims, the Other Secured Claims, or any other obligations shall attach to the proceeds of the Sale Transactions and shall continue to attach to (x) the assets of the Debtors other than the Acquired Reorganized Debtors (other than the assets sold to the Plan Sponsor pursuant to the Purchase Agreement) and (y) the Excluded Assets to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets.**

F.      **Debtor Release**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise provided for in the Plan or the Plan Supplement, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Non-Acquired Reorganized Debtors, the Liquidating Trust, and their Estates, and the Acquired Reorganized Debtors from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Non-Acquired**

Reorganized Debtors, the Liquidating Trust, or their Estates or the Acquired Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:

    (a)    the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Documents;

    (b)    any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan;

    (c)    the Chapter 11 Cases, the Disclosure Statement, the Plan, the DIP Agreement, the Purchase Agreement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

    (d)    the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any Claims or Causes of Action of the Creditors' Committee against the Intermediation Provider that are assigned to the Liquidating Trust pursuant to this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth above, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases set forth above are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases set forth above; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors or the Liquidating Trust asserting any claim released by the releases set forth above against any of the Released Parties.

G.    *Releases of Preference Actions by the Debtors*

Upon the Effective Date, the Debtors shall be automatically deemed to have irrevocably waived, released, and discharged any and all Avoidance Actions.

H.    *Release by Holders of Claims or Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Non-Acquired Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

(a)     the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the other Restructuring Documents;

(b)     any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan;

(c)     the Chapter 11 Cases, the Disclosure Statement, the Plan, the DIP Agreement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

(d)     the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (i) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (ii) any party with respect to the ICBCS Direct Insurance Claim; (iii) any obligations of any party under the Existing Intercreditor Agreement, including, without limitation, Claims related to the Business Interruption and Property Damage Insurance Policies; and (iv) any Claims or Causes of Action asserted by the Creditors' Committee against the Intermediation Provider that are assigned to the Liquidating Trust pursuant to this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval and, for the avoidance of doubt, solely with respect to the Released Parties and Releasing Parties, of the third-party release set forth above, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the third-party release set forth above is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the third-party release set forth above against any of the Released Parties.

I.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the Plan, the DIP Agreement, the Purchase Agreement, or any Restructuring Document, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon closing of the Chapter 11 Cases or the Effective Date shall be deemed to have, participated in good faith and in compliance with the

**applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

J.      *Injunction*

**Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Acquired Reorganized Debtors or Liquidating Trust, or the other Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.  Notwithstanding anything to the contrary in the Plan or the Plan Supplement, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Liquidating Trust and Non-Acquired Reorganized Debtors and, subject to the terms of the Global Resolution, the Insurers, in each case until the closing of these Chapter 11 Cases.  The extension of the automatic stay, with respect to the Insurers, shall be effectuated by a separate order submitted by the Debtors with respect to the Court's ruling on the record at the Confirmation Hearing,**

K.      *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Liquidating Trust or Acquired Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Liquidating Trust, the Acquired Reorganized Debtors, or another Entity with whom the Liquidating Trust or Acquired Reorganized Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

L.      *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup against such Claim any claim, right, or Cause of Action of the Debtors or the Liquidating Trust, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

M.      *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any

contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.B hereof):

1.    all conditions precedent to the effectiveness of the Purchase Agreement shall have been satisfied or duly waived, and the Purchase Agreement shall have become effective pursuant to its terms;

2.    the Purchase Agreement shall have been executed and remains in full force and effect;

3.    the GUC Settlement Reserve shall be established and funded in the amount of the GUC Settlement Proceeds;

4.    the Confirmation Order shall have been duly entered and in full force and effect;

5.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Restructuring;

6.    all reasonable and documented pre- and post-petition third-party fees and expenses of the Ad Hoc Term Loan Lenders (as defined in the DIP and Cash Collateral Orders), the Term Loan Administrative Agent and the DIP Lenders shall have been paid in full;

7.    all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court; and

8.    the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan, the Confirmation Order, and any other applicable order or agreement governing a Sale Transaction.

B.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article XI may be waived only by consent of the Debtors, the Required DIP Lenders, the Required Term Loan Lenders, the Intermediation Provider, and, to the extent applicable, the Creditors' Committee without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.    *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, the Liquidating Trust, or, subject to the Confirmation Order, the Acquired Reorganized Debtors, expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided, however,* that any modifications to the Plan that would be adverse to the Plan Sponsor and/or materially impact or otherwise materially modify any Plan provision related to the Acquired Reorganized Debtors or the Sale Transaction shall only be made with the express written consent of the Plan Sponsor.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.    resolve any matters related to:  (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Liquidating Trust or Acquired Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to

Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidation Trust Agreement;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J.1 hereof;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement, including for the avoidance of doubt, the Liquidating Trust Agreement;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     adjudicate any and all disputes arising from or relating to the Liquidating Trust;

18.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

23.     hear any other matter not inconsistent with the Bankruptcy Code;

