# EXHIBIT A

## Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x
:
In re:                                    :    Chapter 11
                                          :
PES HOLDINGS, LLC, *ET AL.*,              :    Case No. 19-11626 (LSS)
                                          :
Debtors.[1]                               :    Jointly Administered
                                          ;
----------------------------------------------------------------- x

### ORDER (A) APPROVING THE CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors (collectively, the "Debtors") for entry of this Order[2] (a) approving the *Consent Decree and Environmental Settlement Agreement* (the "Settlement Agreement"), a copy of which is attached hereto as **Exhibit 1** and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is GRANTED as set forth herein.

2.     The Notice of Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

3.     The Settlement is hereby authorized, and the Settlement Agreement is hereby APPROVED and entered as a final judgment.

4.     The Parties are hereby authorized to take any and all actions reasonably necessary to effectuate the terms of the Settlement.

5.     The Court retains jurisdiction over any and all matters arising from or related to the implementation or interpretation of the Settlement or this Order.

6.     The Settlement Agreement shall be implemented in accordance with its terms.

Dated: _____, 2020
Wilmington, Delaware          _____
                              THE HONORABLE LAURIE SELBER SILVERSTEIN
                              UNITED STATES BANKRUPTCY JUDGE

DOCS_DE:228509.1 70753/001

**Exhibit 1**

**Consent Decree and Environmental Settlement Agreement**

DOCS_DE:228509.1 70753/001

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | )  Chapter 11 |
| PES HOLDINGS, LLC, *et al.*,[1] | )  Case No. 19-11626 (LSS) |
|  | ) |
| Debtors. | )  (Jointly Administered) |
|  | ) |
|  | ) |

**CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT**

This Consent Decree and Environmental Settlement Agreement ("Settlement

Agreement") is entered into by and among the Debtors in the above-captioned cases and the

United States on behalf of the United States Environmental Protection Agency ("EPA") to

resolve any and all alleged liabilities related to the Debtors under both the 2018 Consent Decree

(as defined below) and Section 211(o) of the Clean Air Act, 42 U.S.C. § 7545(o)("CAA"), the

Renewable Fuel Standard ("RFS") Program, and the regulations prescribed at 40 C.F.R. Part 80,

Subpart M (the "RFS Regulations") (collectively, the "RINs Retirement Obligations"), as

provided herein.  This Settlement Agreement resolves in its entirety the matters that the United

States on the one hand, and the Debtors and their stakeholders on the other hand, had held open

for anticipated litigation and resolution pursuant to the Plan of Reorganization and Confirmation

Order previously entered in the above-captioned chapter 11 cases.  *See* Docket No. 994 (Fourth

Amended Plan of Reorganization) and a Fourth Amended Plan Supplement [Docket No. 997]

(collectively the "Plan"), and Docket No. 1004 (the "Confirmation Order").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC ("PESRM") (9574). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

## I.    **FACTUAL AND PROCEDURAL HISTORY**

A.     Philadelphia Energy Solutions Refining and Marketing LLC (**"PESRM"**), a Delaware limited liability company formed in 2012, owns and operated a refinery with the street address of 3144 Passyunk Avenue, Philadelphia, Pennsylvania (the "Philadelphia Refinery"). The property currently constituting the Philadelphia Refinery includes two refineries (Point Breeze and Girard Point) and had been used for refining operations for approximately 150 years. While in operation, the Philadelphia Refinery produced a full range of transportation fuels, such as gasoline and ultra-low sulfur diesel, as well as other refined products, including home heating oil, jet fuel, kerosene, fuel oil, propane, propylene, butane, cumene, and sulfur.

B.     On January 21, 2018, PESRM, along with many of the above-captioned Debtors filed a petition for bankruptcy in this Court. In re: PES Holdings, LLC 18-10122 (KG).  On April 5, 2018, this Court approved and entered as a final judgment a Consent Decree and Environmental Settlement Agreement ("2018 Consent Decree") relating to PESRM's failure to comply with the RFS Regulations by failing to retire a sufficient number of renewable identification numbers or "RINs" to meet its Renewable Volume Obligations ("RVOs"). [Docket No. 376].  PESRM emerged from bankruptcy on August 7, 2018. [Docket 521]. Among other things, the 2018 Consent Decree set forth requirements for PESRM to commit to certain RINs Retirement Obligations, and stipulated penalties for the failure to comply with these obligations.  Through March 2019, PESRM complied with its RINs Retirement Obligations as set forth in the 2018 Consent Decree.

C.     On June 21, 2019, the Debtors suffered a large-scale catastrophic incident involving an explosion at the alkylation unit at their Girard Point refining facility.

D.      On July 21, 2019, the above-captioned Debtors filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code").

E.      On September 30, 2019, PESRM failed to meet its RINs Retirement Obligation of approximately 154 million RINs to satisfy its RVOs for the period of January 1, 2019 through June 30, 2019 pursuant to the 2018 Consent Decree.

