**IN THE UNITED STATES BANKRUTPCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PES Holdings, LLC, *et al.*,[1] | ) | Case No. 19-11626 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related D.I. Nos. 1324 and 1326** |

**OBJECTION OF MARBLE RIDGE CAPITAL LP AND SERENGETI ASSET
MANAGEMENT LP TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)
APPROVING THE AMENDMENT TO THE PURCHASE AGREEMENT AND (II)
GRANTING RELATED RELIEF**

Marble Ridge Capital LP, on behalf of certain funds and accounts it manages ("Marble Ridge"), and Serengeti Asset Management LP, on behalf of certain funds and accounts it manages ("Serengeti," and together with Marble Ridge, the "Objecting Lenders"), file this Objection (this "Objection") to the Debtors' Motion for Entry of an Order (i) Approving the Amendment to the Purchase Agreement and (ii) Granting Related Relief [Docket No. 1324] (the "Motion"),[2] and respectfully represent as follows:

1.      Marble Ridge is a Lender under that certain Term Loan Facility and that certain DIP Agreement (each as defined in the Plan).  In the aggregate, Marble Ridge is owed over $70 million by the Debtors under the Term Loan Facility and the DIP Agreement.  The Required

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

Lenders have appointed Marble Ridge to serve as a member of the liquidating trust board of PES Holdings, LLC after the effective date of the Debtors' Plan.

2.      Serengeti is likewise a Lender under that certain Term Loan Facility and that certain DIP Agreement.  In the aggregate, Serengeti is owed over $11.5 million by the Debtors under the Term Loan Facility and the DIP Agreement.

3.      The Objecting Lenders file this Objection to address important facts and issues omitted from the Motion but within the knowledge of the Debtors.  We believe these undisputed facts will show that the Purchaser intentionally and willfully delayed performance of its covenants under the Purchase Agreement in order to force a purchase price reduction on the Debtors and the Term Loan Lenders.  In fact, the Debtors themselves have conceded to the Objecting Lenders that the Purchaser materially breached its obligations to obtain required approvals under the Purchase Agreement but for the reasons set forth in their Motion have acquiesced in the Purchaser's demands.  Because all conditions to closing have now been satisfied, the Objecting Lenders request entry of an Order that the Purchaser show cause why it should not be compelled to close under the existing Purchase Agreement pursuant to Section 1142 of the Bankruptcy Code.

4.      The Objecting Lenders, Debtors, and the Court each have been placed in a difficult position by the Purchaser because the proposed amendment to the Purchase Agreement permits the Purchaser to terminate the Amendment if the Court has not entered an order approving the Motion by June 25.  The Objecting Lenders will therefore be filing concurrently with this Objection a motion seeking (i) a status conference on Monday, June 22, 2020, or as soon thereafter as the Court's docket permits, and (ii) adjournment of the hearing until June 25 in order to permit the Objecting Lenders to conduct limited discovery so that the Motion and Order to Show Cause can be adjudicated concurrently on a full factual record.

2

5.    The Purchase Agreement was executed on January 17, 2020.  On February 13, 2020, Amendment No. 1 to the Purchase Agreement was executed.  Pursuant to Amendment No. 1, the purchase price was increased by $12 million.  The as amended Purchase Agreement was approved by this Court pursuant to the Confirmation Order.  As stated in the Motion, the Purchase Agreement included an "outside date" for closing the transactions of May 31, 2020 (the "Outside Date").[3]

6.    Notwithstanding the covenant in the Purchase Agreement requiring the Purchaser to "take, or cause to be taken, all actions and to do, or cause to be done, all things necessary to consummate and make effective the Transactions, including if applicable, filing or causing to be filed with any Governmental or Regulatory Authority any applications, consents, approvals, notices, or actions that are necessary to consummate and make effective the Transactions," the Purchaser intentionally delayed the filing of its Soil Management Plan with the Pennsylvania Department of Environmental Protection ("PaDEP") until March 13, 2020, a full 58 days after signing the Purchase Agreement and after the deadline agreed to with PaDEP.

7.    After submitting its Soil Management Plan, PaDEP responded promptly with its comments on March 25, 2020.

8.    In its initial submission to PaDEP, the Purchaser indicated that PaDEP's ultimate approval of the Soil Management Plan had to wait until the Purchaser reached a separate agreement with Sunoco/Evergreen, a condition not included in the Purchase Agreement.  The Purchaser then sought to hide this fact from the Debtors by refusing to provide the Debtors, despite numerous requests, with copies of the initial submission. Indeed, the Debtors only learned that the Purchaser

---

[3] As discussed in paragraph 8 below, neither party could terminate on the Outside Date due to the failure of a closing condition if such party was responsible for such failure.

had unilaterally imposed such a condition in its submission to PaDEP in mid-April. By late April, the Debtors realized that PaDEP approval was the only meaningful remaining hurdle to closing but the Purchaser refused to include the Company in its discussions with PaDEP until May 5, 2020.

