**Exhibit 1**

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**") is made and entered into by and among PES, ICBCS, and Insurers, as such parties are defined below (each a "**Party**," and collectively, the "**Settling Parties**") and is effective on the date of last execution of the signatories below.

## THE SETTLING PARTIES

The Settling Parties are comprised of the following individual parties:

A.  PES Liquidating Trust, for itself and on behalf of Plaintiffs PES Holdings, LLC; North Yard GP, LLC; North Yard Logistics, L.P.; PES Administrative Services, LLC; PES Energy Inc.; PES Intermediate, LLC; PES Ultimate Holdings, LLC; and Philadelphia Energy Solutions Refining and Marketing LLC (collectively, "**PES**");

B.  ICBC Standard Bank Plc ("**ICBCS**"); and

C.  Allianz Global Risks US Insurance Company; XL Insurance Company SE as successor to AXA Corporate Solutions Assurance; Certain Underwriters at Lloyd's, London subscribing to Policy No. 18NSRO1797-01 (including but not limited to Navigators Management Company, Inc. on behalf of Navigators Syndicate at Lloyd's 1221); Certain Underwriters at Lloyd's, London subscribing to Policy No. AJK148822G18 (including but not limited to Validus Specialty Underwriting Services, Inc. on behalf of Lloyd's Syndicate TAL 1183); Certain Underwriters at Lloyd's, London subscribing to Policy No. EN100070-18 (including but not limited to Premia Managing Agency on behalf of Syndicate No. 1884, and Renaissance Re Syndicate Management on behalf of Syndicate No. 1458); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800181 (including but not limited to Pioneer Underwriting Limited for and on behalf of Pioneer Natural Resources – Onshore – PNR 9094); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800261 (including but not limited to HDI Global Specialty SE (formerly International Insurance Company of Hannover SE)); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800279 (including but not limited to Argo Managing Agency Ltd. for and on behalf of Lloyd's Underwriter Syndicate 1200 AMA, and Chaucer Syndicates Ltd. for and on behalf of Lloyd's Underwriter Syndicate No. 1084 CSL); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800280 (including but not limited to XL Catlin for and on behalf of Syndicate 2003 XLC); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800281 (including but not limited to Premia Managing Agency for and on behalf of Lloyd's Underwriter Syndicate 1955 BAR); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800282 (including but not limited to Great Lakes Insurance SE); Certain Underwriters at Lloyd's, London subscribing to Policy No.

B1526ENNMG1800283 (including but not limited to QBE European Company Operations by and on behalf of Lloyd's Underwriter Syndicate No. 1036 COF); Certain Underwriters at Lloyd's, London subscribing to Policy No. B1526ENNMG1800285 (including but not limited to Ark Syndicate Management 3902 for and on behalf of Lloyd's Underwriter Syndicate 3902 NOA); General Security Indemnity Company of Arizona; Great Lakes Insurance SE; HDI Global Insurance Company; HDI Global Specialty SE (formerly International Insurance Company of Hannover SE); Helvetia Swiss Insurance Company in Liechtenstein Ltd.; Lancashire Insurance Company (UK) Ltd.; Liberty Mutual Insurance Company;  Mapfre Group:  Mapfre España, Compañia International De Seguros Y Reaseguros S.A.;  PartnerRe Ireland Insurance DAC; Ace American Insurance Company; Westport Insurance Corporation; XL Insurance America, Inc.; Ariel Re Bda Ltd on behalf of Ariel Syndicate 1910 (Argo), subscribing to Policy No. P134707; Ironshore Insurance Ltd. (Bermuda), subscribing to Policy No. 443173918; Oil Casualty Insurance, Ltd. (OCIL), subscribing to Policy No. P-100354-1118; Zurich American Insurance Company; Chubb Bermuda Insurance Ltd.; and Certain Underwriters at Lloyd's, London participating in the Aon Client Treaty subscribing to Policy Nos. B1526ENNMG1800261, B1526ENNMG1800279, B1526ENNMG1800280, and B1526ENNMG1800282 (collectively, "**Insurers**").

## RECITALS

WHEREAS, on June 21, 2019, PES owned and operated an oil refinery located in Philadelphia, PA (the "**Refinery**");

WHEREAS, ICBCS agreed to provide PES with intermediation services in accordance with the Sixth Amended and Restated Supply and Offtake Agreement dated June 18, 2019 (the "**SOA**") and related transaction documents;

WHEREAS, Insurers each individually issued insurance policies to PES that cover PES's property, including the Refinery, against physical damage and resulting business interruption losses, as well as other related coverage extensions, effective November 1, 2018 through November 1, 2019 (the "**Policies**");

WHEREAS, ICBCS is an additional insured, loss payee, and mortgagee under the Policies;

WHEREAS, on June 21, 2019, there was an explosion at the Refinery's 433 alkylation unit (the "**Explosion**") that caused physical damage to the Refinery and interrupted PES and ICBCS's ordinary business operations;

WHEREAS, a dispute arose as to the extent of Insurers' obligations under the Policies to provide coverage for the losses claimed by PES and ICBCS as a result of the Explosion;

WHEREAS, on July 21, 2019, PES filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), which

cases are being jointly administered and are captioned *In re: PES Holdings, LLC, et. al.*, Case No. 19-11626 (KG) (the "**Bankruptcy Cases**");

WHEREAS, on February 13, 2020, the Bankruptcy Court entered an order (the "**Confirmation Order**") confirming a plan of reorganization for PES (the "**Plan**");

WHEREAS, on February 12, 2020, PES commenced an adversary proceeding in the Bankruptcy Court, titled *PES Holdings LLC, et al., v. Allianz Global Risks US Insurance Co., et al.,* Case No. 20-50454 (LSS) (the "**Action**") by filing a Complaint [Docket No. 1] (the "**PES Complaint**") against Insurers;

WHEREAS, the PES Complaint asserts claims for coverage under the Policies for time element and/or business interruption losses resulting from the Explosion (the "**PES BI Claim"**);

WHEREAS, on March 27, 2020, Insurers filed an Answer and Affirmative Defenses to the PES Complaint [Docket No. 20];

WHEREAS, on March 20, 2020, ICBCS moved to intervene in the Action [Docket No. 10];

WHEREAS, on April 6, 2020, the Bankruptcy Court granted ICBCS's motion to intervene with consent of the parties [Docket No. 30], and ICBCS filed an Intervenor-Complaint [Docket No. 31] (the "**Intervenor-Complaint**") against Insurers;

WHERAS, the Intervenor-Complaint alleges claims for coverage under the Policies for time element and/or business interruption losses resulting from the Explosion (the "**ICBCS BI Claim**," and together with the PES BI Claim, the "**BI Claims**");

WHEREAS, on May 6, 2020, Insurers filed an Answer and Affirmative Defenses to the Intervenor-Complaint [Docket No. 54];

WHEREAS, by September 23, 2021, the Settling Parties executed a term sheet (the "**Term Sheet**"), setting forth the material terms for the settlement of the BI Claims;

WHEREAS, the Settling Parties agreed in the Term Sheet to use best efforts to complete and sign a more comprehensive settlement agreement containing such additional terms and conditions as may be necessary or appropriate to effectuate the settlement contemplated in the Term Sheet; and

WHEREAS, to avoid any further expenditure of time, effort and money and the inconvenience incident to the BI Claims in the Action, as well as any claims or proceedings of any kind, in any jurisdiction, relating to the BI Claims, the Settling Parties desire fully and finally to compromise, settle and resolve the BI Claims, upon the terms and conditions set forth herein.

**AGREEMENT**

NOW, THEREFORE, in consideration of the representations, warranties, covenants and other terms and conditions contained in this Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties hereby agree as follows:

1. **Settlement Payments**.

    1.1.    PES BI Claim.  No later than twenty-one (21) calendar days following entry of the Approval Order (defined below), or, if entry of the Approval Order is not required by the Plan, the Confirmation Order, or the LTA (defined below), no later than twenty-one (21) calendar days following the date on which the independent designee of the Business Interruption Litigation Committee of the PES Liquidating Trust Liquidating Trust Board ("**BI Litigation Committee**") provides Insurers written notice that entry of the Approval Order approving the settlement of the PES BI Claim is not required under the Plan, the Confirmation Order and the LTA, Insurers shall, subject to Section 1.6 of this Settlement Agreement if an Approval Order is required, pay or cause to be paid $200 million to the PES Liquidating Trust (the "**PES BI Settlement Payment**") via wire transfer to the following account:

| | |
|---|---|
| **Bank:** | Signature Bank |
| | 565 5th Ave, 12th Fl. |
| | New York, NY 10017 |
| **Swift Code:** | SIGNUS33 |
| **ABA Number:** | 026013576 |
| **Account Name:** | PES Liquidating Trust / Liquidating Trust Account |
| **Account No.:** | 1503884581 |