24.     enter an order closing the Chapter 11 Cases;

25.     enforce the injunction, release, and exculpation provisions provided in Article X hereof;

26.     adjudicate, decide, and resolve any and all matters or litigation related to or arising out of the Business Interruption and Property Damage Insurance Policies, including, for the avoidance of doubt, any actions by the Debtors, the Liquidating Trust, or the Non-Acquired Reorganized Debtors, as applicable, (a) to enforce the obligations of, and/or seek damages against, the Insurers under the Business Interruption and Property Damage Insurance Policies and (b) to determine the priority over the insurance proceeds recovered under the Business Interruption and Property Damage Insurance Policies; *provided* that all rights of the Insurers to contest the Bankruptcy Court's jurisdiction in any matter arising out of or relating to the Business Interruption and Property Damage Insurance Policies is expressly preserved.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article XI.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtors, the Non-Acquired Reorganized Debtors, or the Liquidating Trust, the Acquired Reorganized Debtors, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Liquidating Trust, as applicable, the Acquired Reorganized Debtors, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Dissolution of the Creditors' Committee*

On the Effective Date, the Creditors' Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Creditors' Committee and its Professionals and for the purpose of effectuating the provisions of Article XIV.D. The Liquidating Trust shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.

D.      *Dismissal of the Creditors' Committee Adversary Claims Against Term Loan Lenders*

On the Effective Date, the Creditors' Committee's pending adversary complaint shall be dismissed and withdrawn, with prejudice as to the Term Loan Administrative Agent; *provided* that any claims against the Intermediation Provider shall remain in effect and shall be assigned to the Liquidating Trust.

E.      *Setoff of SOA Liabilities by Intermediation Provider*

Upon the entry of the Confirmation Order, the Intermediation Provider may at any time, but shall not be required to, setoff any Intermediation Claim against the balance of any of the Debtors' funds held by the Intermediation Provider under the Intermediation Facility (an "Intermediation Deposit") without further order of the Bankruptcy Court.  Prior to such setoff or recoupment, the Intermediation Provider shall provide notice, as applicable, to the Post-Effective Date Debtors and/or the Liquidating Trust.

F.      *Reservation of Rights*

Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Claims or Interests.

G.      *Restructuring Expenses*

The Restructuring Expenses incurred and invoiced up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Case), without any requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval.  In addition, the Debtors or the Liquidating Trust (as applicable) shall continue to pay pre- and post-Effective Date Restructuring Expenses, as the same become due and payable in the ordinary course.

H.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to, the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

I.      *Service of Documents*

All notices, requests, and demands to or upon the Debtors, the Creditors' Committee, the Term Loan Lenders, the Term Loan Administrative Agent, or the Intermediation Provider to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors:**

**PES Holdings, LLC**
1735 Market Street, 11th Floor
Philadelphia, Pennsylvania 19103
Attn:     Jeffrey S. Stein
            John B. McShane
            Anthony M. Lagreca

            with copies to:

**Kirkland & Ellis LLP**
**Kirkland & Ellis International LLP**
601 Lexington Avenue
New York, New York 10022
Attn:     Steven Serajeddini
            Matthew Fagen

-and-

**Pachulski Stang Ziehl & Jones LLP**
919 North Market Street # 1700
Wilmington, Delaware 19801
Attn:     Laura Davis Jones

**If to the Creditors' Committee:**

**Brown Rudnick LLP**
One Financial Center
Boston, MA 02111
Attn:     Steven B. Levine

Seven Times Square
New York, NY 10033
Attn:     Robert J. Stark
            Max D. Schlan

**If to the Term Loan Lenders:**

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
Attn:     Damian S. Schaible
            Aryeh Ethan Falk
            Jonah A. Peppiatt

**If to the Term Loan Administrative Agent**:

**Norton Rose Fulbright US LLP**
1301 Avenue of the Americas
New York, NY 10019
Attn:     H. Stephen Castro
            David A. Rosenzweig

**If to the Intermediation Provider**:

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue

New York, NY 10153
Attn:    Kelly DiBlasi
          David N. Griffiths
          Bryan R. Podzius

After the Effective Date, the Liquidating Trust shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trust is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

J.       *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

K.       *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.omnimgt.com/sblite/pesholdings2019/ or the Bankruptcy Court's website at www.deb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan, the Plan shall control.  The documents considered in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

L.       *Nonseverability of Plan Provisions*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Required Lenders, as well as that of the Debtors and, solely to the extent deletion or modification has a material effect on the Plan Sponsor or the Acquired Reorganized Debtors, the Plan Sponsor, and the Intermediation Provider; and (3) nonseverable and mutually dependent.

M.       *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Liquidating Trust or any representative of the Liquidating Trust, as applicable, will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, as of the date first set forth above,

Dated:  February 13, 2020

PES HOLDINGS, LLC
on behalf of itself and each of its Debtor affiliates

_/s/ Jeffrey S. Stein_
Name:  Jeffrey S. Stein
Title:    Chief Restructuring Officer