F.      After the explosion, including in part while the bankruptcy was pending, PESRM continued to produce gasoline and diesel fuel from crude oil that remained at the Philadelphia Refinery, triggering additional RINs Retirement Obligations under the 2018 Consent Decree and the CAA and the RFS Regulations.  For RINs Retirement Obligations accrued prior to June 30, 2019, the 2018 Consent Decree established a compliance deadline for retiring these RINs of September 30, 2019. For any RINs Retirement Obligations accrued after July 1, 2019, the compliance deadline was March 31, 2020. The deadline under the CAA and the RFS Regulations for retiring these RINs and the RINs referenced in Paragraph E above was March 31, 2020, subject to deficit carryover provisions.  See 40 C.F.R. §§ 80.1427(b) and 80.1451(a)(1).

G.      On January 17, 2020, the United States filed a Protective Proof of Claim[2] on behalf of EPA (the "EPA Proof of Claim") against PESRM which asserts a claim for civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b) for violations of Section 112(r) of the CAA, 42 U.S.C. § 7412(r); for the recovery of response costs incurred and to be incurred by the United States under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675; for stipulated penalties under the CAA relating to a 2006

_____

[2] The United States, on behalf of EPA, filed a separate Proof of Claim against debtor North Yard Logistics, L.P. for civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), completely unrelated to obligations under the RFS program and unrelated to RINs.  Nothing in this Settlement Agreement is meant to modify, resolve, or otherwise impact the Proof of Claim against North Yard Logistics, L.P.

judicial consent decree entered in *United States v. Sunoco, Inc.*, No. 05-02866 (E.D.Pa. 2006); and for stipulated penalties pursuant to the 2018 Consent Decree. Under this Settlement Agreement, among other things, the United States is resolving the Debtors' and other Covered Entities' potential liability for PESRM's noncompliance with the 2018 Consent Decree and the RFS Regulations, including any potential liability for penalties, except as provided herein. This Consent Decree and Settlement Agreement is limited to obligations under the 2018 Consent Decree and CAA RFS Regulations, and any other obligations related to RINs or the RFS program, and does not address the remainder of the EPA Proof of Claim that is unrelated to RINs or the RFS program.

H.      As noted in the EPA Proof of Claim, the United States does not consider Debtors' RINs Retirement Obligations to fall within the Bankruptcy Code's definition of "claim," 11 U.S.C. § 101(5). The United States asserts that it included in the EPA Proof of Claim a reference to the RINs Retirement Obligations/equitable remedies in a protective fashion. The EPA Proof of Claim also asserts that it is without prejudice to any right under 11 U.S.C. § 553 or otherwise to attempt to set off or recoup against any debts owed (if any) to Debtors, including but not limited to in Philadelphia Energy Solutions Refining and Marketing, LLC, No. 19-510T (Fed. Cl.) (the "Excise Tax Refund Claim"), and that the United States asserts a right of setoff against any debts owed (if any) to PESRM relating to the Excise Tax Refund Claim.

I.      On February 13, 2020, Debtors filed the Plan.[3]

J.      Article VII of the Plan calls for the establishment of a Liquidating Trust and, in accordance with the Liquidating Trust Agreement, grants the Liquidating Trust the authority to

---

[3] Unless stated otherwise, defined terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors' Estates and the Liquidating Trust. The Liquidating Trust will be funded by (among other things) the assets and Interest of the Debtors that are not transferred under the Purchase Agreement, any Proceeds from the Sale Transaction that are not actually distributed on the Effective Date of the Plan (the "Plan Effective Date"); and the Excluded Assets, including, but not limited, to (i) any Proceeds arising from, or otherwise related to the Retained Matters, including the Business Interruption and Property Damage Insurance Policies and (ii) all Claims and Causes of Action that constitute Excluded Assets, including those Claims and Causes of Action identified on the Retained Causes of Action List subject to certain limitations as set forth in a Litigation Control Agreement to be executed between the Debtors and the Buyer.

K. Article VI.K of the Plan concerns the "Treatment of Debtors' RINs Retirement Obligations Under the Consent Decree and the Clean Air Act." Under Article VI.K, the Court shall determine, after the submission of briefs, whether the Debtors' RINs Retirement Obligations constitute injunctive compliance obligations or are dischargeable "debt" and/or a "claim" under the Bankruptcy Code. If the RINs Retirement Obligations are determined to be compliance obligations, then PESRM or the Liquidating Trust must comply with its RINs Retirement Obligations, as set forth in greater detail therein; if the RINs Retirement Obligations are found to be a dischargeable debt and/or claim, then the RINs Retirement Obligations constitute Class 5 General Unsecured Claims (but shall be subject to any right of setoff or recoupment by the United States in accordance with the Plan and Confirmation Order). The Plan also provides that the Court may determine that some other treatment is warranted.