9.     The Purchaser thereafter refused to submit its final revised application to PaDEP - despite numerous requests from the Debtors that it do so – letting the Outside Date pass.  Only *after* submitting a letter to the Debtors requesting a purchase price reduction did the Purchaser submit its revised Soil Management Plan to PaDEP, which PaDEP promptly approved.

10.     The Debtors allude to certain of these facts in their Motion while omitting key details.  In particular, the declaration of the Debtors' chief restructuring officer in support of the Motion does not contain any reference to the Purchaser's delay in seeking PaDEP approval, likely to avoid a potential factual dispute about the Purchaser's lack of good faith.  The Debtors attempt to justify the Purchaser's tactics by reference to "economic" factors caused by COVID-19 and risk of potential litigation.  Under the terms of the Purchase Agreement, however, the economic uncertainty and other effects of COVID-19 do not justify a purchase price reduction or excuse the Purchaser's delay of the closing.[4]  As such, the requested price reduction should not be sanctioned by this Court.

11.     In addition to the fact that COVID-19 does not provide an "out" for the Purchaser, Section 9.16 of the Purchase Agreement provides that the Purchaser may not rely on the failure of any condition to closing (including approval by PaDEP under Section 9.11) to terminate the

---

[4] The definition of "Company Material Adverse Effect" in the Purchase Agreement, however, expressly carves out circumstances or facts resulting from or arising out of changes in economic conditions and changes in "Law" (which is defined in the Purchase Agreement to include ordinances, orders, and pronouncements of the sort highlighted in Footnote 4 in the Motion and other state and local "shut down" and "stay home" orders entered by state and local governments throughout the United States). *See* Purchase Agreement, at p. 8-9 [Docket No. 780-6].

Purchase Agreement if such failure was primarily caused by the Purchaser's failure to act in good faith or use its commercially reasonable efforts to cause the Closing to occur. Despite the Purchaser being unable to terminate the Purchase Agreement due to COVID-19 and being responsible for the failure to obtain approval of PaDEP by the Outside Date, the Debtors have succumbed to the Purchaser's meritless and empty threats rather than filing a motion under Section 1142(b) of the Bankruptcy Code to compel the Purchaser to close the transactions on their existing terms. [5]

12.     The purchase price reduction sought by the Purchaser would more than offset the $12 million purchase price increase obtained by the Debtors on February 13 that enabled the Term Loan Lenders and the Debtors to agree to fund $25 million for distributions to unsecured creditors, including a $5 million severance fund for former refinery workers. Despite these uncontroverted facts, the Debtors ask that the Court re-affirm the "good faith" findings of fact set forth in the Confirmation Order as to the Purchaser. The Objecting Lenders submit that re-affirmation of such findings of fact, under the present circumstances, would be entirely inappropriate given the deliberate delay in the fulfilment of the closing conditions caused by the Purchaser.

13.     The Debtors' Motion submits that the alternative to the Amendment is costly and time-consuming litigation. The Debtors have represented in their Motion that all conditions precedent to closing, other than tendering of closing certificates to be delivered at closing, have been satisfied. The Court should therefore enter an Order, in substantially the form attached hereto

---

[5] Section 1142(b) provides that "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." Courts have relied on this provision to order parties to execute a transaction to effectuate a plan. See *In re Chatham Parkway Self Storage, LLC*, 507 B.R. 13 (Bankr. S.D. Ga. 2014).

as <u>Exhibit A</u>, that the Purchaser show cause why it should not be compelled under Section 1142(b)

to close the transactions contemplated by the Purchase Agreement.

Dated:  June 19, 2020
         Wilmington, Delaware              **BAYARD, P.A.**


                                           */s/ Neil B. Glassman*
                                           Neil B. Glassman (No. 2087)
                                           GianClaudio Finizio (No. 4253)
                                           600 North King Street, Suite 400
                                           P.O. Box 25130
                                           Wilmington, DE 19899
                                           Email: NGlassman@bayardlaw.com


                                           **HUNTON ANDREWS KURTH LLP**

                                           Paul N. Silverstein
                                           Brian M. Clarke
                                           200 Park Avenue
                                           New York, NY 10166
                                           Email: paulsilverstein@huntonak.com
                                           Email: brianclarke@huntonak.com

                                           *Counsel to Marble Ridge Capital LP and*
                                           *Serengeti Asset Management LP*