    1.2.    ICBCS BI Claim.  No later than twenty-one (21) calendar days following entry of the Approval Order (defined below), or, if entry of the Approval Order is not required by the Plan, the Confirmation Order, or the LTA (defined below), no later than twenty-one (21) calendar days following the date on which the independent designee of the BI Litigation Committee provides Insurers written notice that entry of the Approval Order approving the settlement of the PES BI Claim is not required by the Plan, the Confirmation Order, or the LTA, Insurers shall, subject to Section 1.6 of this Settlement Agreement if an Approval Order is required, pay or cause to be paid $70 million to ICBCS (the "**ICBCS BI Settlement Payment**," and together with the PES BI Settlement Payment, the "**BI Settlement Payments**") via wire transfer to the following account:

| | |
|---|---|
| **Bank:** | HSBC USA NA, New York, |
| | 452 Fifth Avenue, |
| | New York, NY 10018 United States |
| **Swift Address:** | MRMDUS33 |
| **CHIP ABA Number:** | 0108 |
| **Fed Routing Number:** | 021001088 |
| **ACH Routing Number:** | 022000020 |
| **Account Name:** | ICBC Standard Bank Plc |
| | (20 Gresham Street, London, EC2V 7JE) |

4

| **Account No.:** | 000157210 |
| **Payment Ref:** | PES/BS&R/Legal/Ins |

1.3.    For the avoidance of doubt, (i) the BI Settlement Payments are in addition to any amounts that may have been previously paid by Insurers to PES and ICBCS which amounts include payments totaling $137,496,724, and (ii) the PES Liquidating Trust shall transfer to ICBCS its share of the PES BI Settlement Payment in accordance with the *Second Amended and Restated Liquidating Trust Agreement* dated July 1, 2021 (the "**LTA**"), and the *Settlement Agreement by and among PES Liquidating Trust, ICBC Standard Bank Plc, and Cortland Capital Market Services LLC*, dated July 1, 2021.

1.4.    Each Insurer is responsible for its share of the BI Settlement Payments as outlined in **Exhibit A**. Liability for the individual shares of the BI Settlement Payments is several and not joint, and no Insurer shall be responsible for more than its share as identified in **Exhibit A**.

1.5.    <u>Tax Consequences</u>.  The Settling Parties recognize and agree that Insurers will have no responsibility for any taxes assessed by or payable to any local, state, federal, or other taxing authority, in whatever country or nation they may be located, that may be assessed or owing with respect to the BI Settlement Payments (or any amounts previously paid by the Insurers to PES and ICBCS).

1.6.    Notwithstanding any other provision of this Settlement Agreement, if entry of the Approval Order is required pursuant to the terms of the LTA to settle the PES BI Claim and a notice of appeal is timely filed with respect to the Approval Order, then Insurers shall, unless the Settling Parties agree otherwise, within twenty-one (21) calendar days following the filing of the notice of appeal: (i) deposit the PES BI Settlement Payment into an account established by or through a third party escrow arrangement mutually agreed to by the Settling Parties (the "**Escrow Agent**" and, such account, the "**PES Escrow Account**"); and (ii) deposit the ICBCS BI Settlement Payment into an account established by or through the Escrow Agent, (the "**ICBCS Escrow Account**," and together with the PES Escrow Account, the "**Escrow Accounts**"). The Settling Parties will seek to establish the Escrow Accounts at Citibank, and if Citibank is unwilling to provide such services on mutually acceptable terms to the Settling Parties, through an arrangement of substantially similar nature and function as mutually agreed to by the Settling Parties. The Escrow Accounts will be governed by the Escrow Agent's standard agreement with such revisions as are necessary to reflect the payment mechanics and timing set forth herein and such other revisions as are otherwise agreed to by the Settling Parties and the Escrow Agent. The fees associated with establishing and maintaining the Escrow Accounts, if any, will be born 1/3rd by PES, 1/3rd by ICBCS, and 1/3rd by the Insurers. If an appeal of the Approval Order is filed, then within three (3) days after the Approval Order becomes a final order that is no longer subject to appeal: (i) PES, through their attorneys, and Insurers, through their attorneys, shall instruct the Escrow Agent to release the PES BI Settlement Payment from the PES Escrow Account to the PES Liquidating Trust via wire transfer to the account identified in Section 1.1 above; and (ii) ICBCS, through its attorneys, and Insurers, through their attorneys, shall instruct the Escrow Agent to release the ICBCS BI Settlement Payment to ICBCS via wire transfer to the account identified in Section 1.2 above. For the avoidance of doubt, Insurers' obligation to pay the BI Settlement Payments pursuant to

Sections 1.1 and 1.2 above is not discharged until the Liquidating Trust actually receives the PES BI Settlement Payment and ICBCS actually receives the ICBCS BI Settlement Payment.

1.7.    In the event that the Approval Order is reversed and/or vacated in whole or in substantive part after all appeals are exhausted, unless the Settling Parties agree otherwise, the PES BI Settlement Payment and the ICBCS BI Settlement Payment shall be released back to Insurers, and the Settlement Agreement shall thereafter be *void ab initio* and be of no force and effect whatsoever as if this Settlement Agreement had never been executed by the Settling Parties, and this Settlement Agreement shall automatically be terminated without any further action required from the Settling Parties, and the Settling Parties shall return to their respective positions *ex ante*, as though the settlement and, for the avoidance of doubt, the releases in Section 2 of this Settlement Agreement had never occurred.

2.    **Releases**.

2.1.    Upon execution of this Settlement Agreement and subject to actual receipt by ICBCS of the ICBCS BI Settlement Payment and by the PES Liquidating Trust of the PES BI Settlement Payment, PES Releasors and ICBCS Releasors hereby release Insurer Releasees from any and all claims, demands, losses, rights, and causes of action of any nature whatsoever (A) that have been or could have been asserted in the Action or (B) that could have been asserted or could in the future be asserted in any forum, in either case whether known or unknown, whether foreign or domestic, whether arising under federal, state, common, or foreign law, that arise solely out of or are based solely upon any of the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations or omissions involved, set forth or referred to in the PES Complaint or Intervenor-Complaint filed in the Action and arising solely out of or relating to, the claims:  (i) for coverage under Section II (Time Element) of the Policies, (ii) for coverage under any Coverage Extensions in Section III of the Policies to the extent such Coverage Extensions are related to time element coverages, and (iii) for the alleged breach of the duty of good faith and fair dealing relating to Insurers' adjustment and handling of or conduct with respect to such time element and/or business interruption claims (the "**PES/ICBCS Released BI Claims**").  For the avoidance of doubt, the PES/ICBCS Released BI Claims shall include all claims that have been or could have been asserted by ICBCS in the Action, but shall not include PES's claims asserted in the Action (x) for coverage under Section I of the Policies, as described and supported by the Brindley Engineering Unit 433 Estimate Analysis dated June 7, 2021, (y) for coverage under any Coverage Extensions in Section III as identified in PES Property Damage Submission No. 6, or (z) for the alleged breach of the duty of good faith and fair dealing relating to Insurers' adjustment and handling of or conduct with respect to such property damage claims ("**Non-Released PD Claims**"); *provided*, however, that PES shall not be permitted to introduce evidence in the Action or any other litigation relating solely to Insurers' adjustment and handling of or conduct solely with respect to any PES/ICBCS Released BI Claims in support of any Non-Released PD Claims.  The Settling Parties acknowledge and agree that nothing in this Section 2.1 is intended nor shall be construed to prevent PES, in prosecuting the Non-Released PD Claims, from relying on any documents or other evidence that relate to the Non-Released PD Claims, including documents or evidence that also relate in part to the PES/ICBCS Released BI Claims.  The release provided herein by PES Releasors and ICBCS Releasors shall apply to all PES/ICBCS Released BI Claims whether legal, equitable, regulatory, governmental, or of any type, whether brought directly or indirectly against any of the Insurer Releasees by PES

Releasors or ICBCS Releasors.  This Settlement Agreement shall be a complete defense against any PES/ICBCS Released BI Claims; *provided*, however, that this release shall not affect the Settling Parties' rights and obligations under this Settlement Agreement or the rights and obligations identified in Section 2.3 below. For the avoidance of doubt, the deposit of the BI Settlement Payments into the Escrow Accounts, to the extent required under Section 1.6 above, shall not trigger the releases provided for in this Section 2.1, and the releases in this Section 2.1 shall not be triggered or otherwise become effective unless and until the Liquidating Trust actually receives the PES BI Settlement Payment and ICBCS actually receives the ICBCS BI Settlement Payment.

2.2.    Upon execution of this Settlement Agreement and subject to the effectiveness of the releases contained in Section 2.1 of this Settlement Agreement, Insurer Releasors hereby release PES Releasees and ICBCS Releasees from any and all claims, demands, losses, rights, and causes of action of any nature whatsoever, that could be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law, that relate to, arise out of or are based upon any of the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations or omissions involved, set forth or referred to in the Complaint or Intervenor-Complaint filed in the Action, and/or arising out of, or are in any way connected or related to, the claims for coverage under Section II of the Policies, for coverage under any Coverage Extensions in Section III of the Policies to the extent such Coverage Extensions are related to Section II, and for the alleged breach of the duty of good faith and fair dealing relating to Insurers' adjustment and handling of or conduct with respect to such business interruption claims (the "**Insurer Released BI Claims**," and together with the PES/ICBCS Released BI Claims, the "**Released BI Claims**").  This release shall apply to all Insurer Released BI Claims whether legal, equitable, regulatory, governmental, or of any type, whether brought directly or indirectly against any of the PES Releasees or ICBCS Releasees by Insurer Releasors.  This Settlement Agreement shall be a complete defense against any Insurer Released BI Claims; provided, however, that this release shall not affect the Settling Parties' rights and obligations under this Settlement Agreement or the rights and obligations identified in Section 2.3 below.