L.      Under Article VIII.D of the Plan, unless prior to the Plan Effective Date the Court makes a determination that the RINs Retirement Obligations constitute a dischargeable "debt" and/or "claim" or orders that an alternative treatment is warranted, or unless the Acquired Reorganized Debtors and/or Debtors have complied with the RINs Retirement Obligations or have committed to do so, then the Liquidating Trust, as one of the Distribution Reserve Accounts, shall establish the RINs Retirement Obligations Reserve by depositing Cash in the amount of $35 million into the RINs Retirement Obligations Reserve on the Plan Effective Date.

M.      The Plan calls for a sale that results in PESRM's equity being indirectly purchased by HRP Philadelphia Holdings, LLC ("HRP"). The Plan Effective Date and the closing on the sale restructuring will occur following the satisfaction of certain conditions set forth in the Plan and Purchase and Sale Agreement dated January 17, 2020. [Docket No. 780-6].

N.      At the closing of the Sale Transaction, the Debtors and HRP are to enter into a Litigation Control Agreement and Tax Refund Agreement. Pursuant to the terms of these agreements, the Liquidating Trust shall have the sole economic interest in, and shall be entitled to any Proceeds arising from, or otherwise related to, any and all of the Retained Matters (including, with respect to the Tax Refund Claims, as more specifically set forth in the Tax Refund Agreement), which preserve the Debtors rights to certain tax refunds and control over and proceeds of various causes of action.

O.      Pursuant to the Retained Causes of Action [Docket No. 780], the Litigation Control Agreement, and the Tax Refund Agreement, the Reorganized Debtors and Liquidating Trust, as applicable, expressly reserved all rights to the Excise Tax Refund Claim;

P.      On February 13, 2020, the Court entered the Confirmation Order. Paragraphs 113-115 of the Confirmation Order implement the provisions of the Plan relating to the RINs

Retirement Obligations and, if necessary, the establishment of the RINs Retirement Obligations Reserve. Paragraphs 111, 112, 116-117, and 119 of the Order, reserve various rights of EPA for matters unrelated to the RFS program, RINs Retirement Obligations, and the 2018 Consent Decree.

## II.    <u>RECITALS</u>

**WHEREAS**, pursuant to and in accordance with this Settlement Agreement, the United States, the Debtors, the Liquidating Trust, and HRP, agree to a final resolution as provided herein of all liabilities of the Debtors and any other Covered Entities with respect to PESRM's RINs Retirement Obligations, the RFS program, and all other matters related to RINs;

**WHEREAS**, PESRM as the owner and operator of the Philadelphia Refinery, is subject to Section 211(o) of the CAA, 42 U.S.C. § 7545(o), the RFS Regulations and the 2018 Consent Decree;

**WHEREAS**, the RFS Regulations seek to reduce the nation's dependence on foreign oil and increase the production of clean renewable fuels. <u>See</u> Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, 1069 (codified at 42 U.S.C. § 7545(o)); Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492, 1521-24 (codified at 42 U.S.C. § 7545(o)(2)).  The RFS Regulations provide for a program to facilitate compliance with the renewable fuel mandate. 42 U.S.C. § 7545(o)(5).  The RFS Regulations created RINs, which "represent the basic framework for ensuring that the statutorily required volumes of renewable fuel are used as transportation fuel in the U.S." 75 Fed. Reg. 14670, 14684 (Mar. 26, 2010).  The RFS Regulations require gasoline and diesel fuel refiners and importers (known as "obligated parties") to blend renewable fuels into transportation fuel or obtain RINs to meet their RVOs, which are based upon the volume of the gasoline and diesel fuel that the obligated party produces

or imports into the United States. See 40 C.F.R. §§ 80.1406(b), 80.1407. Obligated parties demonstrate compliance with their RVOs by producing renewable fuel and generating RINs themselves or acquiring RINs from other parties. To comply with the CAA and RFS Regulations, obligated parties must demonstrate to EPA that they have acquired and subsequently retired a sufficient number of RINs to meet their RVOs. See 40 C.F.R. §§ 80.1427, 80.1451(a)(1). See generally Nat'l Petrochemical & Refiners Ass'n v. EPA, 630 F.3d 145 (D.C. Cir. 2010).