2.3.    Nothing in this Settlement Agreement negates, modifies, or supplements the Joint Prosecution and Pro Rata Cost Sharing Agreement under which the Settling Parties are pursuing subrogation or the rights and obligations regarding subrogation recoveries in the Policies.

2.4.    As used in this Section 2, "PES Releasors" and "PES Releasees" shall mean:  (i) PES; (ii) PES' current and former parent entities, business units, business divisions, affiliates or subsidiaries (all in their capacities as such on behalf of PES and not in their respective individual capacities); (iii) each and all of PES' current and former officers, directors, investors, shareholders, partners, creditors, attorneys, employees, agents, trustees, financial or investment advisors, consultants, accountants, insurers, advisors (all in their capacities as such and not in their respective individual capacities); (iv) PES's bankruptcy estate created in the Bankruptcy Cases; and (v) each and all of PES' and PES Releasors' heirs, executors, trustees, personal representatives, estates, administrators, and each of their successors, predecessors, assigns, and assignees (all in their capacities as such and not in their respective individual capacities).

2.5.    As used in this Section 2, "ICBCS Releasors" and "ICBCS Releasees" shall mean:  (i) ICBCS; (ii) ICBCS's current and former parent entities, business units, business divisions, affiliates or subsidiaries (all in their capacities as such on behalf of ICBCS and not in their respective individual capacities); (iii) each and all of ICBCS's current and former officers, directors, investors, shareholders, partners, creditors, attorneys, employees, agents, trustees, financial or investment advisors, consultants, accountants, insurers, advisors (all in their capacities as such and not in their respective individual capacities); and (iv) each and all of ICBCS and ICBCS Releasors' heirs, executors, trustees, personal representatives, estates, administrators, and each of their successors, predecessors, assigns, and assignees (all in their capacities as such and not in their respective individual capacities.

2.6.    As used in this Section 2, "Insurer Releasors" and "Insurer Releasees" shall mean: (i) Insurers; (ii) Insurers' current and former parent entities, business units, business divisions, affiliates or subsidiaries (all in their capacities as such and not in their respective individual capacities); (iii) each and all of Insurers' current and former officers, directors, investors, shareholders, partners, attorneys, employees, agents, trustees, financial or investment advisors, consultants, accountants, insurers, advisors, underwriting members (all in their capacities as such and not in their respective individual capacities); and (iv) each and all of Insurers and Insurer Releasors' heirs, executors, trustees, personal representatives, estates, administrators, and each of their successors, predecessors, assigns, and assignees (all in their capacities as such on behalf of Insurers and not in their respective individual capacities).

3.    **Binding Effect of this Settlement Agreement**.  This Settlement Agreement shall be binding on the Settling Parties upon its execution by all Settling Parties or, to the extent Bankruptcy Court approval is needed or required, following its execution by all Settling Parties subject to the entry by the Bankruptcy Court of an order, in accordance with Section 4 below and substantially in the form attached hereto as **Exhibit B**, approving the settlement set forth in this Settlement Agreement and authorizing the Settling Parties to enter into and perform their obligations under this Settlement Agreement and granting further relief related thereto (the "**Approval Order**").

4.    **Approval by the Bankruptcy Court**.  Within seven (7) business days of the date on which this Settlement Agreement is executed, the PES Liquidating Trust shall seek the Bankruptcy Court's approval of the settlement set forth in this Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "**9019 Motion**"), to the extent such Bankruptcy Court approval is needed or required. PES shall provide ICBCS and Insurers a reasonable opportunity to review and comment on the 9019 Motion. Notwithstanding any other provision of this Settlement Agreement, if Bankruptcy Court approval is needed or required, and if the Bankruptcy Court denies the 9019 Motion, or approves the settlement set forth in this Settlement Agreement upon conditions and/or terms that are inconsistent with this Settlement Agreement (or the Approval Order is reversed and/or vacated in whole or in substantive part after all appeals are exhausted), this Settlement Agreement (unless the Settling Parties mutually agree in writing to the Bankruptcy Court's conditions and/or terms or to appeal the Bankruptcy Court's decision) shall be deemed null and void and shall automatically be terminated without any further action required from the Settling Parties, and the Settling Parties shall return to their respective positions *ex ante*, as though the settlement and, for the avoidance of doubt, the releases in Section 2 of this Settlement Agreement had never occurred.  Insurers and ICBCS agree to

support the 9019 Motion and to refrain from taking any action to hinder or delay the granting of the 9019 Motion.

5.    **Stay of Proceedings**.  Following the execution of this Settlement Agreement by all Settling Parties, and until and unless this Settlement Agreement becomes null and void under Section 4 above, the Settling Parties agree to cease and stay all litigation activities related to the BI Claims in the Action, including the depositions of fact and expert witnesses related to the BI Claims and the filing of any dispositive motions related to the BI Claims for a period of sixty (60) days, which can be extended by mutual agreement of the Settling Parties by and through their respective counsel.

6.    **Dismissal**.  Within five (5) business days following receipt by both ICBCS and the PES Liquidating Trust of all of the BI Settlement Payments:

6.1.    The Settling Parties, through their counsel, shall execute and, upon execution, PES shall file, a stipulation of dismissal, attached hereto as **Exhibit C**, voluntarily dismissing with prejudice Counts IV, V, and VII of the PES Complaint [Docket No. 1]. Attorneys' fees and costs shall be paid by the Party incurring same.

6.2.    The Settling Parties, through their counsel, shall execute and, upon execution, ICBCS shall file, a stipulation of dismissal, attached hereto as **Exhibit D**, voluntarily dismissing with prejudice the Intervener Complaint [Docket No. 31] with prejudice and without costs.  Attorneys' fees and costs shall be paid by the Party incurring same.

7.    **No Admissions**.  The Settling Parties agree that this Settlement Agreement is a commercial resolution and shall not be construed as an admission or evidence of any violation of any law or admission as to the truth of any allegation or of the existence or non-existence of insurance coverage under the Policy or any other contract of insurance.

8.    **Choice of Law**.  This Settlement Agreement shall be governed by New York law (without reference to its rules on choice of law).

9.    **Confidentiality**.  The existence and terms of this Settlement Agreement shall remain confidential except as set forth below.

9.1.    The Settling Parties shall not directly or indirectly make any statement to any third party about the settlement of the BI Claims in the Action, except they may disclose:  (a) that an amicable settlement was reached that resolved the BI Claims asserted in the Action; (b) the terms of this Settlement Agreement to their respective agents, auditors; insurers; reinsurers; reinsurance intermediaries; current officers, directors, and other employees who require such information in order to perform their duties; limited partners; direct and indirect beneficiaries; members; shareholders; affiliates; insurance brokers; and as otherwise required by law, regulation, or court order; and (c) the terms of this Settlement Agreement insofar as that is necessary for its terms to be enforced.

9.2.    Nothing in this Section 9 shall prevent PES, ICBCS, Insurers, or their respective counsel from disclosing, if necessary, the existence and terms of this Settlement

Agreement to the Court in the Action or in connection with the Bankruptcy Cases, including, without limitation, as contemplated in Sections 3 and 4 of this Settlement Agreement.

10.    **Waiver**.  No waiver of any of the provisions of this Settlement Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar.  No waiver shall be binding unless executed in writing.

11.    **Voluntary Execution**.  Each Party to this Settlement Agreement understands that it may possibly discover that a fact relating to the BI Claims may ultimately prove to be other than such Party presently believes it to be as of the date hereof.  Each Party acknowledges that, irrespective of any such discovery, this Settlement Agreement shall remain fully binding and effective on such Party.

12.    **Notices**.  Except as may otherwise be expressly provided, all notices or other communications required or permitted under this Settlement Agreement shall be sufficiently given if sent by electronic mail to the following electronic mail addresses:

If to PES:

> Anthony Lagreca
> PES Liquidating Trust
> Anthony.Lagreca@pesultimate.com
>
> - and -
>
> Will Pruitt
> Nader R. Boulos
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, IL 60654
> wpruitt@kirkland.com
> nboulos@kirkland.com

If to ICBCS:

> Paul Chelsom
> ICBC Standard Bank Plc
> Paul.Chelsom@icbcstandard.com
>
> - and -
>
> David L. Yohai
> John P. Mastando
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, NY 10153
> David.Yohai@weil.com
> John.Mastando@weil.com

If to Insurers:

>Jonathan R. MacBride
>Zelle LLP
>1635 Market St, Suite 1600
>Philadelphia, PA 19103
>JMacBride@zelle.com

>Elizabeth V. Kniffen
>Zelle LLP
>500 Washington Avenue South, Suite 4000
>Minneapolis, MN 55415
>EKniffen@zelle.com

13.    **Titles**.  All titles and headings appearing in this Settlement Agreement are for identification only and shall not be used for interpretive purposes.