WHEREAS, to combat RIN market fraud, EPA promulgated the Quality Assurance Plan ("QAP") regulations. See, 40 C.F.R. Part 80, Subpart M. Under the QAP regulations, independent third-party auditors monitor renewable fuel facilities to ensure these facilities are producing qualifying renewable fuel and generating valid RINs. A third-party auditor is required to register with EPA and submit a QAP for EPA approval before conducting any audits under that plan. Once a third-party auditor has conducted the on-site review, document review, and initiated on-going monitoring, the RINs may be identified as verified by the third-party auditor and sold to other parties as QAP verified RINs. This QAP label is intended to represent to the purchaser of those RINs that it is buying credits that have been closely examined by a third-party auditor who has determined the RINs are valid;

WHEREAS, a Q–RIN is a type of RIN that a registered independent third-party auditor verified using an approved QAP, and in accordance with the audit process laid out in 40 C.F.R. § 80.1472. See, 40 C.F.R. § 80.1401;

WHEREAS, the United States, on behalf of EPA, in accordance with Article VI.K of the Plan, would have filed briefs arguing that PESRM's obligation to retire RINs to meet its RVOs is a nondischargeable obligation;

**WHEREAS**, PESRM would have filed briefs arguing that the RINs Retirement Obligations are General Unsecured Claims subject to treatment as Class 5 General Unsecured Claims under the Plan;

**WHEREAS**, Debtors represent and warrant that for the period from July 1, 2019 through December 31, 2019, the Debtors produced less than 1.6 million barrels of gasoline and diesel fuel, that there was no additional processing/refining of crude oil to produce gasoline or diesel fuel after December 31, 2019, and there will be no additional processing/refining of crude oil to produce gasoline or diesel fuel before the Plan Effective Date and closing of the sale;

**WHEREAS**, the Plan Effective Date has not yet occurred;

**WHEREAS**, the United States and the Debtors (collectively, the "Parties") wish to resolve their disagreements and have negotiated this Settlement Agreement to, among other things, provide for resolution of the Debtors' RINs Retirement Obligations in full as provided herein and to provide for the retirement of RINs by the Liquidating Trust as provided herein;

**WHEREAS**, without admitting the liability of the Debtors, Reorganized Debtors, the Liquidating Trust, and their respective officers, directors, trustees, and employees, as well as any Affiliates (as defined under Section 101(2) of the Bankruptcy Code) and their respective officers, directors, trustees, and employees that the United States may argue is obligated with respect to the Debtors' activities under the CAA, RFS Regulations, or the 2018 Consent Decree (collectively the "Covered Entities"), the Debtors, Reorganized Debtors, and Liquidating Trust shall be obligated to comply with the requirements of this Settlement Agreement;

**WHEREAS**, the Debtors and the United States on behalf of EPA agree to enter into this Settlement Agreement in full satisfaction of all civil claims, obligations, liabilities, and causes of action for the RINs Retirement Obligations and for any penalties for failure to meet the RINs

Retirement Obligations against, or otherwise with respect to, the Debtors, the Liquidating Trust, or any other Covered Entities as provided herein;

**WHEREAS**, the United States has agreed to this Settlement Agreement based on the unique facts and circumstances present in this Bankruptcy Case, and nothing in this Settlement Agreement shall be treated as having any precedential value in any other non-bankruptcy or bankruptcy matter (outside of this Bankruptcy Case) with different facts and circumstances;

**WHEREAS**, this Settlement Agreement shall be effective upon its approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019; and

**WHEREAS**, this Settlement Agreement is fair and reasonable and in the public interest, and is an appropriate means of resolving these matters;

**NOW, THEREFORE**, without any adjudication on any issue of fact or law, and upon the consent and agreement of the Parties by their attorneys and authorized officials, it is hereby agreed as follows:

### III.     DEFINITIONS

1.      Terms used in this Settlement Agreement that are defined in the CAA or in the RFS Regulations shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Settlement Agreement.  Other terms used in this Settlement Agreement but not defined herein shall have the meaning ascribed to such terms in the Plan.

### IV.     PARTIES BOUND; SUCCESSION AND ASSIGNMENT

2.      This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of, and shall as applicable be enforceable by, the signatories hereto, their legal successors and assigns, the Debtors, the Reorganized Debtors, the Liquidating Trust, and all other Covered Entities.

# V.  RINS RETIREMENT REQUIREMENTS

3.       Unless prior to the Plan Effective Date the Debtors have retired the total number

of RINs required in Paragraph 4 or the Total Market RIN Price ("TMRP"), as defined below,

meets $10,000,000, the Liquidating Trust shall retire RINs as described in Paragraph 4 below.

Unless PESRM recovers on the Excise Tax Refund Claim, the United States agrees that no other

retirement of RINs by the Debtors, the Liquidating Trust, or the Covered Entities is required,

with respect to any activities or conduct occurring prior to the Plan Effective Date, and the

United States irrevocably waives any such requirements.