14.    **Counterparts**.  This Settlement Agreement may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the Settling Parties to all of the counterparts had signed the same instrument.  Further, a faxed or electronic copy of an executed counterpart shall have the same force and effect as an original.

15.    **Severability**.  If any provision of this Settlement Agreement is held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, which shall continue in full force and effect without being impaired or invalidated in any way, and such invalid, illegal or unenforceable provision shall be restated by a court of competent jurisdiction to reflect as nearly as possible the original intentions of the Settling Parties in accordance with applicable law.

16.    **Authorization**.  Each person executing this Settlement Agreement hereby warrants and represents that he is authorized to execute this Settlement Agreement on behalf of the individual or entity for whom he signs and to bind such individual or entity to this Settlement Agreement.

17.    **Additional Representations and Warranties**.  The Settling Parties represent and warrant as follows:

17.1.    Except for the Settling Parties, no other persons or entities have any interest in the Released BI Claims. In the event that any Party shall have assigned, sold, transferred, or otherwise disposed of any claim or other matter herein released, such Party shall hold harmless and indemnify the applicable released Party from and against any loss, cost, claim or expense including but not limited to all costs related to the defense of any action, including attorney's fees, based upon, arising from, or incurred as a result of any such claim or matter;

17.2.    The Settling Parties have the right and authority to execute and perform their obligations (including granting the releases in Sections 2.1 and 2.2) under this Settlement Agreement setting forth the settlement, which may be subject to approval by the Bankruptcy

Court, it being understood that each Party bears its own costs in seeking approval of the settlement set forth in this Settlement Agreement and defending the Settlement Agreement;

17.3.    Pursuant to Section 2.9 of the LTA, the BI Litigation Committee has approved the Settlement as reflected in this Settlement Agreement, and the independent designee of the BI Litigation Committee has executed this Settlement Agreement, and no further authorization or approval is required for PES to enter into and perform its obligations under this Settlement Agreement except to the extent that Bankruptcy Court approval may be required under the LTA, in which case PES represents that it will seek the entry of the Approval Order in accordance with Section 4 of this Settlement Agreement;

17.4.    The Settling Parties own the rights released by this Settlement Agreement and have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, or obligations released under this Settlement Agreement; and

17.5.    The Settling Parties enter into this Settlement Agreement without any inducement other than what is described in this Settlement Agreement.

18.    **Limitation on Assignment**.  No Party may assign this Settlement Agreement (or any of its rights or obligations hereunder), by operation of law or otherwise, to any other person, and any attempted assignment without the express written consent of the other Settling Parties shall be null and void.

19.    **No Third-Party Beneficiaries**.  This Settlement Agreement shall not confer any rights or remedies upon any person or entity other than the Settling Parties and their respective heirs, successors and permitted assigns (other than as contemplated by the releases contained herein).

20.    **Construction**.  The Settling Parties agree that each Party participated in the drafting and preparation of this Settlement Agreement, and as a result, the construction of this Settlement Agreement shall not be construed against any Party on the ground that said Party drafted this Settlement Agreement.

21.    **No Oral Modification**.  This Settlement Agreement may be modified or amended only by a written instrument signed by all Settling Parties.

22.    **Entire Agreement**.  This Settlement Agreement, together with any documents, certificates, instruments and exhibits referred to herein, embodies the entire agreement and understanding of the Settling Parties in respect of the Action and the transaction contemplated by this Settlement Agreement and supersedes the Term Sheet and all prior agreements, representations, warranties, promises, covenants, arrangement, communications and understandings, oral or written, express or implied, among the Settling Parties with respect to such transaction.  There are no agreements, representations, warranties, promises, covenants, arrangements, communications or understandings among the Settling Parties with respect to the Action and such transaction, other than those expressly set forth or referred to herein.

*[Remainder of page intentionally left blank]*

Date: 11/4/2021

**ACCEPTED AND AGREED TO BY:**

**PES LIQUIDATING TRUST**

Representative

Name:  Peter Kravitz

Title:   Authorized Representative

Date: 11/4/2021

**ACCEPTED AND AGREED TO BY:**

**ICBC Standard Bank Plc**

Representative

Name: PAUL CHERSOM

Title: GENERAL COUNSEL

**Steve Branchflower**

Head: Business Support & Recovery

14

Date: *1st November 2021*

ACCEPTED AND AGREED TO BY:

**CHAUCER SYNDICATE MANAGEMENT LTD. ON BEHALF OF SYNDICATE 1084 AT LLOYDS**

_____
Representative

Name: Andrew Butcher
Title: *CLAIMS MANAGER - ENERGY*

Date: _____

ACCEPTED AND AGREED TO BY:

**HDI GLOBAL SPECIALTY SE**

_____
Representative

Name: Andy Mendrys
Title: _____

Date: _____

ACCEPTED AND AGREED TO BY:

**NAVIGATORS MANAGEMENT COMPANY, INC. ON BEHALF OF NAVIGATORS SYNDICATE AT LLOYDS 1221**

_____
Representative

Name: Tayo Williams
Title: _____

15

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CHAUCER SYNDICATE MANAGEMENT LTD. ON BEHALF OF SYNDICATE 1084 AT LLOYDS**

_____
Representative

Name: Andrew Butcher
Title: _____

Date: 4/11/21

**ACCEPTED AND AGREED TO BY:**

**HDI GLOBAL SPECIALTY SE**

_____
Representative

Name: Andy Mendrys
Title: CLAIMS MANAGER

Date: _____

**ACCEPTED AND AGREED TO BY:**

**NAVIGATORS MANAGEMENT COMPANY, INC. ON BEHALF OF NAVIGATORS SYNDICATE AT LLOYDS 1221**

_____
Representative

Name: Tayo Williams
Title: _____

15

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CHAUCER SYNDICATE MANAGEMENT LTD. ON BEHALF OF SYNDICATE 1084 AT LLOYDS**

_____
Representative

Name: Andrew Butcher_____

Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**HDI GLOBAL SPECIALTY SE**

_____
Representative

Name: Andy Mendrys_____

Title: _____


Date: 4/11/21_____

**ACCEPTED AND AGREED TO BY:**

**NAVIGATORS MANAGEMENT COMPANY, INC. ON BEHALF OF NAVIGATORS SYNDICATE AT LLOYDS 1221**

_____
Representative

Name: Tayo Williams_____

Title: Major Claims Specialist - Energy

15

Date: ___11 / 1 / 2021___

**ACCEPTED AND AGREED TO BY:**

**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY**

_____
Representative

Name: Christopher Dye
Title: CLAIMS DIRECTOR

Date: _____

**ACCEPTED AND AGREED TO BY:**

**PARTNERRE INSURANCE, DAC**

_____
Representative

Name: Daniel Flint
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**LANCASHIRE INSURANCE COMPANY (UK) LIMITED**

_____
Representative

Name: Dean Watson
Title: _____

16

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY**

_____
Representative

Name: Christopher Dye _____
Title: _____

Date: 03 | 11 | 2021

**ACCEPTED AND AGREED TO BY:**

**PARTNERRE INSURANCE, DAC**

_____
Representative

Name: Daniel Flint _____
Title: Claim Adjuster

Date: _____

**ACCEPTED AND AGREED TO BY:**

**LANCASHIRE INSURANCE COMPANY (UK) LIMITED**

_____
Representative

Name: Dean Watson _____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY**

_____
Representative

Name: Christopher Dye_____
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**PARTNERRE INSURANCE, DAC**

_____
Representative

Name: Daniel Flint_____
Title: _____


Date: ___03/11/21___

**ACCEPTED AND AGREED TO BY:**

**LANCASHIRE INSURANCE COMPANY (UK) LIMITED**

_____
Representative

Name: Dean Watson_____
Title: _CLAIMS MANAGER_

16

Date: __2nd November 2021_____

**ACCEPTED AND AGREED TO BY:**

**RENAISSANCE RE SYNDICATE MANAGEMENT LTD. ON  BEHALF OF SYNDICATE 1458 AT LLOYD'S**

_____
Representative

Name: Frazer Higgins_____
Title:  AVP, Claims_____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**PREMIA MANAGING AGENCY ON BEHALF OF LLOYD'S SYNDICATE 1955**

_____
Representative

Name: Paul Crockford_____
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**XL INSURANCE AMERICA INC.**

_____
Representative

Name: Aaron Devine_____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**RENAISSANCE RE SYNDICATE MANAGEMENT LTD. ON  BEHALF OF SYNDICATE 1458 AT LLOYD'S**

_____
Representative

Name: Frazer Higgins _____
Title: _____


Date: 4th November 2021 _____

**ACCEPTED AND AGREED TO BY:**

**PREMIA MANAGING AGENCY ON BEHALF OF LLOYD'S SYNDICATE 1955**

*P. Crockford* _____
Representative

Name: Paul Crockford _____
Title: Claims Manager _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**XL INSURANCE AMERICA INC.**