4.       Subject to Paragraphs 3, 5, and 6, the Liquidating Trust, utilizing PESRM's

EMTS account pursuant to a Transition Services Agreement between the Liquidating Trust and

PESRM (which shall be in form and substance satisfactory to Hilco Redevelopment Partners,

LLC, including indemnification of PESRM by the Liquidating Trust in relation to use of

PESRM's EMTS Account)[4], shall retire a total of 161,830,963 valid Q-RINs within 90 calendar

days of the Settlement Agreement Effective Date; provided that if the Settlement Agreement

Effective Date occurs prior to the Plan Effective Date, the Liquidating Trust shall have 90

calendar days from the Plan Effective Date to comply with this Paragraph 4.  No fewer than

thirty (30) calendar days before the Liquidating Trust's RIN Retirement Obligations are due

under this Paragraph 4 and Paragraph 6, the Liquidating Trust must ensure its Responsible

Corporate Officer ("RCO"), if different than PESRM's RCO, has access to PESRM's EMTS

account. For the Liquidating Trust's RCO to access PESRM's EMTS account, the Liquidating

---

[4] In the event that Debtors are unable to negotiate an acceptable Transition Services Agreement
with Hilco Redevelopment Partners, Debtors and the United States on behalf of the EPA shall
negotiate an alternative mechanism in lieu of the Liquidating Trust utilizing PESRM's EMTS
account.

Trust's RCO (or PESRM's RCO, if it still has e-signature authority) must submit to the EPA Fuels Helpdesk a complete RCO update request under PESRM's registration. Once the EPA Fuels Helpdesk processes the RCO update request, the Liquidating Trust may then retire RINs, required by this Settlement Agreement, under PESRM's existing company ID and name. If this RCO update process takes longer than thirty (30) days to complete, the 90-calendar day period that the Liquidating Trust has to retire RINs following the Plan Effective Date shall be extended for the number of calendar days that it takes for the RCO update process to be completed. The Liquidating Trust shall retire this total amount of RINs in the following amounts and types:

   a. 3,392,992 valid Q RINs, or cellulosic biofuel waiver credits pursuant to 40 C.F.R. § 80.1456, to comply with the Cellulosic Biofuel RVO;

   b. 25,521,200 valid Q RINs to comply with the Biomass-Based Diesel RVO;

   c. 39,978,296 valid Q RINs to comply with the Advanced Biofuel RVO; and

   d. 161,830,963 valid Q RINs to comply with the Renewable Fuel RVO.

  5. The D-codes, identified in 40 C.F.R. § 80.1427(a)(2)(i)-(iv), shall be used to meet the RINs Retirement Obligations for the corresponding RVO set forth in Paragraph 4. If sufficient quantities of Q RINs to meet the obligations in Paragraphs 4 are not available for purchase in the marketplace, then the Parties shall meet and confer to discuss the alternative RINs that will be purchased to meet those requirements.

  6. Notwithstanding anything contained herein, the Liquidating Trust's RINs Retirement Obligations (and any Covered Entity's RINs Retirement Obligations with respect to any period preceding the Plan Effective Date) under Paragraph 4 shall end if and when the total number of RINs retired equals the number of RINs identified in Paragraph 4 or the TMRP, as defined below, meets $10,000,000, whichever occurs first; *provided, however*, that if PESRM,

any Debtor, or the Liquidating Trust receives any recovery on the Excise Tax Refund Claim from the United States, then the Liquidating Trust shall retire any remaining RINs Retirement Obligations under Paragraph 4 within 90 calendar days from receipt of any recovery on the Excise Tax Refund Claim following entry of a final, unappealable order resolving the Excise Tax Refund Claim or a binding settlement between PESRM, the Liquidating Trust, and the United States (the "Excise Tax Refund Trigger") (In the event that the Liquidating Trust receives any recovery on the Excise Tax Refund Claim from the United States and an appeal is filed, the Liquidating Trust shall hold at least $12,000,000 of such recovery in escrow (or, if less, the amount of the refund) pending the outcome of the appeal, consistent with this Settlement Agreement). Upon the occurrence of the Excise Tax Refund Trigger, the Liquidating Trust's RINs Retirement Obligations shall end if and when the total number of RINs retired equals the number of RINs identified in Paragraph 4 or the TMRP, as defined below, meets $22,000,000 or $10,000,000 plus the amount of the recovery on the Excise Tax Refund Claim from the United States if the recovery is less than $12,000,000, whichever occurs first. For the avoidance of doubt, the Liquidating Trust shall utilize PESRM's existing EMTS account to retire all RINs provided in this Agreement pursuant to a Transition Services Agreement between the Liquidating Trust and PESRM, and to the extent necessary, the United States shall arrange for the Liquidating Trust's ability to access all systems necessary for the Liquidating Trust to retire RINs, regardless of how long following the Settlement Agreement Effective Date that any recovery on the Excise Tax Refund Claim is received by the Liquidating Trust provided that the Liquidating Trust must take the steps set forth in Paragraph 4 to ensure its RCO has access to PESRM's EMTS account..