_____
Representative

Name: Aaron Devine _____
Title: _____

17

Date: _____

**ACCEPTED AND AGREED TO BY:**

**RENAISSANCE RE SYNDICATE MANAGEMENT LTD. ON  BEHALF OF SYNDICATE 1458 AT LLOYD'S**

_____
Representative

Name: Frazer Higgins _____
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**PREMIA MANAGING AGENCY ON BEHALF OF LLOYD'S SYNDICATE 1955**

_____
Representative

Name: Paul Crockford _____
Title: _____


Date: 11/1/21 _____

**ACCEPTED AND AGREED TO BY:**

**XL INSURANCE AMERICA INC.**

_____
Representative

Name: Aaron Divine _____
Title: ___ Large Loss Claims Specialist _____

Date: _____11-1-21_____

ACCEPTED AND AGREED TO BY:

**STARR TECHNICAL RISKS AGENCY, INC. ON BEHALF OF ACE AMERICAN INSURANCE COMPANY**

_____
Representative

Name: Jim Jezewski
Title: _____VP, CLAIMS MGR_____


Date: _____

ACCEPTED AND AGREED TO BY:

**HDI-GLOBAL INSURANCE COMPANY**

_____
Representative

Name: Kevin McCoy
Title: _____


Date: _____

ACCEPTED AND AGREED TO BY:

**TALBOT UNDERWRITING LIMITED ON BEHALF OF SYNDICATE 1183**

_____
Representative

Name: Mark Hatchett
Title: _____

Date: _____

ACCEPTED AND AGREED TO BY:

**STARR TECHNICAL RISKS AGENCY, INC. ON BEHALF OF ACE AMERICAN INSURANCE COMPANY**

_____
Representative

Name: Jim Jezewski

Title: _____


Date: _1 NOV. 2021___

ACCEPTED AND AGREED TO BY:

**HDI-GLOBAL INSURANCE COMPANY**

_____
Representative

Name: Kevin McCoy

Title: SENIOR PROPERTY CLAIMS CONSULTANT


Date: _____

ACCEPTED AND AGREED TO BY:

**TALBOT UNDERWRITING LIMITED ON BEHALF OF SYNDICATE 1183**

_____
Representative

Name: Mark Hatchett

Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**STARR TECHNICAL RISKS AGENCY, INC. ON BEHALF OF ACE AMERICAN INSURANCE COMPANY**

_____
Representative

Name: Jim Jezewski_____

Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**HDI-GLOBAL INSURANCE COMPANY**

_____
Representative

Name: Kevin McCoy_____

Title: _____

3rd November 2021

Date: _____

**ACCEPTED AND AGREED TO BY:**

**TALBOT UNDERWRITING LIMITED ON BEHALF OF SYNDICATE 1183**

_~~M? Hatchett~~_____
Representative

Name: Mark Hatchett_____

Title: Senior Claims Adjuster_____

Date: <u>2 November 2021</u>

**ACCEPTED AND AGREED TO BY:**

**HELVETIA SWISS INSURANCE COMPANY IN LIECHTENSTEIN LTD.**

_____
Representative

Name: <u>Matthias Leber</u>
Title: <u>Senior Claims Manager</u>

Date: _____

**ACCEPTED AND AGREED TO BY:**

**WESTPORT INSURANCE CORPORATION**

_____
Representative

Name: <u>Patrick Spagnuolo</u>
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CATLIN UNDERWRITING AGENCIES LTD FOR AND ON BEHALF OF SYNDICATE 2003**

_____
Representative

Name: <u>Paul Beer</u>
Title: _____

19

Date: _____

**ACCEPTED AND AGREED TO BY:**

**HELVETIA SWISS INSURANCE COMPANY IN LIECHTENSTEIN LTD.**

_____
Representative

Name: Matthias Leber_____
Title: _____

Date: 11/03/2021_____

*[signature]*

WILLIAM J. ASHTON
CLAIMS MGR / V.P.

**ACCEPTED AND AGREED TO BY:**

**WESTPORT INSURANCE CORPORATION**

*Patrick Spagnuolo*
_____
Representative

Name: Patrick Spagnuolo_____
Title: Vice President – Claims Expert_____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CATLIN UNDERWRITING AGENCIES LTD FOR AND ON BEHALF OF SYNDICATE 2003**

_____
Representative

Name: Paul Beer_____
Title: _____

19

Date: _____

**ACCEPTED AND AGREED TO BY:**

**HELVETIA SWISS INSURANCE COMPANY IN LIECHTENSTEIN LTD.**

_____
Representative

Name: Matthias Leber _____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**WESTPORT INSURANCE CORPORATION**

_____
Representative

Name: Patrick Spagnuolo _____
Title: _____

Date: 3ʳᵈ Nov 2021

**ACCEPTED AND AGREED TO BY:**

**CATLIN UNDERWRITING AGENCIES LTD FOR AND ON BEHALF OF SYNDICATE 2003**

_____
Representative

Name: Paul Beer _____
Title: Claims Manager - Energy

Date: 3ʳᵈ Nov 2021

**ACCEPTED AND AGREED TO BY:**

**XL INSURANCE COMPANY SE**

_____
Representative

Name: Paul Beer
Title: Claims Manager - Energy

Date: _____

**ACCEPTED AND AGREED TO BY:**

**PREMIA MANAGING AGENCY ON BEHALF OF SYNDICATE 1884 AT LLOYD'S**

_____
Representative

Name: Paul Crockford
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**PIONEER UNDERWRITERS ON BEHALF OF CONSORTIUM 9094**

_____
Representative

Name: Perry Bowen
Title: _____

20

Date: _____

**ACCEPTED AND AGREED TO BY:**

**XL INSURANCE COMPANY SE**

_____
Representative

Name: Paul Beer _____

Title: _____


Date: 4th Novermber 2021 _____

**ACCEPTED AND AGREED TO BY:**

**PREMIA MANAGING AGENCY ON BEHALF OF SYNDICATE 1884 AT LLOYD'S**

*P. Crockford* _____
Representative

Name: Paul Crockford _____

Title: Claims Manager _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**PIONEER UNDERWRITERS ON BEHALF OF CONSORTIUM 9094**

_____
Representative

Name: Perry Bowen _____

Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**XL INSURANCE COMPANY SE**

_____
Representative

Name: Paul Beer_____
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**PREMIA MANAGING AGENCY ON BEHALF OF SYNDICATE 1884 AT LLOYD'S**

_____
Representative

Name: Paul Crockford_____
Title: _____


Date: 3rd November 2021

**ACCEPTED AND AGREED TO BY:**

**PIONEER UNDERWRITERS ON BEHALF OF CONSORTIUM 9094**

_____
Representative

Name: Perry Bowen_____
Title: HEAD OF CLAIMS

20

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARGO MANAGING AGENCY LTD. ON BEHALF OF SYNDICATE 1200**

*Russell Sharrad*
_____
Representative

Name: Russell Sharrad _____
Title: Property, Marine and Energy Cliams Manager


Date: _____

**ACCEPTED AND AGREED TO BY:**

**LIBERTY MUTUAL INSURANCE COMPANY**

_____
Representative

Name: Timothy Dupree _____
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**MAPFRE ESPAÑA, COMPAÑIA INTERNATIONAL DE SEGUROS Y REASEGUROS S.A.**

_____
Representative

Name: Romãn Guaita Fernãndez _____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARGO MANAGING AGENCY LTD. ON BEHALF OF SYNDICATE 1200**

_____
Representative

Name: Russell Sharrad_____

Title: _____

Date: November 2, 2021_____

**ACCEPTED AND AGREED TO BY:**

**LIBERTY MUTUAL INSURANCE COMPANY**

_____
Representative

Name: Timothy Dupree_____

Title: Claims Manager - US Energy & Cosntruction

Date: _____

**ACCEPTED AND AGREED TO BY:**

**MAPFRE ESPAÑA, COMPAÑIA INTERNATIONAL DE SEGUROS Y REASEGUROS S.A.**

_____
Representative

Name: Romãn Guaita Fernãndez_____

Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARGO MANAGING AGENCY LTD. ON BEHALF OF SYNDICATE 1200**

_____
Representative

Name: Russell Sharrad_____

Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**LIBERTY MUTUAL INSURANCE COMPANY**

_____
Representative

Name: Timothy Dupree_____

Title: _____


Date: 2 - NOVEMBER 2021

**ACCEPTED AND AGREED TO BY:**

**MAPFRE ESPAÑA, COMPAÑIA INTERNATIONAL DE SEGUROS Y REASEGUROS S.A.**

_____
Representative

Name: James Roman Guaita Fernández_____

Title: _____ INTERNATIONAL CLAIMS

Date: 1/11/2021

**ACCEPTED AND AGREED TO BY:**

**ARK SYNDICATE MANAGEMENT LIMITED ON BEHALF OF SYNDICATE 3902 AT LLOYDS**

_Shabnam Huq_
Representative

Name: Shabnam Huq
Title: Senior Claims Adjuster

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ZURICH AMERICAN INSURANCE COMPANY**

Representative

Name: Steve Guggenheim
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**GREAT LAKES INSURANCE SE**