7. For compliance with this Settlement Agreement and to be included as part of the TMRP, the RIN must be: (i) a valid Q-RIN; (ii) either a RIN from the then-current year or the year immediately preceding the year in which the RIN is retired; (iii) purchased in an arms' length transaction; and (iv) a RIN that the Liquidating Trust used its reasonable best efforts to pay the prevailing market price for at the time of the transaction. The TMRP means the sum of the actual prices paid for the RINs.

8. Within 30 calendar days of the RINs retirement deadlines in Paragraphs 4 and 6, the Liquidating Trust shall submit to the United States a price purchase report (a "RINs Purchase Price Report") in an unlocked electronic spreadsheet format (e.g., xls, csv) that documents: (a) quantity of RINs purchased for compliance with this Settlement Agreement; (b) date on which that quantity of RINs was purchased; (c) D-code of the RINs purchased; (d) the identity of the counterparty to the transaction; (e) the price the Liquidating Trust paid for RINs purchased; and (f) a certification that the transaction was at arms' length and at a price that the Liquidating Trust believed to be the prevailing market price at the time of the transaction. The Liquidating Trust shall also provide the United States with invoices for the RINs that are purchased pursuant to Paragraphs 4 and 6.

9. The RINs Purchase Price Reports under Paragraph 8 should be emailed to Anthony Miller at miller.anthony@epa.gov and sent to the attention of:

U.S. Environmental Protection Agency
Fuels Enforcement Branch, Chief
1595 Wynkoop Street, MC 8MSU
Denver, CO 80202

10. The RINs Purchase Price Reports required by Paragraph 8 shall be signed and certified by the Trustee of the Liquidating Trust or such other corporate officer authorized to

make such certification(s) on behalf of the Liquidating Trust.  The certification required shall include the following statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement. Each transaction identified in this report was at arms' length and at a price that the Liquidating Trust believed to be the prevailing market price at the time of the transaction.

11.     The reporting requirements of this Settlement Agreement do not relieve the Liquidating Trust or PESRM of any reporting obligations required by the CAA or the RFS Regulations, or any other reporting obligation required by any federal, state, or local law, regulation, permit, or other requirement not expressly covered by this Settlement Agreement; provided, however, that because PESRM does not currently engage in refining activities as defined in the RFS Regulations, it shall have no reporting obligations under such regulations on account of activities after its last date of refining.

12.     Any information submitted pursuant to this Settlement Agreement may be used by the United States in any proceeding to enforce the provisions of this Settlement Agreement and as otherwise permitted by law.

13.     If the Liquidating Trust fails to retire RINs by the compliance deadlines set forth in Paragraphs 4 and 6 or fails to submit RINs Purchase Price Reports by the reporting deadlines set forth in Paragraph 8, the Liquidating Trust shall be liable for stipulated penalties under Section VI below.

## VI.    STIPULATED PENALTIES

14.    The Liquidating Trust shall be liable for stipulated penalties to the United States for violations of this Settlement Agreement as specified below.  A violation includes failing to perform any obligation required by the terms of this Settlement Agreement according to all applicable requirements of this Settlement Agreement and within the specified time schedules established by or approved under this Settlement Agreement.

15.    If the Liquidating Trust fails to fully comply with the RINs Retirement Obligations in Paragraphs 4 and 6, the Liquidating Trust shall pay a stipulated penalty of $10,000 per calendar day per RVO for each calendar day that the Liquidating Trust is late meeting its RINs Retirement Obligations for calendar days 1-5, and $48,192 per calendar day per RVO for each calendar day thereafter.

16.    If the Liquidating Trust fails to fully comply with the RINs Purchase Price Report requirements in Paragraph 8, the Liquidating Trust shall pay a stipulated penalty of $1,000 per calendar day for each calendar day that the Liquidating Trust is late meeting such requirements for calendar days 1-14, $5,000 for calendar days 15-30, and $10,000 for each calendar day thereafter.

17.    Stipulated penalties under this Section 13 shall begin to accrue on the calendar day after performance is due or on such day that the violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue regardless of whether the United States provides the Liquidating Trust notice of the violation(s) of this Settlement Agreement.

18.     The Liquidating Trust shall pay any stipulated penalty within 30 calendar days of receiving the United States' written demand in accordance with the payment instructions provided in the demand.

19.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Settlement Agreement.

20.     If the Liquidating Trust fails to pay stipulated penalties according to the terms of this Settlement Agreement, the Liquidating Trust shall be liable for interest on such penalties accruing as of the date such payment became due in accordance with the statutory judgment interest rate as provided in 28 U.S.C. § 1961.  The interest shall be computed daily from the time the payment is due until the date the payment is made.  The interest shall also be compounded annually.  Nothing in this Paragraph 20 shall be construed to limit the United States from seeking any remedy otherwise provided by law for the Liquidating Trust's failure to pay any stipulated penalties.