Representative

Name: Ton van Everdink
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARK SYNDICATE MANAGEMENT LIMITED ON BEHALF OF SYNDICATE 3902 AT LLOYDS**

_____
Representative

Name: Shabnam Huq
Title: _____


Date: *November 1, 2021*

**ACCEPTED AND AGREED TO BY:**

**ZURICH AMERICAN INSURANCE COMPANY**

_____
Representative

Name: Steve Guggenheim
Title: *AVP, Executive General Adjuster*


Date: _____

**ACCEPTED AND AGREED TO BY:**

**GREAT LAKES INSURANCE SE**

_____
Representative

Name: Ton van Everdink
Title: _____

22

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARK SYNDICATE MANAGEMENT LIMITED ON BEHALF OF SYNDICATE 3902 AT LLOYDS**

_____
Representative

Name: Shabnam Huq_____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**ZURICH AMERICAN INSURANCE COMPANY**

_____
Representative

Name: Steve Guggenheim_____
Title: _____

Date: _Nov 1, 2021_____

**ACCEPTED AND AGREED TO BY:**

**GREAT LAKES INSURANCE SE**

_____
Representative

Name: Ton van Everdink_____
Title: _CLAIMS  MANAGER____

Type text here

Date: 3rd November 2021

**ACCEPTED AND AGREED TO BY:**

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**

_R. Gallie_
Representative

Name: Robert Gallie
Title: GlobalPractice Leader - Energy Claims


Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARIEL RE BDA LTD ON BEHALF OF ARIEL SYNDICATE 1910 (ARGO)**

Representative

Name: Kevin Hutcheon
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**IRONSHORE INSURANCE LTD. (BERMUDA)**

Representative

Name: Chen Foley
Title: _____

Date: _____          **ACCEPTED AND AGREED TO BY:**

                                        **GENERAL SECURITY INDEMNITY
                                        COMPANY OF ARIZONA**


                                        _____
                                        Representative

                                        Name: Robert Gallie_____
                                        Title: _____




Date:  November 3rd 2021              **ACCEPTED AND AGREED TO BY:**

                                        **ARIEL RE BDA LTD ON BEHALF OF ARIEL
                                        SYNDICATE 1910 (ARGO)**

                                        *Kevin Hutcheon*
                                        _____
                                        Representative

                                        Name: Kevin Hutcheon_____
                                        Title:  Non Marine Property Claims Manager




Date: _____          **ACCEPTED AND AGREED TO BY:**

                                        **IRONSHORE INSURANCE LTD. (BERMUDA)**


                                        _____
                                        Representative

                                        Name: Chen Foley_____
                                        Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**

_____
Representative

Name: Robert Gallie_____
Title: _____


Date: _____

**ACCEPTED AND AGREED TO BY:**

**ARIEL RE BDA LTD ON BEHALF OF ARIEL SYNDICATE 1910 (ARGO)**

_____
Representative

Name: Kevin Hutcheon_____
Title: _____


Date: _November 4, 2021_____

**ACCEPTED AND AGREED TO BY:**

**IRONSHORE INSURANCE LTD. (BERMUDA)**

_____
Representative

Name: Chen Foley_____
Title: _Head of Bermuda Claim_____

Date: _4 Nov 2021_____

**ACCEPTED AND AGREED TO BY:**

**OIL CASUALTY INSURANCE LTD. (OCIL)**

_____
Representative

Name: ~~Mikal Thomas~~  Matthew Pifer
Title: _General Counsel and Group Head of Claims_

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CHUBB BERMUDA INSURANCE LTD.**

_____
Representative

Name: _Paul Phillips_____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**QBE EUROPEAN COMPANY OPERATIONS BY AND ON BEHALF OF LLOYD'S UNDERWRITER SYNDICATE NO. 1036 COF**

_____
Representative

Name: _Erman Hassan_____
Title: _____

24

Date: _____

**ACCEPTED AND AGREED TO BY:**

**OIL CASUALTY INSURANCE LTD. (OCIL)**

_____
Representative

Name: Mikal Thomas _____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CHUBB BERMUDA INSURANCE LTD.**

_____
Representative

Name: Paul Phillips _____
Title: *SENIOR VICE PRESIDENT - CLAIMS*

Date: _____

**ACCEPTED AND AGREED TO BY:**

**QBE EUROPEAN COMPANY OPERATIONS
BY AND ON BEHALF OF LLOYD'S
UNDERWRITER SYNDICATE NO. 1036 COF**

_____
Representative

Name: Erman Hassan _____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**OIL CASUALTY INSURANCE LTD. (OCIL)**

_____
Representative

Name: Mikal Thomas_____
Title: _____

Date: _____

**ACCEPTED AND AGREED TO BY:**

**CHUBB BERMUDA INSURANCE LTD.**

_____
Representative

Name: Paul Phillips_____
Title: _____

Date: _5/Nov/21_

**ACCEPTED AND AGREED TO BY:**

**QBE EUROPEAN COMPANY OPERATIONS
BY AND ON BEHALF OF LLOYD'S
UNDERWRITER SYNDICATE NO. 1036 COF**

_____
Representative

Name: Erman Hassan_____
Title: _Senior Claims Adjuster_

**Exhibit A**
**BI Settlement Payments Allocations**

Exhibit A to Settlement Agreement

| | Payee | Allocation | Amount assessed (Total) | Amount assessed (PES BI Claim) | Amount assessed (ICBCS BI Claim) |
|---|---|---|---|---|---|
| | Allianz Global Risks US Insurance Company | 3.75% | $10,125,000.00 | $7,500,000.00 | $2,625,000.00 |
| | Lloyd's Syndicates 1884 (Premia) / 1458 (Renaissance) | 1.50% | $4,050,000.00 | $3,000,000.00 | $1,050,000.00 |
| | General Security Indemnity Co of AZ (GSINDA) | 10.00% | $27,000,000.00 | $20,000,000.00 | $7,000,000.00 |
| | HDI Global Insurance Company (OGD1368503) | 4.00% | $10,800,000.00 | $8,000,000.00 | $2,800,000.00 |
| | HDI Global Insurance Company (OGD1432102) | 1.50% | $4,050,000.00 | $3,000,000.00 | $1,050,000.00 |
| U.S. | Liberty Mutual Insurance Company | 3.75% | $10,125,000.00 | $7,500,000.00 | $2,625,000.00 |
| Domestic | ACE American Insurance Company (Starr Tech) | 4.90% | $13,230,000.00 | $9,800,000.00 | $3,430,000.00 |
| Primary | Westport Insurance Corporation | 3.50% | $9,450,000.00 | $7,000,000.00 | $2,450,000.00 |
| | Lloyd's Syndicate 1183 TAL (Talbot) (Validus) | 2.725% | $7,357,500.00 | $5,450,000.00 | $1,907,500.00 |
| | XL Insurance America, Inc. | 5.00% | $13,500,000.00 | $10,000,000.00 | $3,500,000.00 |
| | Zurich American Insurance Company | 4.00% | $10,800,000.00 | $8,000,000.00 | $2,800,000.00 |
| | Lloyd's Syndicate 1221 (Navigators) | 3.00% | $8,100,000.00 | $6,000,000.00 | $2,100,000.00 |
| Bermuda | Ariel Re Bda Ltd on behalf of Ariel Syndicate 1910 (Argo) | 2.25% | $6,075,000.00 | $4,500,000.00 | $1,575,000.00 |
| | Ironshore Insurance Ltd. (Bermuda) | 4.25% | $11,475,000.00 | $8,500,000.00 | $2,975,000.00 |
| Primary | Oil Casualty Insurance, Ltd. (OCIL) | 2.00% | $5,400,000.00 | $4,000,000.00 | $1,400,000.00 |
| | Mapfre Global Risks | 4.00% | $10,800,000.00 | $8,000,000.00 | $2,800,000.00 |
| | PartnerRe Ireland Insurance DAC | 2.50% | $6,750,000.00 | $5,000,000.00 | $1,750,000.00 |
| | Lloyd Syndicate PNR 9094 (Pioneer) | 2.50% | $6,750,000.00 | $5,000,000.00 | $1,750,000.00 |
| | AXA Corporate Solutions Assurance (XL Insurance Co. SE) | 4.25% | $11,475,000.00 | $8,500,000.00 | $2,975,000.00 |
| | International Insurance Co. of Hannover SE (HDI Global Specialty SE ) | 1.00% | $2,700,000.00 | $2,000,000.00 | $700,000.00 |
| | Helvetia Swiss Insurance Company | 1.50% | $4,050,000.00 | $3,000,000.00 | $1,050,000.00 |
| London | Lancashire Insurance Company (UK) Limited | 2.50% | $6,750,000.00 | $5,000,000.00 | $1,750,000.00 |
| Primary | Lloyd Syndicate CSL 1084 (Chaucer) | 2.50% | $6,750,000.00 | $5,000,000.00 | $1,750,000.00 |
| | Lloyd Syndicate AMA 1200 (Argo) | 1.80% | $4,860,000.00 | $3,600,000.00 | $1,260,000.00 |
| | Lloyds Syndicate AON 9551 (Aon Client Treaty)* | 1.0750% | $2,902,500.00 | $2,150,000.00 | $752,500.00 |
| | Lloyds Syndicate XLC 2003 (XLCatlin) | 5.00% | $13,500,000.00 | $10,000,000.00 | $3,500,000.00 |
| | Lloyds Syndicate AON 9551 (Aon Client Treaty)* | 1.25% | $3,375,000.00 | $2,500,000.00 | $875,000.00 |
| | Great Lakes Insurance SE | 10.00% | $27,000,000.00 | $20,000,000.00 | $7,000,000.00 |
| | Lloyds Syndicate AON 9551 (Aon Client Treaty)* | 2.50% | $6,750,000.00 | $5,000,000.00 | $1,750,000.00 |
| | Lloyd's Syndicate 1955 BAR (Premia) | 1.50% | $4,050,000.00 | $3,000,000.00 | $1,050,000.00 |
| Total | | 100.00% | $270,000,000.00 | $200,000,000.00 | $70,000,000.00 |