21.     The payment of stipulated penalties and interest, if any, shall not alter in any way the Liquidating Trust's obligation to complete the performance of the requirements of this Settlement Agreement.

22.     The Liquidating Trust shall not deduct any stipulated penalties paid under this Settlement Agreement in calculating its federal, state, or local income tax.

## VII.     FORCE MAJEURE

23.     "Force Majeure," for purposes of this Settlement Agreement, is defined as any event arising from causes beyond the control of the Liquidating Trust, of any entity controlled by the Liquidating Trust, or of the Liquidating Trust's contractors that delays or prevents the performance of any obligation under this Settlement Agreement despite the Liquidating Trust's

best efforts to fulfill the obligation. The requirement that the Liquidating Trust exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized. Force Majeure does not include the Liquidating Trust's financial inability to perform any obligation under this Settlement Agreement.

24.     If any event occurs or has occurred that may delay the performance of any obligation under this Settlement Agreement, whether or not caused by a Force Majeure event, the Liquidating Trust shall provide notice orally or by electronic or facsimile transmission to the United States within 5 calendar days of when the Liquidating Trust first knew that the Force Majeure event might cause a delay. Within 15 calendar days thereafter, the Liquidating Trust shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Liquidating Trust's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Liquidating Trust, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Liquidating Trust shall include, with any notice, all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude the Liquidating Trust from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Liquidating Trust shall be

deemed to know of any circumstance of which the Liquidating Trust, any entity controlled by the Liquidating Trust, or the Liquidating Trust's contractors knew or should have known.

25.     The time for performance of the obligations under this Settlement Agreement that are affected by the Force Majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify the Liquidating Trust in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

## VIII.   AMENDMENT OF CONFIRMATION ORDER AND PLAN

26.     This Settlement Agreement shall be deemed to amend the Confirmation Order and Articles VI.K and VIII.D of the Plan such that: (a) the amount of the RINs Retirement Obligations Reserve shall be reduced from $35 million to $10 million, and the cash held in the RINs Retirement Obligations Reserve shall be applied as set forth in this Settlement Agreement; (b) Paragraphs 113 and 114 of the Confirmation Order, and Articles VI.K and VIII.D of the Plan shall be stricken, and the obligations of the Debtors set forth therein be replaced by the obligations in this Settlement Agreement; and (c) there shall be no adjudication of whether the RINs Retirement Obligations constitute compliance obligations or dischargeable debt and/or claims.

## IX.   COVENANT NOT TO SUE

27.     Upon the Settlement Agreement Effective Date and except as provided in Paragraphs 29 and 30, the United States on behalf of EPA covenants not to sue or assert any civil claims (including any claims in the Chapter 11 Cases, whether or not pursuant to the EPA Proof

of Claim), causes of action, fines, penalties, or any other remedies against the Debtors, the Reorganized Debtors, the Liquidating Trust or any other Covered Entities, pursuant to Section 211(o) of the CAA, 42 U.S.C. § 7545(o), the RFS Regulations, or the 2018 Consent Decree. Nothing in this Settlement Agreement shall create or imply that any Covered Entities other than PESRM have or do not have any liability under the CAA or the RFS Regulations.

28.     This Settlement Agreement in no way impairs the scope and effect of any discharge or exculpation of the Debtors or any other Covered Entities under Section 1141 of the Bankruptcy Code, the Plan, and/or the Confirmation Order, and any exceptions thereto, provided however, for the avoidance of doubt, the Liquidating Trust shall comply with all provisions of this Settlement Agreement.

29.     The covenant not to sue set forth in Section IX does not pertain to any matters other than those expressly specified therein.  Notwithstanding anything to contrary herein, the United States specifically reserves, and this Settlement Agreement is without prejudice to: (i) any action to enforce any term of this Settlement Agreement against any Covered Entity responsible for complying with such term; (ii) liability for civil penalties and injunctive relief for the Debtors' or the Reorganized Debtors' or the other Covered Entities' post-Plan Effective Date acts, if any, creating liability under the CAA or RFS Regulations, or under other federal laws, regulations, or permit conditions; (iii) civil penalties (which are unrelated to the RFS Regulations, RINs, or the Consent Decree), if any, under Section 113(b) of the CAA, 42 U.S.C. § 7413(b) for violations of Section 112(r) of the CAA, 42 U.S.C. § 7412(r); (iv) recovery of response costs incurred and to be incurred by the United States under CERCLA, 42 U.S.C. §§ 9601-9675; (v) civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b) relating to a 2006 judicial consent decree entered in *United States v. Sunoco, Inc.*, No. 05-02866 (E.D.PA 2006), if any; and

(vi) any criminal liability. For the avoidance of doubt, nothing in this Settlement Agreement modifies Paragraphs 111-112; 116-117, and 119 of the Confirmation Order which shall remain in full force and effect, except to the extent that such Paragraphs are read to include matters related to the RFS Regulations, RINs, or the Consent Decree for the production of gasoline and diesel fuels prior to the Plan Effective Date, as all such matters are covered in and resolved in accordance with and subject to this Settlement Agreement.