**<u>Exhibit B</u>**

**<u>Form of Proposed Approval Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PES HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 19-11626 (LSS) |
|  | ) |  |
| Reorganized Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
| PES HOLDINGS, LLC, NORTH YARD GP, | ) |  |
| LLC, NORTH YARD LOGISTICS, L.P., PES | ) |  |
| ADMINISTRATIVE SERVICES, LLC, PES | ) |  |
| ENERGY INC., PES INTERMEDIATE, LLC, | ) |  |
| PES ULTIMATE HOLDINGS, LLC, | ) |  |
| PHILADELPHIA ENERGY SOLUTIONS | ) |  |
| REFINING AND MARKETING LLC, | ) |  |
|  | ) |  |
| *Plaintiffs*, | ) | Adversary Proceeding |
|  | ) |  |
| *-and-* | ) | Case No. 20-50454 (MFW) |
|  | ) |  |
| ICBC STANDARD BANK PLC, | ) |  |
|  | ) |  |
| *Intervener-Plaintiff*, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) |  |
| CO., *et al.*, | ) |  |
|  | ) |  |
| *Defendants*. | ) |  |

**ORDER APPROVING SETTLEMENT OF PES BI CLAIM**

Upon the motion [Docket No. [●]] (the "<u>Motion</u>") for entry of an order (the

"<u>Order</u>"), pursuant to, among other things, section 105(a) of the Bankruptcy Code, Bankruptcy

---

[1]    The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).

Rule 9019, and Rule 41(a)(2) of the Federal Rules of Civil Procedure, as made applicable to the above-captioned adversary proceeding by Bankruptcy Rule 7041, (i) approving the settlement of the PES BI Claim, on the terms and conditions set forth in the *Settlement Agreement*, dated September [●], 2021 (the "Settlement Agreement"),[2] attached hereto as **Exhibit 1**, by and among the PES Liquidating Trust, on behalf of PES Holdings, LLC, North Yard GP, LLC, North Yard Logistics, L.P., PES Administrative Services, LLC, PES Energy Inc., PES Intermediate, LLC, PES Ultimate Holdings, LLC, and Philadelphia Energy Solutions Refining and Marketing LLC (collectively, "PES"), ICBC Standard Bank Plc ("ICBCS"), and Insurers (as defined in the Settlement Agreement, and together with PES and ICBCS, each a "Party," and collectively, the "Settling Parties"), and (ii) granting related relief, all as more fully set forth in the Motion; and upon the declaration of Peter Kravitz in support of the Motion [Docket No. [●]] (the "Kravitz Declaration"); and this Court having reviewed the Motion, the Kravitz Declaration, and the Settlement Agreement; and this Court having held a hearing, if necessary, to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, if any; and this Court having determined that the legal and factual bases set forth in the Motion and the Kravitz Declaration establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of PES and its estate and creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, the Court hereby finds and determines that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(b)(1) and 1334 and the *Amended Standing Order of Reference from*

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and Its Debtor Affiliates* [Docket No. 1004-1] (the "Plan"), the Motion, or the Settlement Agreement, as applicable.

*the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    Due and adequate notice of the Motion, the Settlement Agreement, and the subject matter thereof, including the settlement of the PES BI Claim, has been provided to all parties in interest pursuant to Bankruptcy Rules 2002 and 9019(a).  Notice was sufficient and proper and complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  No additional notice of the Motion, the Settlement Agreement or this Order is required.  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested parties and entities.

D.    The relief requested in the Motion is fair and equitable and in the best interests of PES and its estates and creditors.  PES has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.  The consideration provided for the settlement of the PES BI Claim on the terms set forth in the Settlement Agreement is consistent with the reasonable range of litigation outcomes if the Settling Parties were to litigate the matters resolved pursuant to the Settlement Agreement and as approved by this Order.

E.    The settlement reflected in the Settlement Agreement is the product of arms'-length negotiations between and among the Settling Parties, including, without limitation, the mediation conducted under the supervision of the Honorable Layn R. Phillips, former United States District Judge.  The Settlement Agreement was negotiated and proposed, and entered into by the Settling

Parties in good faith and without fraud or collusion.  Each Settling Party to the Settlement Agreement was represented by counsel.

F.    The applicable factors set forth in *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) support approval of the settlement under Bankruptcy Rule 9019.  There is uncertainty as to the outcome of the litigation concerning the PES BI Claim.  The numerous disputed issues are complex and likely to invite further inconvenience, cost and delay, and even if PES were successful, it is reasonable to expect difficulties in collection under the circumstances. Finally, the paramount interests of creditors favors a prompt resolution that provides a meaningful recovery to creditors, without the risk of further litigation, and also resolves the ICBCS BI Claim. The consideration to be realized and to be provided pursuant to the Settlement Agreement, including the BI Settlement Payments, is fair and reasonable.  That the settlement was the product of an extensive and hard-fought mediation that culminated in a mediator's proposal, which was subsequently approved by a majority of the BI Litigation Committee (including the Independent Designee), further demonstrates that the settlement is fair and equitable.  *See In re ID Liquidation One, LLC*, 555 Fed. App'x. 202, 206 (3d Cir. 2014).

## ORDER

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT**:

1.    The Motion is granted and the settlement of the PES BI Claim, as reflected in the Settlement Agreement, including the releases therein, is approved in its entirety.

2.    The Settling Parties are authorized to take all actions necessary to effectuate the relief granted in this Order and to consummate the Settlement Agreement, and the Settlement Agreement with respect to the Liquidating Trust is approved in its entirety.

3.      No later than twenty-one (21) calendar days following entry of this Order, Insurers shall pay or cause to be paid the PES BI Settlement Payment (as defined in the Settlement Agreement) to the PES Liquidating Trust via wire transfer to the account identified in section 1.1 of the Settlement Agreement.  The PES Liquidating Trust shall transfer to ICBCS its share of the PES BI Settlement Payment in accordance with the *Second Amended and Restated Liquidating Trust Agreement*, dated July 1, 2021, and the *Settlement Agreement*, dated July 1, 2021, by and among the PES Liquidating Trust, ICBCS, and Cortland Capital Market Services LLC.

4.      No later than twenty-one (21) calendar days following entry of this Order, Insurers shall pay or cause to be paid the ICBCS BI Settlement Payment (as defined in the Settlement Agreement) to ICBCS via wire transfer to the account identified in section 1.2 of the Settlement Agreement.

5.      Pursuant to section 6 of the Settlement Agreement, within five (5) business days following receipt by both ICBCS and the PES Liquidating Trust of all of the respective BI Settlement Payments: (i) the Settling Parties, through their counsel, shall execute and, upon execution, PES shall file, a stipulation of dismissal, attached to the Settlement Agreement as Exhibit C, voluntarily dismissing with prejudice all of PES' allegations and claims relating to the PES BI Claim in the PES Complaint, with attorneys' fees and costs to be paid by the Party incurring same; and (ii) the Settling Parties, through their counsel, shall execute and, upon execution, ICBCS shall file, a stipulation of dismissal, attached to the Settlement Agreement as Exhibit D, voluntarily dismissing the Intervenor-Complaint with prejudice and without costs, with attorneys' fees and costs to be paid by the Party incurring same.