30.    This Settlement Agreement shall not be construed to create rights in, or grant any cause of action to, any third party not Party to this Settlement Agreement other than as explicitly set forth herein; provided that the Covered Entities shall be third party beneficiaries of this Settlement Agreement and shall have the ability to enforce provisions of this Settlement Agreement applicable to them.

## X.    PUBLIC COMMENT

31.    This Settlement Agreement will be subject to a public comment period of 15 calendar days following notice published in the Federal Register. The United States reserves the right to withdraw or withhold its consent prior to approval of the Settlement Agreement by the Bankruptcy Court if the public comments regarding the Settlement Agreement disclose facts or considerations that indicate that this Settlement Agreement is inappropriate, improper, or inadequate.

## XI.    JUDICIAL APPROVAL

32.    The settlement reflected in this Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. The Debtors shall move promptly for Bankruptcy Court approval of this Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XII.    RETENTION OF JURISDICTION

33.    The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the Parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the Parties to apply to the Bankruptcy Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

## XIII.    SETTLEMENT AGREEMENT EFFECTIVE DATE

34.    Following a public comment process provided for in Paragraph 31, this Settlement Agreement shall be effective upon approval by the Bankruptcy Court.

35.    If for any reason (a) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 31 or (b) the Settlement Agreement is not approved by the Bankruptcy Court:  (i) this Settlement Agreement shall be null and void and the Parties shall not be bound hereunder; (ii) the Parties shall have no liability to one another arising out of or in connection with this Settlement Agreement; and (iii) this Settlement Agreement shall have no residual or probative effect or value, and it shall be as if it had never been executed.

## XIV.    AMENDMENTS/INTEGRATION AND COUNTERPARTS

36.    This Settlement Agreement and any other documents to be executed in connection herewith or referred to herein shall constitute the sole and complete agreement of the Parties hereto with respect to the matters addressed herein. This Settlement Agreement may not be amended except by a writing signed by all the Parties.

37.    The signatories for the Parties each certify that he or she is authorized to enter into the terms and conditions of this Settlement Agreement after the close of the applicable

comment period and provision of comments by the United States to the Court, and to execute

and bind legally such party to this document.

      38.     This Settlement Agreement may be executed in counterparts, each of which shall

constitute an original, and all of which shall constitute one and the same agreement.


THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT.

In re: PES HOLDINGS, LLC, *et al*

                          FOR THE UNITED STATES OF AMERICA:


Date: April 28, 2020

                          ERIC GRANT
                          Deputy Assistant Attorney General
                          Environment and Natural Resources Division

                          /s/ John Broderick
                          ALAN S. TENENBAUM
                          National Bankruptcy Coordinator
                          JOHN BRODERICK
                          MATTHEW INDRISANO
                          Trial Attorneys
                          United States Department of Justice
                          Environment and Natural Resources Division
                          Environmental Enforcement Section
                          P.O. Box 7611
                          Ben Franklin Station
                          Washington, DC 20044
                          alan.tenenbaum@usdoj.gov
                          (202) 514-5409
                          john.broderick@usdoj.gov
                          (202) 305-0302
                          matthew.indrisano@usdoj.gov
                          (202) 514-1398

In re: PES HOLDINGS, LLC, *et al.*


                               FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date: May 1, 2020        <u>/s/ Susan Parker Bodine</u>
                               SUSAN PARKER BODINE
                               Assistant Administrator
                               Office of Enforcement and Compliance Assurance
                               U.S. Environmental Protection Agency
                               1200 Pennsylvania Avenue, N.W.
                               Washington, DC  20460

FOR DEBTORS AND DEBTORS IN POSSESSION:

Date: ___04/24/2020___

*[signature]*

_____

Mark Smith

*Chief Executive Officer*

*/s/ [signature]* 4/27/2020

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com
joneill@pszjlaw.com

-and-

Edward O. Sassower, P.C.
Steven N. Serajeddini, P.C. (admitted pro hac vice)
Matthew C. Fagen (admitted pro hac vice)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
steven.serajeddini@kirkland.com
matthew.fagen@kirkland.com

Michael B. Slade (admitted pro hac vice)
Whitney Becker (admitted pro hac vice)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 N. LaSalle
Chicago, IL  60654
Telephone:  (312) 862-2000
Facsimile: (312) 862-2200
Email: mslade@kirkland.com
whitney.becker@kirkland.com

*On Behalf of the Debtors and Debtors in Possession*