6.      Notwithstanding paragraphs 3, 4, and 5 of this Order, if a notice of appeal is timely filed with respect to this Order, then Insurers shall, unless the Settling Parties agree otherwise, within twenty-one (21) calendar days following the filing of the notice of appeal: (i)

deposit the PES BI Settlement Payment into an account established by or through a third party escrow arrangement mutually agreed to by the Settling Parties (the "Escrow Agent" and, such account, the "PES Escrow Account"); and (ii) deposit the ICBCS BI Settlement Payment into an account established by or through the Escrow Agent, (the "ICBCS Escrow Account," and together with the PES Escrow Account, the "Escrow Accounts"). The Settling Parties will seek to establish the Escrow Accounts at Citibank, and if Citibank is unwilling to provide such services on mutually acceptable terms to the Settling Parties, through an arrangement of substantially similar nature and function as mutually agreed to by the Settling Parties. The Escrow Accounts will be governed by the Escrow Agent's standard agreement with such revisions as are necessary to reflect the payment mechanics and timing set forth herein and such other revisions as are otherwise agreed to by the Settling Parties and the Escrow Agent. The fees associated with establishing and maintaining the Escrow Accounts, if any, will be born 1/3rd by PES, 1/3rd by ICBCS, and 1/3rd by Insurers. If an appeal of this Order is filed, then within three (3) calendar days after this Order becomes a final order that is no longer subject to appeal: (i) PES, through their attorneys, and Insurers, through their attorneys, shall instruct the Escrow Agent to release the PES BI Settlement Payment from the PES Escrow Account to the PES Liquidating Trust via wire transfer to the account identified in Section 1.1 of the Settlement Agreement; and (ii) ICBCS, through its attorneys, and Insurers, through their attorneys, shall instruct the Escrow Agent to release the ICBCS BI Settlement Payment from the ICBCS Escrow Account to ICBCS via wire transfer to the account identified in Section 1.2 of the Settlement Agreement.  Insurers' obligation to pay the BI Settlement Payments pursuant to paragraphs 3 and 4 above shall not be discharged until the Liquidating Trust actually receives the PES BI Settlement Payment and ICBCS actually receives the ICBCS BI Settlement Payment.

7.      In the event that this Order is reversed and/or vacated in whole or in substantive part after all appeals are exhausted, unless the Settling Parties agree otherwise, the PES BI Settlement Payment and the ICBCS BI Settlement Payment shall be released back to Insurers from the Escrow Accounts, and the Settlement Agreement shall thereafter be *void ab initio* and be of no force and effect whatsoever as if the Settlement Agreement had never been executed by the Settling Parties, and the Settlement Agreement shall automatically be terminated without any further action required from the Settling Parties, and the Settling Parties shall return to their respective positions *ex ante*, as though the settlement and, for the avoidance of doubt, the releases in Section 2 of the Settlement Agreement had never occurred.

8.      This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of the Settlement Agreement or Order.

## Exhibit 1

### Settlement Agreement

## Exhibit C

## Stipulation of Dismissal of PES BI Claim

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PES HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 19-11626 (LSS) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| PES HOLDINGS, LLC, NORTH YARD GP, | ) | |
| LLC, NORTH YARD LOGISTICS, L.P., PES | ) | |
| ADMINISTRATIVE SERVICES, LLC, PES | ) | |
| ENERGY INC., PES INTERMEDIATE, LLC, | ) | |
| PES ULTIMATE HOLDINGS, LLC, | ) | |
| PHILADELPHIA ENERGY SOLUTIONS | ) | |
| REFINING AND MARKETING LLC, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Adversary Proceeding |
| | ) | |
| -and- | ) | Case No. 20-50454 (LSS) |
| | ) | |
| ICBC STANDARD BANK PLC, | ) | |
| | ) | |
| *Intervener-Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| CO., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## STIPULATION OF DISMISSAL WITH PREJUDICE

---

[1]    The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).

Plaintiff PES Liquidating Trust, on behalf of the above-captioned Reorganized Debtors (collectively, "PES"), Intervenor-Plaintiff ICBC Standard Bank Plc ("ICBCS"), and the Defendant Insurers (as defined in the Intervenor-Complaint, and together with PES and ICBCS, the "Parties") hereby stipulate and agree, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and Fed. Bank. R. 7041, that Counts IV, V, and VII of the *Complaint* [Docket No. 1], filed by PES on February 12, 2020, are hereby dismissed with prejudice, with each party to bear its own costs, expenses, and attorneys' fees.  Counts I, II, III, and VI of the *Complaint* are unaffected by this Stipulation of Dismissal and will remain pending in the above-captioned Adversary Proceeding.

Dated:  [DATE], 2021
      Wilmington, Delaware

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com
joneill@pszjlaw.com

- and -

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted pro hac vice)
Matthew C. Fagen (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
steven.serajeddini@kirkland.com
matthew.fagen@kirkland.com

Nader R. Boulos, P.C. (admitted pro hac vice)
William T. Pruitt (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: nader.boulos@kirkland.com
william.pruitt@kirkland.com

*Counsel to Plaintiffs PES Energy, Inc., PES*
*Holdings LLC, PES Administrative Services, LLC,*
*PES Intermediate, LLC, PES Ultimate Holdings,*
*LLC, and Philadelphia Energy Solutions Refining*
*and Marketing LLC*

Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
collins@rlf.com
defranceschi@rlf.com
shapiro@rlf.com

- and –

David L. Yohai (*pro hac vice*)
John P. Mastando III (*pro hac vice*)
Tracy Gelles (*pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
David.yohai@weil.com
John.mastando@weil.com
Tracy.gelles@weil.com

*Counsel to Intervnor-Plaintiff*
*ICBC Standard Bank Plc*

Gavin F. McDaniel (DE Bar No. 4167)
**HOGAN MCDANIEL**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone 302-656-7540
gmcdaniel@dkhogan.com

- and -

Philip D. Anker (admitted pro hac vice)
**WILMER CUTLER PICKERING HALE
AND DORR LLP**

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:212-230-8890
philip.anker@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
benjamin.loveland@wilmerhale.com

- and -

Jonathan R. MacBride (admitted pro hac vice)
**ZELLE LLP**

1635 Market Street, Suite 1600
Philadelphia, PA 19103
Telephone: 484-532-5330
jmacbride@zelle.com

Matthew Gonzalez
45 Broadway, Suite 920
New York, NY 10006
Telephone 646-876-4410
mgonzalez@zelle.com

*Counsel to the Defendant Insurers*

**<u>Exhibit D</u>**

**<u>Stipulation of Dismissal of Intervenor Complaint</u>**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PES HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 19-11626 (LSS) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| PES HOLDINGS, LLC, NORTH YARD GP, | ) | |
| LLC, NORTH YARD LOGISTICS, L.P., PES | ) | |
| ADMINISTRATIVE SERVICES, LLC, PES | ) | |
| ENERGY INC., PES INTERMEDIATE, LLC, | ) | |
| PES ULTIMATE HOLDINGS, LLC, | ) | |
| PHILADELPHIA ENERGY SOLUTIONS | ) | |
| REFINING AND MARKETING LLC, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Adversary Proceeding |
| | ) | |
| -and- | ) | Case No. 20-50454 (LSS) |
| | ) | |
| ICBC STANDARD BANK PLC, | ) | |
| | ) | |
| *Intervener-Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| CO., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## STIPULATION OF DISMISSAL WITH PREJUDICE

---

[1]   The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).

Plaintiff PES Liquidating Trust, on behalf of the above-captioned Reorganized Debtors (collectively, "PES"), Intervenor-Plaintiff ICBC Standard Bank Plc ("ICBCS"), and the Defendant Insurers (as defined in the Intervenor-Complaint, and together with PES and ICBCS, the "Parties") hereby stipulate and agree, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and Fed. Bank. R. 7041, that all claims and causes of action asserted in the *Intervenor Complaint* [Docket No. 30], filed by ICBCS on April 6, 2020 are hereby dismissed with prejudice, with each party to bear its own costs, expenses, and attorneys' fees.

Dated:  [DATE], 2021
        Wilmington, Delaware

<table>
<tr><td>

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com
joneill@pszjlaw.com

- and -

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted pro hac vice)
Matthew C. Fagen (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
steven.serajeddini@kirkland.com
matthew.fagen@kirkland.com

Nader R. Boulos, P.C. (admitted pro hac vice)
William T. Pruitt (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: nader.boulos@kirkland.com
william.pruitt@kirkland.com

*Counsel to Plaintiffs PES Energy, Inc., PES*
*Holdings LLC, PES Administrative Services, LLC,*
*PES Intermediate, LLC, PES Ultimate Holdings,*
*LLC, and Philadelphia Energy Solutions Refining*
*and Marketing LLC*

</td><td>

Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
collins@rlf.com
defranceschi@rlf.com
shapiro@rlf.com

- and –

David L. Yohai (*pro hac vice*)
John P. Mastando III (*pro hac vice*)
Tracy Gelles (*pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
David.yohai@weil.com
John.mastando@weil.com
Tracy.gelles@weil.com

*Counsel to Intervnor-Plaintiff*
*ICBC Standard Bank Plc*

</td></tr>
</table>

Gavin F. McDaniel (DE Bar No. 4167)
**HOGAN MCDANIEL**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone 302-656-7540
gmcdaniel@dkhogan.com

- and -

Philip D. Anker (admitted pro hac vice)
**WILMER CUTLER PICKERING HALE
AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:212-230-8890
philip.anker@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
benjamin.loveland@wilmerhale.com

- and -

Jonathan R. MacBride (admitted pro hac vice)
**ZELLE LLP**
1635 Market Street, Suite 1600
Philadelphia, PA 19103
Telephone: 484-532-5330
jmacbride@zelle.com

Matthew Gonzalez
45 Broadway, Suite 920
New York, NY 10006
Telephone 646-876-4410
mgonzalez@zelle.com

*Counsel to the Defendant Insurers*